Mark R. Thierman, NV#8285 CAL#72913
**THIERMAN LAW FIRM, P.C.**
7287 Lakeside Drive
Reno, Nevada 89511
Tel: (775) 284-1500
Fax: (775) 703-5027

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ANTHONY LUCAS, GREGORY H. CASTELLO, LILLIAN MELTON, LEAVON R. SMITH, ROBERT A. GREENE on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> BELL TRANS, A Nevada Corporation, Does 1-50, Inclusive <br><br> Defendants. | CASE NO. |

**CLASS AND COLLECTIVE ACTION COMPLAINT FOR MINIMUM WAGES AND UNPAID OVERTIME**

Comes now ANTHONY LUCAS, GREGORY H. CASTELLO, LILLIAN MELTON, LEAVON R. SMITH, ROBERT A. GREENE on behalf of themselves and all others similarly situated and alleges:

### JURISDICTION/VENUE

1. This Court has original jurisdiction over the federal overtime wage claims herein pursuant to Section 16(b) of the Fair Labor Standards Act, 29 U.S.C. 216(b), which states "An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal ___or State court___ of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." (emphasis supplied).

2. This Court also has jurisdiction under Nevada Revised Statutes, N.R.S. §608.050(1) and (2), which state:

> Whenever an employer of labor shall discharge or lay off his or its employees without first paying them the amount of any wages or salary then due them, in cash and lawful money of the United States, or its equivalent, or shall fail, or refuse on demand, to pay them in like money, or its equivalent, the amount of any wages or salary at the time the same becomes due and owing to them under their contract of employment, whether employed by the hour, day, week or month, each of his or its employees may charge and collect wages in the sum agreed upon in the contract of employment for each day his employer is in default, until he is paid in full, without rendering any service therefor; but he shall cease to draw such wages or salary 30 days after such default. Every employee shall have a lien as provided in NRS 108.221 to 108.246, inclusive, and all other rights and remedies for the protection and enforcement of such salary or wages as he would have been entitled to had he rendered services therefor in the manner as last employed.

3. The State of Nevada has created a cause of action in this Court for such wages and attorneys fees, pursuant to NRS 608.140, Assessment of attorney's fees in action for recovery of wages, which states "Whenever a mechanic, artisan, miner, laborer, servant or employee

shall have cause to bring suit for wages earned and due according to the terms of his employment, and shall establish by decision of the court or verdict of the jury that the amount for which he has brought suit is justly due, and that a demand has been made, in writing, at least 5 days before suit was brought, for a sum not to exceed the amount so found due, the court before which the case shall be tried shall allow to the plaintiff a reasonable attorney fee, in addition to the amount found due for wages and penalties, to be taxed as costs of suit." Plaintiff has sent a demand

4. The State of Nevada has created a cause of action in this Court for minimum wages and attorneys fees, pursuant to Section 16C of the Article 15 of the Nevada State Constitution which states "An employee claiming violation of this section may bring an action against his or her employer in the courts of this State to enforce the provisions of this section [Section 16 of the Nevada State Constitution] and shall be entitled to all remedies available under the law or in equity appropriate to remedy any violation of this section, including but not limited to back pay, damages, reinstatement or injunctive relief. An employee who prevails in any action to enforce this section shall be awarded his or her reasonable attorney's fees and costs."

5. Venue is proper in this court because Plaintiffs and Defendant's principal place of business is located within this Judicial District and Plaintiffs worked and wages were earned at Las Vegas, Clark County, Nevada.

**PARTIES**

6. Upon information and belief, Defendant BELL TRANS, A Nevada Corporation is a Nevada corporation certified by the Nevada Transportation Service Authority under license Number CPCN 1023 to be and is engaged in the business of providing limousine services, with its principal place of business at 1900 Industrial Road, Las Vegas, Nevada. At all times relevant herein, Defendant was an employer engaged in commerce under the Fair

Labor Standards Act, 29 U.S.C. 201 et. seq. Defendant is also an employer under N.R.S. 608.011 for all employees employed in Nevada.

7. The identity of Does 1-50 is unknown at this time, and the complaint will be amended at such time when the identities are known to the parties.

8. Plaintiffs ANTHONY LUCAS, GREGORY H. CASTELLO, LILLIAN MELTON, LEAVON R. SMITH, ROBERT A. GREENE are residents of Clark County, Nevada who worked as limousine drivers for Defendants in and around Clark County, Nevada and excluding all employees over whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of Section 204 of the Motor Carrier Act of 1935 (such as those employees who carried passengers on a "through ticket" interstate).

## INTRODUCTION

9. This is a class and collective action brought on behalf of all persons who worked for the defendants within the last three years as drivers of limousines, excluding all persons employed by defendant as drivers of taxicabs, and excluding all persons whom the Secretary of Transportation has the power to establish qualifications and maximum hours of service pursuant to the provisions of Section 204 of the Motor Carrier Act of 1935 (such as employees who regularly transport passengers interstate or to the airport on a "through ticket" interstate).

10. While taxicab drivers are exempt from the minimum wage and overtime compensation provisions of the federal Fair Labor Standards Act, limousine drivers are not. See, April 17, 1998 Opinion Letter of the Wage and Hour Division of United States Department of Labor, reported at 1998 WL 852774 (copy attached), Section 24h03 of the United States Department of Labor's Field Operations Handbook (copy attached), *Powell v. Carey Int'l, Inc.*, 483 F.Supp.2d 1168, 1172-73 (S.D. Fla. 2007); *Powell v. Carey Int'l, Inc.*, 490 F.Supp.2d 1202,

1213 (S.D. Fla. 2006)( Defendants are not exempt as taxicab operators when they have contract arrangements with local hotels, corporate clients, and destination management companies, and utilize large cars that are not traditionally recognized as taxicabs.); *Airlines Transp. v. Tobin*, 198 F.2d 249, 250 (4th Cir. 1952) *Wirtz v. Cincinnati, Newport and Covington Transp. Co.*, 375 F.2d 513, 515 (6th Cir. 1967).

11. Plaintiff and Plaintiff class spend most of their driving time driving vehicles that that accommodate and transport more than six passengers and are therefore not taxicabs as that term is defined by Nevada Revised Statutes (NRS) 706.8816(1), which says ". "Taxicab" means a motor vehicle or vehicles which is designed or constructed to accommodate and transport not more than six passengers, including the driver, and is: (a) Fitted with a taximeter or other device to indicate and determine the passenger fare charged; (b) Used in the transportation of passengers or light express or both for which a charge or fee is received; or (c) Operated in any service which is held out to the public as being available for the transportation of passengers from place to place in the State of Nevada.

12. Plaintiffs and Plaintiff class operate either traditional or livery limousines, as that term is defined in either Nevada Administrative Code (NAC) 706.080 or NAC 706.124. Under NAC 606.080, a " "Livery limousine" means a motor vehicle engaged in the general transportation of persons for compensation that:   1. Was a light truck, as that term is defined in 49 C.F.R. § 523.5, at the time of its manufacture; or   2. Was originally manufactured as having a capacity of 9 or more persons but less than 16 persons, including the driver." NAC 706.124, says ""Traditional limousine" means a motor vehicle that is engaged in the general transportation of persons for compensation and not operated on a regular schedule or over regular routes and:  1. Was a passenger automobile, as that term is defined in 49 C.F.R. § 523.4, at the time of its manufacture and was later modified to increase its length; or 2. Has a capacity of less than nine persons, including the driver."

13. Because Plaintiff and Plaintiff class do not drive passengers with "through tickets" from airlines for travel interstate, they are not exempt from overtime under Section 13(b)(1) of the Fair Labor Standards Act. See, Section 24c04 of the United States Department Field Operations Handbook, which states with original emphasis "Therefore, Sec 13(b)(1) will <u>not</u> apply except in the case of a through-ticketing or other common arrangements for continuous passage or interchange between the motor carrier and the air carrier."

14. In addition, Plaintiffs and Plaintiff class are not exempt from overtime compensation under Section 13(b)(1) of the Fair Labor Standards Act, because under recent amendments to the Motor Carrier Act, the Secretary of Transportation does not have the power to establish qualifications and maximum hours of service pursuant to the provisions of Section 204 of the Motor Carrier Act of 1935 for these Plaintiffs and Plaintiff class members. On August 10, 2005, Congress enacted Section 4142 of the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users ("SAFETEA-LU"). Pub. L. No. 109-59, 119 Stat. 1144 (2005). SAFETEA-LU amended 49 U.S.C. § 13102 defined a motor carrier as "a person providing commercial motor vehicle (as defined in [49 U.S.C.] § 31132) transportation for compensation." Id. (emphasis added). In turn, a commercial motor vehicle was defined as: [A] self-propelled or towed vehicle used on the highways in interstate commerce to transport passengers or property, if the vehicle--(A) has a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater; (B) is designed or used to transport more than 8 passengers (including the driver) for compensation; (C) is used in transporting material found by the Secretary of Transportation to be hazardous under section 5103 of this title [49 U.S.C. § 5103] and transported in a quantity requiring placarding under regulations prescribed by the Secretary under [49 U.S.C.] section 5103.

15. On June 6, 2008, Congress passed the SAFETEA-LU Technical Corrections Act of 2008. Pub. L. No. 110-244, 122 Stat. 1572 (2008) ("Technical Corrections Act"), which

defines the phrase "covered employee" in § 306(c) of SAFETEA-LU as an individual: (1) who is employed by a motor carrier or motor private carrier (as such terms are defined by section 13102 of title 49, United States Code, as amended by section 305); (2) whose work, in whole or in part, is defined--(A) as that of a driver, driver's helper, loader, or mechanic; and (B) as affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce, except vehicles--(i) designed or used to transport more than 8 passengers (including the driver) for compensation; (ii) designed or used to transport more than 15 passengers (including the driver) and not used to transport passengers for compensation; or (iii) used in transporting material found by the Secretary of Transportation to be hazardous under section 5103 of title 49, United States Code, and transported in a quantity requiring placarding under regulations prescribed by the Secretary under section 5103 of title 49, United States Code; and (3) who performs duties on motor vehicles weighing 10,000 pounds or less.

16. Upon information and belief, there are no collective bargaining agreements applicable to the Plaintiffs and/or members of the Plaintiff class which waive the provisions of Section 16A of Article 15 of the Constitution of the State of Nevada or any other minimum wage or overtime laws.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

17. Plaintiffs bring this action individually and on behalf of a class consisting of all persons who were employed by Defendant as limousine drivers within the last three years, excluding all persons employed by defendant as drivers of taxicabs. The class excludes drivers who, within a four month period, drove passengers traveling interstate on a "through ticket" from any airline, and excludes all employees over whom the Secretary of Transportation has the power to establish qualifications and maximum hours of service pursuant to the provisions of Section 204 of the Motor Carrier Act of 1935.

18. NRS 608.100(1) (b) provides that "It is unlawful for any employer to: Pay a lower wage, salary or compensation to an employee than the amount that the employer is required to pay to the employee by virtue of any statute or regulation or by contract between the employer and the employee."

19. Section 16(b) of the Fair Labor Standards Act provides that:

> Any employer who violates the provisions of section 6 or section 7 of this Act shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Any employer who violates the provisions of section 15(a)(3) of this Act shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 15(a)(3), including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages. An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

20. Therefore, each member of the class has a claim under both Nevada law ( NRS 608.100(1) (b)) for failure to pay overtime compensation required by statute (the FLSA) as well as a claim directly for liquidated damages under federal law. However, while the claim for wages under NRS 608.100(1)(b) is subject to class certification under NRCP Rule 23 (an opt out class), the claims for relief under the FLSA, which includes liquidated damages, must be brought as a collective action (opt in class).

21. Plaintiffs are each a member of the FLSA class, and the Nevada NRS 608.100 class. Specifically, Plaintiff was employed by Defendant as a limousine driver in Nevada, under a wage agreement that paid them a percentage of the fare without overtime. Since Plaintiffs and plaintiff class members were not primarily engaged in sales, but in rendering physical labor, this payment is not a true commission, even if the payment scheme is referred to by drivers

and others as a commission payment. In addition, class members were required to come to work to wait for jobs without any payment, thus violating the minimum wage laws as well.

22. Upon information and belief, the number of "limousine driver" class members employed by Defendant within the last two years alone exceeds 200 . Thus, the class is so numerous that joinder is impracticable.

23. The named Plaintiffs' claims are typical of the class claims because all were harmed by the common practice of the Defendant in failing to pay overtime correctly and failing to pay even minimum wage for non-driving times.

24. The named Plaintiffs will fully and adequately represent the interests of the class. The named Plaintiffs have retained counsel that is familiar with employment and class action wage hour law. The named Plaintiffs have no interests that are contrary to or in conflict with those of the class. The number of members in the class is believed to be several hundred, which makes it impossible to bring all these individuals before the Court. The identities of all class members are readily available, as are the days they worked and the pay rates of each class member.

25. A class action is superior to other available means for the efficient adjudication of this lawsuit. Individual litigation could be prohibitively expensive against a large business entity like the Defendant and would be unduly burdensome to the justice system. Concentrating this litigation in one forum will promote judicial consistency and economy. Notice of this action can be provided to class members since their identities and last known addresses are contained within Defendants records and files. The named plaintiffs have or will filed consent to sue forms as the statutory prerequisite for their maintaining any action under the FLSA directly.

26. This type of action is especially well-suited for class action treatment because the burden is on the employer to prove any exemption and because the employer's practices were uniform.

Complaint for minimum wages and overtime compensation under Federal and Nevada law                9

27. Because the acts complained of herein were willful, the statute of limitations under the Fair Labor Standards Act is three years from the filing of this complaint. Liquidated damages are appropriate under the facts in this case. The act or omission giving rise to Defendant's liability was negligent and/ or not in good faith and at the time it decided not to pay to pay overtime and minimum wage Defendant did not have reasonable grounds for believing s that its failure was not a violation of the Fair Labor Standards Act of 1938, as amended.

28. Issues of law and fact are common and they predominate over any individual questions, specifically: 1) whether Defendants' limousine drivers were uniformly underpaid minimum wage and overtime compensation in violation of the Fair Labor Standards Act and/or state labor law; 2) whether defendants failed to pay Plaintiffs and class members all the overtime compensation due them by virtue of their uniform designation of employees as exempt; 3) whether Plaintiffs and class members were expected to and/or mandated to regularly work overtime; and 4) whether Defendant's conduct is sufficient under the standard articulated in the federal Portal to Portal Act, 29 U.S.C.§ 260 to reduce or eliminate the liquidated damages required under the FLSA.

29. Plaintiff seeks certification under N.R.Civ. Pro. Rule 23 for all class members for violations of Nevada State law, including NRS 608.100(1)(b), even if the "any statute" is the FLSA.

30. Plaintiff further seeks to take appropriate proceedings to have class members notified of the pendency of this action and invited to join this action as Plaintiffs pursuant to 29 U.S.C. § 216(b) by filing written consents to joint with the Court.

# FIRST CAUSE OF ACTION

## FAILURE TO PAY FOR ALL HOURS WORKED: VIOLATION OF NRS 608.016 AND STATE AND FEDERAL MINIMUM WAGE LAWS

31. Plaintiff incorporates by reference all the allegations contained above as if fully set forth herein.

32. Defendant paid its limousine drivers a percentage of the amount of the fare, when driving clients or customers only.

33. Therefore, Defendant did not pay its limousine drivers hourly nor did it pay limousine drivers for all hours worked.

34. Prior to beginning employment, each limousine driver was required to take a 4-day (8 hours each day) training class without any pay.

35. Drivers were required to show up to work 15 minutes before their shift because they needed to wait in line at the dispatch office in order to pick up their trip sheets and keys.

36. Defendant did not pay limousine drivers for attending mandatory company meetings.

37. Defendant did not pay limousine drivers for times under the control of the employer they were required to fix or maintain or clean their vehicles.

38. Defendant did not pay limousine drivers for times under the control of the employer the employee was engaged to wait by being required to be present at the dispatch offices or at another specified location until a customer retained Defendant's services.

39. Defendant did not pay its limousine drivers for non-driving times even though it suffered and permitted the employees to work during such times.

40. In addition, Defendant did not pay Plaintiffs the minimum wage required by both federal and Nevada state law.

41. Section 6 of the Fair Labor Standards Act, 29 U.S.C. §206 requires the payment of minimum wages for all hours worked of $5.15 an hour prior to July 25, 2007, $5.85 an hour thereafter until July 25, 2008 and $6.55 thereafter with no exceptions relevant herein.

42. NRS 608.016 says "An employer shall pay to the employee wages for each hour the employee works." Hours worked under both federal and state law means any time the employer suffers or permits an employee to work. Employees are suffered or permitted to work if they are engaged to wait, rather than waiting to be engaged, as well as actually doing work with the employer's knowledge, such as cleaning, repairing or maintaining thee employer's vehicles and property.

43. Upon information and belief, Defendant did not provide health benefits to the vast majority of the members of the Plaintiff class during most of the time of their employment.

44. Therefore, pursuant to Section 16 of Article 15 of the Constitution of the State of Nevada, and therefore, must pay Plaintiff and all class members for whom the employer failed to provide the requisite health insurance, at least $6.15 an hour for all hours worked from 2006 until July 1, 2008 and $6.85 per hour all hours worked thereafter, and for those few, if any, employees whom the employer did pay health insurance sufficient under Section 16A of Article 15 of the Constitution of the State of Nevada, then $5.15 per hour for each hour worked.

45. Section 16A of Article 15 of the Constitution of the State of Nevada states:

> Each employer shall pay a wage to each employee of not less than the hourly rates set forth in this section. The rate shall be five dollars and fifteen cents ($5.15) per hour worked, if the employer provides health benefits as described herein, or six dollars and fifteen cents ($6.15) per hour if the employer does not provide such benefits. Offering health benefits within the meaning of this section shall consist of making health insurance available to the employee for the employee and the employee's dependents at a total cost to the employee for premiums of not more than 10 percent of the employee's gross taxable income from the employer. These rates of wages shall be adjusted by the amount of increases in the federal minimum wage over $5.15 per hour, or, if

greater, by the cumulative increase in the cost of living. The cost of living increase shall be measured by the percentage increase as of December 31 in any year over the level as of December 31, 2004 of the Consumer Price Index (All Urban Consumers, U.S. City Average) as published by the Bureau of Labor Statistics, U.S. Department of Labor or the successor index or federal agency. No CPI adjustment for any one-year period may be greater than 3%. The Governor or the State agency designated by the Governor shall publish a bulletin by April 1 of each year announcing the adjusted rates, which shall take effect the following July 1. Such bulletin will be made available to all employers and to any other person who has filed with the Governor or the designated agency a request to receive such notice but lack of notice shall not excuse noncompliance with this section. An employer shall provide written notification of the rate adjustments to each of its employees and make the necessary payroll adjustments by July 1 following the publication of the bulletin. Tips or gratuities received by employees shall not be credited as being any part of or offset against the wage rates required by this section.

46. Therefore, Plaintiff demands payment of compensation at the appropriate minimum wages for all hours worked by themselves and all others similarly situated limousine drivers employed by Defendant within the relevant statutory period together with interest, costs, interest, and attorneys fees as provided by statute..

## SECOND CAUSE OF ACTION

## FAILURE TO PAY FOR OVERTIME

47. ` Plaintiff incorporates by reference all the allegations contained above as if fully set forth herein.

48. Defendant paid its limousine drivers a percentage of the amount of the fare, when driving only. Defendant did not pay any premium pay for hours worked in excess of 40 hours per week.

49. NRS 608.100(1) (b) provides that "It is unlawful for any employer to: Pay a lower wage, salary or compensation to an employee than the amount that the employer is required to pay to the employee by virtue of any statute or regulation or by contract between the employer and the employee."

50. Section 7(a)(1) of the Fair Labor Standards Act, 29 U.S.C. 207(a)(1) states that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

51. No exception or exemptions to the provisions of Section 7(a)(1) of the Fair Labor Standards Act, 29 U.S.C. 207(a)(1) apply to Plaintiffs or other members of the class of limousine drivers.

52. Specifically, 29 U.S.C. 213(b)(1) and (17) do not apply because Plaintiffs and members of the limousine driver class (1) are not employees with respect to whom the Secretary of Transportation has the power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act, 1935 [49 USCS § 31502] and (2) are not drivers employed by an employer engaged in the business of operating taxicabs.

53. Therefore, Plaintiff demands payment of premium overtime compensation for all hours worked in excess of 40 per week for themselves and all others similarly situated limousine drivers employed by Defendant within the relevant statutory period together with interest, costs, interest, and attorneys fees as provided by statute.

### THIRD CAUSE OF ACTION

### LIQUIDATED DAMAGES

54. Plaintiffs hereby reallege and incorporate by reference all paragraphs above as though fully set forth herein.

55. Plaintiffs bring this Cause of Action pursuant to 29 U.S.C. § 216(b) on behalf of themselves and all other similarly situated persons, if any, who consent in writing to join this action.

56. 29 U.S.C. §216(b) provides "Any employer who violates the provisions of section 6 or section 7 of this Act [29 USCS §§ 206 or 207] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."

57. Liquidated damages are required unless "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended."

58. At the time it decided not to pay its limousine drivers overtime, and continuing until at least the filing of this lawsuit, Defendant did not act in good faith and had no reasonable grounds for believing its act or omission was other than a violation of the Fair Labor Standards Act.

59. As a result of the foregoing, Plaintiffs seek judgment against the Defendants on behalf of themselves and on behalf of those similarly situated who file written consents to join in this action, monetary damages in the amount of all unpaid overtime wages and/or other wages owed by the Defendant to the Plaintiffs and such other persons similarly situated pursuant to 29 U.S.C. § 206, 207, together with an award of an additional equal amount as liquidated damages, costs, interest, and attorneys fees, as provided for under 29 U.S.C. §216(b).

## FOURTH CAUSE OF ACTION

### Waiting Penalties

60. Plaintiffs hereby reallege and incorporate by reference all paragraphs above as though fully set forth herein.

Complaint for minimum wages and overtime compensation under Federal and Nevada law        15

61. NRS 608.040 states that 1. If an employer fails to pay: (a) Within 3 days after the wages or compensation of a discharged employee becomes due; or (b) On the day the wages or compensation is due to an employee who resigns or quits, the wages or compensation of the employee continues at the same rate from the day he resigned, quit or was discharged until paid or for 30 days, whichever is less.

62. Pursuant to NRS 608.040, Plaintiffs seek waiting penalties in addition to wages due for themselves and all class members who terminated employment within the last three years.

## FIFTH CAUSE OF ACTION

### Improper Wage Deductions

63. Plaintiffs hereby reallege and incorporate by reference all paragraphs above as though fully set forth herein.

64. NRS 608.100(2) states that 2. It is unlawful for any employer to require an employee to rebate, refund or return any part of the wage, salary or compensation earned by and paid to the employee.

65. Upon information and belief, each time the employee drove a vehicle for a client or customer of the employer, Defendant deducted a "leasing fee" of five dollars or more from Plaintiffs and each class member's wages.

66. Pursuant to NRS 608.100(2) Plaintiffs seek restitution to themselves and all class members all unlawful wage deductions such as fictitious leasing fees, buy-ins and all other payments from wages paid by the employees as a condition of working for Defendant.

### PRAYER FOR RELIEF

1. Plaintiffs, individually and on behalf of all others similarly situated, to wit, the class of limousine drivers employed within the last three years from the filing of this complaint, pray for relief as follows:

a. An Order directing the Defendant to pay Plaintiff and all members of the class minimum wages required by both state and federal laws

b. An Order directing that the Defendants compensate Plaintiffs and members of the class according to state and federal laws for overtime hours worked

c. An Order directing the Defendant to pay liquidated damages to Plaintiff and all members of the class who have submitted a consent to sue form pursuant to 29 U.S.C. §216(b);

d. An order directing that the Defendants pay prejudgment interest, reasonable attorneys fees and costs;

e. Waiting penalties pursuant to NRS 608.040

f. Restitution of all unlawful wage deductions Pursuant to NRS 608.100(2)

g. Attorneys fees, costs and interest, and the foreclosure of any lien created pursuant to NRS 608.050, as provided in NRS 108.221 to 108.246, inclusive and

h. Such further relief as this court may deem just and proper.

Dated this 18th day of December, 2008.

THIERMAN LAW FIRM

By: /s/Mark R. Thierman
MARK R. THIERMAN

(1) Coal being shipped to an out-of-State buyer is hauled to a tipple where, in a continuous operation, it is unloaded from the truck and cleaned, crushed, or graded and loaded directly into railroad cars for shipment out-of-State; or

(2) Household goods are transported by truck from a home to a warehouse to be crated or packed so that the movement by motor vehicle to the intended out-of-State destination may be continued.

### 24c03   Vending machine servicemen.

Vending machine servicemen who transport products between a warehouse and points within the same State, where such products have been procured from other States for stocking vending machines, are engaged in the transportation of property in interstate commerce until placed in the vending machines (see FOH llv00). Thus, no assertion will be made that Sec 13(b)(1) does not apply in such situations.

### 24c04   Drivers of buses/shuttle services/limousines operating to and from transportation terminals.

Drivers of buses/shuttle services/limousines carrying interstate passengers and their baggage to and from transportation terminals within a single state are not engaged in interstate transportation of passengers and property within the meaning of the Motor Carrier Act, unless the transportation is part of a through-ticketing or other common arrangement between the motor carrier and the air carrier. Therefore, Sec 13(b)(1) will not apply except in the case of a through-ticketing or other common arrangement for continuous passage or interchange between the motor carrier and the air carrier.

An example would be where there is a through-ticketing arrangement under which passengers purchase a single ticket which is good for both the local bus ride and the prior or subsequent interstate journey by air, rail, or bus.

### 24c05   Transportation of consumable goods (fuel, food, supplies) to railroads, docks, and airports.

Under the Motor Carrier Act, the movement of "consumable goods," such as food and drink, ice, coal, and gasoline (see IB 782.8(a)), terminates upon delivery to railroads, ship docks, airports, or other similar points. Thus, such transportation is not in interstate or foreign commerce so as to be within the jurisdiction of the DOT except where the transportation is an integral part of a single movement which commenced outside the State in which delivery is made.

### 24c06   Combination interstate and intrastate transportation.

(a) If it is known that some portion of a particular load is moving in interstate commerce, whether or not this is an identifiable portion of the load, the trip will be viewed as an interstate trip and therefore subject to the jurisdiction of the DOT.

(b) If a driver employed by a manufacturer makes a trip by motor vehicle from the plant to a railhead or other transportation terminal to pick up or deliver goods moving in interstate commerce, the transportation is subject to the jurisdiction of the DOT regardless of the fact that the employee may make stops along the way in connection with production activities.

24h     TAXICABS-SEC 13(b)(17)

24h00   **General.** Sec 13(b)(17) provides an OT exemption as follows: "any driver employed by an employer engaged in the business of operating taxicabs".

24h01   **"Business of operating taxicabs".** The taxicab business consists normally of common carrier transportation in small motor vehicles of persons and such property as they may carry with them to any requested destination in the community. The business operates without fixed routes or contracts for recurrent transportation. It serves the miscellaneous and predominantly local transportation needs of the community. It may include such occasional and unscheduled trips to or from transportation terminals as the individual passengers may request, and may include stands at the transportation terminals as well as at other places where numerous demands for taxicab transportation may be expected.

24h02   **Exemption limited to drivers.** The OT exemption contained in Sec 13(b)(17) applies to "any driver" employed by an employer engaged in the business of operating taxicabs. The exemption is thus limited to drivers only. (For discussion of nonexempt work, see FOH 24h03.)

24h03   **Examples of nonexempt work.** (a) Examples of nonexempt work by "any driver" for purposes of Sec 13(b)(17) are:

   (1) Acting as a dispatcher.

   (2) Performing general clerical duties (making reports in connection with his own driving operations is within the exemption).

   (3) Performing general mechanical or repair services on vehicles (cleaning, washing, or making incidental minor repairs on the vehicle assigned to him as a driver are within the exemption.)

   (4) Performing work, including driving, in connection with other business operations of the employer (i.e., not his taxicab operations), such as operation of an airport limousine service (see FOH 24c04), a pick-up and delivery service, or a moving and storage service.

24h04   **Tolerance for nonexempt work.** In applying Sec 13(b)(17) the exemption shall be deemed applicable even though some nonexempt work is performed by the employee during the workweek, unless the amount of such nonexempt work is substantial. The amount of nonexempt work will be considered substantial if it occupies more than 20% of the time worked by the employee during the workweek. (See IB 786.200.)

24h05   **Possible application the Sec 13(b)(1) exemption.** If for any reason, taxicab drivers are not exempt from the OT requirements of the Act under Sec 13(b)(17), the possible application of Sec 13(b)(1) should not be overlooked. (See FOH 24c04 and 24e).

FIELD OPERATIONS HANDBOOK - 8/29/74   24h-24h05

24h   TAXICABS-SEC 13(b)(17)

24h00   General. Sec 13(b)(17) provides an OT exemption as follows: "any driver employed by an employer engaged in the business of operating taxicabs".

24h01   "Business of operating taxicabs". The taxicab business consists normally of common carrier transportation in small motor vehicles of persons and such property as they may carry with them to any requested destination in the community. The business operates without fixed routes or contracts for recurrent transportation. It serves the miscellaneous and predominantly local transportation needs of the community. It may include such occasional and unscheduled trips to or from transportation terminals as the individual passengers may request, and may include stands at the transportation terminals as well as at other places where numerous demands for taxicab transportation may be expected.

24h02   Exemption limited to drivers. The OT exemption contained in Sec 13(b)(17) applies to "any driver" employed by an employer engaged in the business of operating taxicabs. The exemption is thus limited to drivers only. (For discussion of nonexempt work, see FOH 24h03.)

24h03   Examples of nonexempt work. (a) Examples of nonexempt work by "any driver" for purposes of Sec 13(b)(17) are:

   (1) Acting as a dispatcher.

   (2) Performing general clerical duties (making reports in connection with his own driving operations is within the exemption).

   (3) Performing general mechanical or repair services on vehicles (cleaning, washing, or making incidental minor repairs on the vehicle assigned to him as a driver are within the exemption.)

   (4) Performing work, including driving, in connection with other business operations of the employer (i.e., not his taxicab operations), such as operation of an airport limousine service (see FOH 24c04), a pick-up and delivery service, or a moving and storage service.

24h04   Tolerance for nonexempt work. In applying Sec 13(b)(17) the exemption shall be deemed applicable even though some nonexempt work is performed by the employee during the workweek, unless the amount of such nonexempt work is substantial. The amount of nonexempt work will be considered substantial if it occupies more than 20% of the time worked by the employee during the workweek. (See IB 786.200.)

24h05   Possible application the Sec 13(b)(1) exemption. If for any reason, taxicab drivers are not exempt from the OT requirements of the Act under Sec 13(b)(17), the possible application of Sec 13(b)(1) should not be overlooked. (See FOH 24c04 and 24e).