1
2
3
4

Norman H. Kirshman, Esq.
State Bar Number: 2733
3800 Howard Hughes Parkway, Ste. 500
Las Vegas, NV 89169
Telephone: (702) 699-5917
Facsimile: (702) 369-5497

5
6
7
8

Mark E. Trafton, Esq.
State Bar Number 6525
1900 Industrial Road
Las Vegas, NV 89102
Telephone: (702) 385-1813
Facsimile: (702) 382-9633
Attorneys for Defendant

9

10    **U.S. DISTRICT COURT**

11    **DISTRICT OF NEVADA**

12
13

ANTHONY LUCAS, GREGORY H.
CASTELLO, LILLIAN MELTON, LEAVON
R. SMITH, ROBERT A. GREENE on behalf
of themselves and all others similarly situated,

CASE NO.        2:08-CV-01792-RCJ-RJJ

14
15
16
17

Plaintiff(s)

vs.

BELL TRANS, a Nevada Corporation, Does 1-
50, inclusive,

**DEFENDANT'S REPLY TO
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PURSUANT TO
FRCP 12(b)(6); and SUMMARY
JUDGMENT WITH PREJUDICE**

18        Defendant(s)

19
20
21

22

23    **I.      INTRODUCTION**

24        Plaintiffs' Response is noteworthy for its failure to seriously deal with the Nevada

25    Supreme Court's Decision in <u>Baldonado et al v. Wynn Las Vegas, LLC</u>, 194 P.3d 96 (2008).

26    Understandably, the Response cites NRS 608.140;.[1] and Section 16(B) of the Nevada

27    _____

28        [1]It is worthy of note that 608.270 provides that "the labor commissioner <u>shall</u>: 1(a)
Administer and enforce the provisions of NRS 608.250; ("minimum wage"), refer "violations of
608.250 . . . coming to the attention of the labor commissioner to the district attorney of any county

Constitution (Exhibit A), a 2006 Amendment.   Plaintiffs concede NRS 608.260 does not provide a private right of action.

Baldonado, Id., concludes NRS 607.205 and 207 "require the Labor Commissioner to hear and decide complaints seeking enforcement of the labor laws."  (Emphasis added). (Id. 104)

"Accordingly, the Labor Commissioner's duty to hear and resolve enforcement complaints is not discretionary, and appellants had access to an adequate administrative enforcement mechanism, precluding a finding of legislative intent to create a parallel private remedy." (Id. 104)

Baldonado, Id., therefore, in addition to addressing the "tip issue" goes further and precludes an implied private action where the alleged violation relates to an employer's failure to pay the published minimum wage, NRS 608.250.[2]  Here, as Defendant will demonstrate, the Constitutional Amendment, Section 16 (B) does not invalidate the exemptions set forth in NRS 608.250(2).

Although the Complaint goes into great detail citing numerous statutes and regulations dealing with procedural issues, particularly the Rule 23 Class Action they seek in respect to the Nevada claims, the only Nevada substantive claims set forth are based upon NRS 608.100,[3] identified by Baldonado, Id., as being within the exclusive jurisdiction of the Nevada Labor Commissioner, violation of which does not give rise to a private cause of action.

//

//

_____

. . ." in which the labor commissioner believes violations have occurred.

[2]The exemption that exists for "Drivers of taxicabs or limousines pursuant to NRS 608.018 (2)(k) for overtime, and minimum wage," NRS 608.250(2)(e), will be discussed infra.

[3]Complaint, pages 10:19-20; 13:26; 16:21; 17:10.

## II.   SUMMARY OF THE FACTS

To the extent the Court can separate the facts from Plaintiffs' premature argument for certification of two classes, an "opt in" group to accommodate members whose claims are subject to the Fair Labor Standards Act ("FLSA"); and a Rule 23 "opt out" group to accommodate members whose claims are governed by Nevada law, including Section 16(B), the 2006 Amendment to the Nevada Constitution.  Generally, the facts are undisputed and Defendant believes the outcome of this case will be determined by the law.

## III.   ARGUMENT

A.   Baldonado v. Wynn, 194 P.3d 96 (2008) Is Dispositive

As noted in the INTRODUCTION, the gravamen of Plaintiffs' claims are alleged violations of NRS 608.100.  Accordingly, the Complaint must be dismissed as this Court should defer to the Baldonado, Id.,  finding that no basis exists to imply a private cause of action.

The Baldonado Court, in agreement with the District Court, found that Defendant Wynn was entitled to judgment as a matter of law because Plaintiffs had no private cause of action to enforce NRS 608.160, 100 or NRS 613.120.  Plaintiffs' attempt to distinguish Baldonado, Id., fails, as the primary factual issue about which there was no dispute, dealt with Wynn's change in policy, enlarging the group of employees entitled to share in tips.  The Nevada Supreme Court found no legislative intent from which to imply a private cause of action.  Id, 100-101; and "[concluded] that, in light of the statutory scheme **requiring** the Labor Commissioner to enforce the labor statutes and the availability of an adequate administrative remedy for those statutes' violations, the Legislature did not intend to create a parallel private remedy for NRS 608.160 violations."  Id. 102. (Emphasis added.)  The Nevada Supreme Court's "CONCLUSION" at page 17, says it all, and requires dismissal of the claims based upon Nevada

- 3 -

1    Law.  Should there be an amendment; Defendant Bell Trans will address the amended

2    Complaint.

3              B.      Section 16(B) Of The Nevada Constitution Does Not Invalidate NRS
4                      608.250(2)(e)

5                      The Nevada Constitution at Article 3, addresses separation of powers into

6    Executive, Legislative and Judiciary departments.   Section 1 of Article 3 states, inter alia, ". . .

7    no persons charged with the exercise of powers properly belonging to one of these departments

8    shall exercise any functions, appertaining to either of the others, except in the cases expressly

9    directed or permitted in this constitution."

10   directed or permitted in this constitution."

11                     NRS 607.010 creates "the office of labor commissioner."

12                     NRS 607.205, 207 and 215 provides the labor commissioner with the power to

13   conduct hearings and issue decisions subject to judicial review.[4]

14

15                     See LeVick v. Skaggs Companies, Inc., 701 F.2d 777, 779 (9th Cir. 1983) ("Upon

16   examination of Subchapter II of the Consumer Credit Protection Act, of which §1674 is a part,

17   we are unable to find any manifestation of congressional intent to provide a private right of

18   action under §1674(a).  Indeed, what evidence there is suggests that Congress intended such a

19   right not to be available."); and Mtoff v. Brinker Restaurant Corp., 439 F.Supp.2d 1035, 1037

20   (C.D. Calif. 2006) ("When a regulatory statute provides for enforcement by an administrative

21   agency, California courts generally conclude the Legislature intended the administrative remedy

22   agency, California courts generally conclude the Legislature intended the administrative remedy

23   to be exclusive, unless the statutory language or legislative history clearly indicates otherwise.

24   See id. at 66, 82 Cal.Rptr.2d 442; Farmers Ins. Exchange v. Superior court, 137 Cal.App.4th

25   842, 8850, 40 Cal.Rptr.3d 653 (2006).")

26

27

28           [4]The Labor Commissioner is required "to hear and decide complaints seeking enforcement
     of the labor laws."  Baldonado, Id. 104.

- 4 -

C.    The Labor Commissioner Must Exercise His Authority, Despite The Opinion Of The Attorney General

In Lockyer v. San Francisco, 95 P.3d 459 (2004), the California Supreme Court in a comprehensive Decision, addressed a fact situation in which the Mayor of San Francisco, through county officials, refused to enforce a Legislative Initiative passed by the voters providing, inter alia, "Marriage is a personal relation arising out of a civil contract between a man and a woman . . ." California Family Code, Sections 300 to 310.

Pursuant to instructions by the Mayor, the Application, License and related documents were altered to authorize same sex marriages.  The City defended the alterations and refused to comply with the statutes based upon the officials' belief the "statutory restriction in California law limiting marriage to a man and a woman is unconstitutional." Lockyer, Id. 471. The Attorney General's contention was "that a duly enacted statute is presumed to be constitutional."  The Court agreed and "[concluded] that a local public official charged with the ministerial duty of enforcing a statute does not have the authority to refuse to enforce the statute, in the absence of a judicial interpretation of unconstitutionality."  (Emphasis added.)  The statute was enforced as written.  The Court addressed the issue as one of "Separation of Powers" and held that resolution of a dispute as to the constitutionality of a statute is a power reserved to the Judiciary.

The Lockyer decision "is consistent with the general rule applied in the overwhelming majority of cases from other jurisdictions" Lockyer, Id. 489.  Thus,  the Labor Commissioner in the case at bar is duty bound to respect NRS 608.250(2)(e),  the statutory exceptions for drivers of taxicabs and limousines.

//

//

D.   The "Exclusions" To NRS 608.250(2)(e) Are Not Invalidated By Section 16(B), The "Minimum Compensation" Amendment To The Nevada Constitution.

The "Ballot" and information provided to voters makes no reference to the exclusions set forth in the Statute; particularly 2(e) Taxi and limousine drivers.  In fact, the "Ballot Question" is:

"Shall the Nevada Constitution be amended to raise the minimum wage paid to employees?" (Exhibit B) (Emphasis added).

The Full Text of the Measure is entitled: "Raise The Minimum Wage For Working Nevadans."  (Exhibit B, page 35).

1)   The Nevada Attorney General's 2005 Opinion No. 04, March 2, 2005 (Exhibit C) Is Seriously Flawed

Opinions of Attorney Generals are neither binding legal authority nor precedent.  Blackjack Bonding v. City of Las Vegas Municipal Court, 116 Nev. 1213, 14 P.3d 1275 (2000); Paschall v. State, 116 Nev. 911, 8 P.3d 851 (2000).

Here, the Opinion employs unwarranted "presumptions that have no basis in fact." NRS 47.2000.

For example: At page 3, the Opinion concedes "the primary focus of the initiative is on raising the current Nevada minimum wage . . . "

At page 4, it is opined, ". . . it unmistakenly appears that the voters intended for the proposed amendment to transform the existing statutory framework for minimum wages."

At page 4, the Opinion cites State ex rel. Nevada Orphan Asylum v. Hallock, 16 Nev. 373, 378 (1882), for the proposition that "ratification of a constitutional amendment will render void any existing law that is in conflict with the amendment."

1    That statement impermissibly oversimplifies <u>Hallock</u>, Id., which involved a direct

2    conflict between the Nevada Constitution's prohibition on expenditure of public funds for

3    "sectarian purposes," and a State appropriations to the contrary.   The Orphan Asylum, following

4    an evidentiary hearing, was found to be an adjunct of a Catholic church, run by nuns and

5    functioned as a sectarian establishment.   In view of the direct conflict between the Nevada

6    Constitution and the appropriation by the legislature of funds for "sectarian purposes", the Writ

7    of Mandamus ordering the Controller to cause payment of the appropriation was denied.   The

8    Case offers an interesting view of history, but nothing more - certainly no support for the 2005

9    Opinion of the Attorney General.

10   At page 5, the Opinion states: "The effect of the proposed amendment on the NRS

11   608.250 exclusions is controlled by two presumptions.   First, the voters should be presumed to

12   know the state of the law in existence related to the subject upon which they vote.   Op.Nev.Att'y.

13   Gen. 153 (December 21, 1934.)[5]   Second, it is ordinarily presumed that [where] a statute is

14   amended, provisions of the former statute omitted from the amended statute are repealed."

15   <u>McKay v. Board of Supervisors</u>, 102 Nev. 644, 650, 730 P.2d 438 (1986), also

16   cited by the Attorney General,   involved the Nevada "Open Meeting Law," as amended in 1977

17   which deleted express exceptions from the Open Meeting requirement  for discussion of

18   appointment, employment or dismissal.   The Court in 1986 found the "express exceptions" were

---

24   [5]The 2005 Opinion (Exhibit C) referring to a 1934 Attorney General Opinion (Exhibit D),
     fails to note that its reliance on <u>Clover Valley v. Lamb</u>, 43 Nev. 375 (1920) addressed the interaction
25   of a constitutional provision establishing limitations on monies appropriated for payment of bounties
     for the destruction of predatory animals.   No special appropriation was made for payment of  a
26   device to be used to perforate the skin of such animals.   Relevant to the case before this Court, the
     1934 Opinion stated, "Pertinent to the instant matter is the rule of law laid down by the Supreme
27   Court of Nevada . . . the <u>Legislature</u> must be presumed to have knowledge of the state of the law
28   upon the subject upon which it legislates." (Emphasis added.)

thereby deleted and a "closed" meeting covering one or more of the deleted exceptions violated

the law.  The <u>McKay</u> Court clearly found a legislative intent to narrow the exceptions to the

Open Meeting statute by substituting as exceptions "consideration of a person's character,

alleged misconduct, professional competence or physical or mental health."

The challenged action taken in the "closed session" was to vote on the Board's

request for the City Manager's resignation and authorization for six months severance, actions

deleted by the 1977 Amendment.  Thus, the Court had a basis from which it could glean the

intent of the amendment to exclude definitive action, i.e. hiring, firing or appointment from

"closed sessions."

To the contrary, here the presumptions relied upon by the Attorney General's

2005 Opinion are just that - Opinion!    <u>McKay</u>, Id.,  supports Defendant's position that Section

16(B) was not intended to repeal the exclusions for drivers of taxi or limousines specified in

NRS 608.250(2)(e).

**III.    CONCLUSION**

The knowledgeable voter presumption embraced by the Attorney General  runs a collision

course with the Ballot and accompanying information; and is unsupported by the cases cited in

the 2005 and 1934 Attorney Generals' Opinions.  If the proposition advanced by the 2005

Attorney General's Opinion that the absence of text in Section 16 addressing the exceptions set

forth in NRS 608.250(2)(e) are deleted; and only employees described in Section 16(C) are

excluded from minimum wage coverage, would it follow that NRS 608.250(2)(a) casual

babysitters; (b) domestic service employees who reside in the household where they work; (c)

outside salespersons whose earnings are based on commissions; (d) employees engaged in an

agricultural pursuit, etc.; and (f) severely handicapped persons whose disabilities have

1  diminished their productive capacity, etc., are no longer excluded from the minimum wage

2  mandated by the Amendment?  Such an interpretation would no doubt  be overkill and a far cry

3  from anything disclosed to the voters.  Nevertheless, that result would be mandated if the

4  Attorney General's interpretation is accepted.[6] [7]

5

6          In view of the foregoing, Defendant's Motion should be granted.

7

8  DATED: February **20**__, 2009                    Respectfully submitted,

9

10

11                                                   *Norman H. Kirshman*
                                                     Norman H. Kirshman
12                                                   3800 Howard Hughes Parkway, Ste 500
                                                     Las Vegas, NV 89169
13                                                   (702) 699-5917

14

15

16

17

18

19

20

21  _____

22      [6]"When one interpretation of an ambiguous contract would lead to harsh, absurd, or
    nonsensical results, while an alternative interpretation, equally plausible, would lead to just and
23  reasonable results, the latter interpretation will be used." (pp. 470-471, *"How Arbitration Works"*,
    Elkouri & Elkouri, American Bar Association, 6th Ed.)

24
        [7]Grounds for substantive review of arbitral awards. See Loveless, et al. v. Eastern Air Lines,
25  Inc., 681 F.2d 1272, (11th Cir. 1982)("whether the award is irrational, see. e.g. Gunther v. San Diego
    & Arizona E.Ry., 382 U.S. 257, 261, 86 S.Ct. 368, 370, 15 L.Ed.2d 308 (1965)("wholly baseless and
26  completely without reason"); Safeway Stores v. American Bakery Workers, Local 111, 390 F.2d at
    82 ("if . . . no judge, or group of judges, could ever conceivably have made such a ruling");
27  S.Rep.No.1201, supra, at 3, reprinted in 1966 U.S. Code Cong. & Ad.News, at 2287 ("actually and
    indisputably without foundation in reason or fact")
28

                                            - 9 -

## CERTIFICATE OF MAILING

I hereby certify that on the _20th_ day of _February_, 2009, I served a true and correct copy of **DEFENDANT'S REPLY TO OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6); and SUMMARY JUDGMENT WITH PREJUDICE** by depositing same in the United States mail, first class postage fully prepaid to the persons and addresses listed below:

Mark R. Thierman
Thierman Law Firm P.C.
7287 Lakeside Drive
Reno, NV 89511

_Lynn A. Vlahos_
An Employee of Norman H. Kirshman P.C.