# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

ANTHONY LUCAS, GREGORY H. CASTELLO, LILLIAN MELTON, LEAVON R. SMITH, ROBERT A. GREENE, on behalf of themselves and all others similarly situated,

    Plaintiffs,

vs.

BELL TRANS, a Nevada Corporation, Does 150, inclusive,

    Defendant.

2:08-cv-01792-RCJ-RJJ

**ORDER**

    This lawsuit is a class and collective action for unpaid minimum wages and overtime compensation brought on behalf of all persons who worked for Defendant Bell Trans during the last three years as limousine drivers. Now before the Court is Bell Trans's Motion to Dismiss. (#4). The Limousine Plaintiffs have also filed a Motion for Leave to Amend Complaint (#9) and a Motion to Strike a sur-reply filed by Bell Trans in relation to the Motion for Leave to Amend Complaint (#18). The Court has considered the motions, briefs, pleadings, and oral argument on behalf of all parties and issues the following opinion and order.

**I.    FACTS**

    On December 18, 2008, Plaintiffs Anthony Lucas, Gregory H. Castello, Lillian Melton, Leavon R. Smith, and Robert A. Greene (collectively, "the Limousine Plaintiffs") filed the present lawsuit individually and on behalf of all persons who were employed by Bell Trans as limousine drivers within the last three years. (#1). The Limousine Plaintiffs have pleaded claims for 1) failure

to pay wages for each hour worked in violation of NRS 608.016; 2) failure to pay minimum wages in violation of the Fair Labor Standards Act, 29 U.S.C. § 206 and Section 16 of the Nevada Constitution; 3) failure to pay overtime compensation in violation of NRS 608.100 and the Fair Labor Standards Act, 29 U.S.C. § 207; 4) failure to pay wages in violation of NRS 608.040; and 5) unlawful wage deductions in violation of NRS § 608.100.  Bell Trans has now filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure  (#4).

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted.  A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See North Star Int'l. v. Arizona Corp. Comm'n*., 720 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1964 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff.  *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).  The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896

1 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted).  Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment.  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record."  *Mack v. South Bay Beer Distrib*., 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment.  *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

If the court grants a motion to dismiss a complaint, it must then decide whether to grant leave to amend.  The court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment . . . ."  Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment.  *See DeSoto v. Yellow Freight Sys., Inc*., 957 F.2d 655, 658 (9th Cir. 1992).

**III.    ANALYSIS**

Bell Trans argues that the Limousine Plaintiffs cannot state a claim for violation of Nevada's labor laws because there is no private right of action related thereto.  Bell Trans argues that the Nevada Labor Commissioner has exclusive jurisdiction over the enforcement of Nevada's labor laws. In support of its state law claims, the Limousine Plaintiff rely upon several provisions within NRS Chapter 608 and Section 16 of the Nevada Constitution.  NRS Chapter 608 governs employment compensation, wages, and hours, making employers responsible for paying employee wages.

A.     *Baldonado v. Wynn Las Vegas*

Bell Trans's argument rests on the recent Nevada Supreme Court decision, *Baldonado v. Wynn Las Vegas*, LLC, 194 P.3d 96 (2008). In *Baldonado*, Daniel Baldonado and Joseph Cesarz were employed by Wynn Las Vegas as table game dealers. *Id*. at 98. At the beginning of their employment, Wynn had a toke pooling and distribution policy, outlining the manner in which employee tokes, or tips, would be collected, calculated, and distributed, which limited the distribution of tips among the actual dealers. *Id*. Wynn later revised the pooling and distribution policy so that the pit manager and floor supervisor positions also received a share of the daily tip pool, which ultimately resulted in a reduction of the table dealers' shares of the pool by 10 to 15 percent and a reduction in their overall salaries. *Id*. at 99. As a result, Baldonado and similarly situated table dealers filed a class action against Wynn, claiming that the modified toke policy reduced their compensation in violation of NRS 608.160 (making it unlawful for employers to take employee tips), NRS 608.100 (making it unlawful for employers to require employees to rebate compensation earned and paid), and NRS 613.120 (making it unlawful for managers and shift bosses to receive gratuities from employees as a condition of the employees' employment). *Id*.

The district court dismissed the plaintiffs' complaint on the ground that the particular Nevada statutes relied on by the plaintiffs provided no private causes of action. The Nevada Supreme Court affirmed. In its decision, the Nevada Supreme Court analyzed the existence of a private right of action under NRS 608.160, but it stated that its reasoning and decision as to NRS 608.160 applied equally to NRS 608.100 and NRS 613.120, because the latter two statutes "are included within the Labor Commissioner's authority in the same manner as, and phrased similarly to, NRS 608.160, in that all three statutes deem certain employer conduct unlawful . . . ." *Id*. at 100.

The Nevada Supreme Court began its analysis by observing that NRS 608.160 "does not expressly mention whether employees may privately enforce its terms." *Id*. As a result, the Court had to determine whether a private right of action could be implied in NRS 608.160. *Id*. "Whether

1  a private cause of action can be implied is a question of legislative intent." *Id.* at 100–01.  To that
2  end, three factors guide a court's analysis in gauging the legislative intent to create an implied private
3  of action: "(1) whether the plaintiffs are 'of the class for whose [e] special benefit the statute was
4  enacted'; (2) whether the legislative history indicates any intention to create or to deny a private
5  remedy; and (3) whether implying such a remedy is 'consistent with the underlying purposes of the
6  legislative [sch]eme.'"  *Id*. at 101 ((quoting *Sports Form v. Leroy's Horse & Sports*, 108 Nev. 37,
7  39, 823 P.2d 901, 902 (1992) (quoting *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26
8  (1975)) (quotations omitted).

9  As the first two factors were not helpful, the Nevada Supreme Court based its holding on
10 the third factor—"whether a private remedy is consistent with the legislative scheme." *Id*. at 102.
11 The Court broke its third factor analysis into two parts.

12 First, it determined that "the Legislature has entrusted the labor laws' enforcement to the
13 Labor Commissioner, unless otherwise specified." *Id*.  It observed that NRS 608.180 provides that
14 "[t]he Labor Commissioner or his representative shall cause the provisions of NRS 608.005 to
15 608.195, inclusive, to be enforced." *Id*.  If there is a violation of any of the provisions falling within
16 NRS 608.005 to 608.195, then the Labor Commissioner "can direct the district attorney, the Deputy
17 Labor Commissioner, the Attorney General, or special counsel to 'prosecute the action for
18 enforcement according to law.'" *Id*. (quoting NRS 608.180).  The Court acknowledged that as a
19 general matter, "when an administrative official is expressly charged with enforcing a section of
20 laws, a private cause of action generally cannot be implied." *Id*.

21 The second half of the Nevada Supreme Court's analysis highlighted the adequacy of an
22 administrative remedy provided under Chapter 608.  That administrative scheme allows private
23 parties to file labor law complaints with the Labor Commissioner.  The Commissioner has a duty
24 to hear and resolve such complaints.  *Id*. at 104.  NRS 607.205 and NRS 607.207 establish the Labor
25 Commissioner's authority to conduct hearings to resolve labor complaints.  After a hearing is

1  conducted, the Commissioner must render a written decision within thirty days, setting forth findings
2  of fact and conclusions of law, which must be mailed to the parties. *Id.* at 103.  The parties can then
3  challenge the Labor Commissioner's decision through a district court petition for judicial review,
4  which can ultimately be appealed to the Nevada Supreme Court. *Id*.  These two factors led the
5  Nevada Supreme Court to hold that "in light of the statutory scheme requiring the Labor
6  Commissioner to enforce the labor statutes and the availability of an adequate administrative remedy
7  for those statutes' violations, the Legislature did not intend to create a parallel private remedy for
8  NRS 608.160 violations." *Id*. at 102.

9  In *Baldonado*, the Court bolstered its decision in a footnote on another ground, which at the
10 same time left open the possibility for some provisions within NRS 608 as creating a private right
11 of action.  It noted that two other statutes in NRS Chapter 608, not relied upon by the plaintiffs in
12 that case, "expressly recognize a civil enforcement action to recoup unpaid wages: NRS 608.140
13 (civil actions by employees to recoup unpaid wages) and NRS 608.150 (civil actions by the district
14 attorney to recoup unpaid wages from general contractors)." *Id*. at 104 n.33.  In contrast, the
15 provisions relied upon by the plaintiffs in *Baldonado*—NRS 608.160, NRS 608.100, and NRS
16 613.120—did not contain such express language. *Id*.  Accordingly, "[t]he existence of express civil
17 remedies within the statutory framework of a given set of laws indicates that the Legislature will
18 expressly provide for private civil remedies when it intends that such remedies exist; thus, if the
19 Legislature fails to expressly provide a private remedy, no such remedy should be implied." *Id*.

20 Under *Baldonado*, the Limousine Plaintiffs do not have an implied private right of action
21 under NRS 608.100.  The Limousine Plaintiffs attempt to escape the *Baldonado* holding by arguing
22 that *Baldonado* only applies to tips, not wages.  Clearly, that is not the case, as the Nevada Supreme
23 Court stated that its reasoning for not recognizing an implied private right of action under NRS
24 608.160 also applied to the other two statutes at issue, including NRS 608.100.  Thus, the Court
25 holds that there is no private right of action in NRS 608.100.

The existence of a private right of action to recover unpaid wages, however, can be found in NRS 608.140, which recognizes a cause of action for wages earned and unpaid. NRS 608.140 indicates that a laborer or employee can "have cause to bring suit for wages earned and due according to the terms of his employment," and if he does, he can obtain a "decision of the court or verdict of the jury that the amount for which he has brought suit is justly due . . . ." As previously mentioned, in *Baldonado*, the Nevada Supreme Court recognized that NRS 608.140 contains an express civil remedy in the form of a civil action by employees to recoup unpaid wages. 194 P.3d at 104 n.33. Thus, NRS 608.140 demonstrates that there is a private right of action in NRS 608 for unpaid wages. *See Nunez v. Sahara Nevada Corp.*, 677 F.Supp. 1471, 1475 n.7 (D.Nev. 1988) (stating that NRS 608.140 "specifically creates a cause of action for wages earned and unpaid and penalties and a reasonable attorney's fee."); *Moen v. Las Vegas Intern. Hotel, Inc.*, 402 F.Supp. 157, 160–61 (D.Nev. 1975) (holding same).

Chapter 608 also contains a private right of action for unpaid wages in NRS 608.016, NRS 608.020, and NRS 608.040. "An employer shall pay to the employee wages for each hour the employee works." NRS 608.016. "Whenever an employer discharges an employee, the wages and compensation earned and unpaid at the time of such discharge shall become due and payable immediately." NRS 608.020. "If an employer fails to pay: (a) Within 3 days after the wages or compensation of a discharged employee becomes due . . . the wages or compensation of the employee continues at the same rate from the day he . . . was discharged until paid or for 30 days, whichever is less." NRS 608.040(1). In *Boucher v. Shaw*, three former employees of the Castaways Hotel, Casino and Bowling Center sued three of their former managers under these three statutory provisions to recover unpaid wages for themselves and for a class of Castaways employees. *Boucher v. Shaw*, 483 F.3d 613, 614–15 (9th Cir. 2007). The district court dismissed the plaintiffs' lawsuit, in part, because the district court held that the three managers could not qualify as "employers" under Chapter 608 of the Nevada Revised Statutes. *Id*. On appeal, the Ninth Circuit determined that the

1  question of whether individual managers could be held liable as employers for unpaid wages under
2  Chapter 608 of the Nevada Revised Statutes should be certified to the Nevada Supreme Court. *Id*.
3  at 616.  The Nevada Supreme Court agreed with the district court, holding that Chapter 608's
4  definition of "employer" does not extend beyond common law employers to include individual
5  managers. *See Boucher v. Shaw*, 124 Nev. 96, 196 P.3d 959 (2008).  Neither the district court nor
6  the Ninth Circuit nor the Nevada Supreme Court stated that the plaintiffs did not have a private right
7  of action for unpaid wages under Chapter 608.  All three courts assumed that such a right existed.
8  This Court does not disagree.

9       In sum, there is no general private right of action for all of the provisions found in Chapter
10  608.  This conclusion is confirmed by *Baldonado*.  In most cases, a private party must first file a
11  complaint with the Labor Commissioner and obtain a decision from the Commissioner before
12  bringing any kind of lawsuit in court.  Nevertheless, Chapter 608 does contemplate a private right
13  of action for the recovery of unpaid wages that the employee has earned.

14       Based upon the discussion above, the Limousine Plaintiffs may sue for the recovery of unpaid
15  wages. The Limousine Plaintiffs make this claim in their first cause of action.  They allege that Bell
16  Trans only paid them for when they were actually driving customers. (#1, ¶ 32).  According to them,
17  there were many other times when they should have been paid for their time but they were not.  For
18  example, they allege that they should have been paid for their attendance at a 4-day training class that
19  they were required to attend before employment.  (*Id*., ¶ 34).  They also allege that they should have
20  been paid for the fifteen minutes that they were required to be present before their actual shift began
21  to wait in line at the dispatch office to pick up their trip sheets and keys.  (*Id*., ¶ 35).  Thus, the
22  Limousine Plaintiffs have stated a cause of action under Nevada law for unpaid wages, consistent
23  with NRS 608.140 and NRS 608.040.  The Limousine Plaintiffs, however, cannot proceed with a
24  private action under NRS 608.100.

25

**B.**     **Minimum Wages**

The private right of action for unpaid wages, however, does not extend to minimum wage and overtime claims. Unearned wages is different from unpaid minium wages or overtime compensation.

### 1.     The Nevada Wage and Hour Law

Nevada has minimum wage and overtime compensation statutes. The Nevada Wage and Hour Law ("NWHL"), like the Fair Labor Standards Act ("FLSA"), establishes minimum wages that apply to private employers within this state. *See* NRS 608.250. Under the NWHL, the Labor Commissioner is to establish by regulation the minimum wage that may be paid to employees in private employment within the State. NRS. 608.260 recognizes a private right of action by the employee against his or her employer to recover the difference between the amount paid to the employee and the amount of the minimum wage. The NWHL's minimum wage requirements, however, only apply to certain employees. The NWHL expressly states that it does not apply to taxicab and limousine drivers. NRS 608.250(e). Under the NWHL, the Limousine Plaintiffs have no claim for violation of unpaid minimum wages under Nevada law.

### 2.     The Amendment

In 2004, the Nevada Constitution was amended, Nev. Const. art. 15, § 16, by initiative, to increase the state minimum wage. The Amendment was approved by the voters again in the 2006 general election. The Amendment provides that state minimum wage "shall be five dollars and fifteen cents ($5.15) per hour worked, if the employer provides health benefits as described herein, or six dollars and fifteen cents ($6.15) per hour if the employer does not provide such benefits . . . ." Nev. Const. art. 15, § 16(A). The Amendment states the following:

> An employee claiming violation of this section may bring an action against his or her employer in the courts of this State to enforce the provisions of this section and shall be entitled to all remedies available under the law or in equity appropriate to remedy any violation of this section, including but not limited to back pay, damages,

> reinstatement or injunctive relief. An employee who prevails in any action to enforce this section shall be awarded his or her reasonable attorney's fees and costs.

*Id*. at § 16(B). As to the definition of "employee," the Amendment states the following:

> "employee" means any person who is employed by an employer as defined herein but does not include an employee who is under eighteen (18) years of age, employed by a nonprofit organization for after school or summer employment or as a trainee for a period of not longer than ninety (90) days.

*Id*. at § 16(C).

Thus, the Amendment does not include the excluded categories listed in NRS 608.250(2). Under the Amendment's language, as long as one is 18 years or older and does not work for the type of nonprofit organization program described above, he or she has a private right of action to collect minimum wages as provided in § 16.

In March 2005, the Nevada Attorney General issued an opinion on whether the Amendment, which was merely proposed at that stage, would void NRS 608.250 through NRS 608.290. The relevant excerpt from his opinion on this issue stated the following:

> The effect of the proposed amendment on the NRS 608.250 exclusions is controlled by two presumptions. First, the voters should be presumed to know the state of the law in existence related to the subject upon which they vote. Op. Nev. Att'y Gen. 153 (December 21, 1934). Second, it is ordinarily presumed that "[w]here a statute is amended, provisions of the former statute omitted from the amended statute are repealed." *McKay v. Board of Supervisors*, 102 Nev. 644, 650, 730 P.2d 438, 442 (1986). In keeping with these presumptions, the people, by acting to amend the minimum wage coverage and failing to include the statutory exclusions in the proposed amendment, are presumed to have intended the repeal of the existing exclusions so that the new minimum wage would be paid to all who meet its definition of "employee." Accordingly, the proposed amendment would effect an implied repeal of the exclusions from minimum wage coverage at NRS 608.250(2).

05-04 Op. Nev. Att'y. Gen. 7 (Mar. 2, 2005).

The Nevada Attorney General's opinion does not necessarily carry weight with this Court. The Nevada Supreme Court has concluded in the past that "[o]pinions of the Attorney General are not binding legal authority or precedent." *Blackjack Bonding v. City of Las Vegas Municipal Court*,

1  116 Nev. 1213, 1218, 14 P.3d 1275, 1279 (2000). In *Blackjack Bonding*, the Nevada Supreme Court
2  had to decide whether municipal courts have the power to collect fees independent of specific
3  statutory authorization. *Id*. In support of the plaintiff's position, the plaintiff relied upon an opinion
4  of the Nevada Attorney General that concluded that municipal courts are not empowered by the
5  Nevada Constitution or statutory authority to collect filing fees for bail or property bonds. *Id*. The
6  Nevada Supreme Court held to the contrary. In doing so, as a general matter, it recognized the lack
7  of weight that the Attorney General's opinion carried with the Court, and more particularly, it
8  determined that the Nevada Attorney General's basis for his opinion in that case was wrong. *Id*.

9  As to the Attorney General's opinion on the Amendment, the Attorney General's reasoning
10 seems to be inconsistent. In the beginning of the Attorney General's analysis, the Attorney General
11 recognized that "[a] constitutional amendment, ratified subsequent to the enactment of a statute, is
12 controlling on any point covered in the amendment." *Id*. at 5 (citing *State ex rel. Nevada Orphan*
13 *Asylum v. Hallock*, 16 Nev. 373, 378 (1882)). The Attorney General also stated that "ratification of
14 a constitutional amendment will render void any existing law *that is in conflict* with the
15 amendment." *Id*. (emphasis added) (citing Op. Nev. Att'y Gen. 08 (May 19, 1908); 16 AM. JUR.
16 2d Constitutional Law § 68 (1979)). But the Amendment did not cover any of the exceptions found
17 in NRS 608.250; it made no mention of NRS 608.250 or its exceptions. Furthermore, the
18 Amendment's definition of "employee" is not necessarily in conflict with NRS 608.250. The NRS
19 608.250 exceptions and the Amendment's definition of "employee" can happily co-exist.

20 The Attorney General's two presumptions are also questionable. First, to presume that the
21 general citizenry is aware of and well-versed in all of its government's laws is highly idealistic.
22 With the mountain of statutes and regulations that exists at the federal, state, and local government
23 level, most citizens would need to be spending a lot of time in the library to know the terms of all
24 the laws applicable to them. Second, the Attorney General relied upon the general principle that
25 "[w]here a statute is amended, provisions of the former statute omitted from the amended statute are

repealed." *McKay v. Board of Sup'rs of Carson City*, 102 Nev. 644, 650, 730 P.2d 438 (1986). A related principle is that "[i]t is ordinarily presumed that the legislature, by deleting an express portion of a law, intended a substantial change in the law." *Id*.

The problem with the Attorney General's second presumption is that NRS 608.250 was enacted by the Nevada Legislature, but the Amendment was not. The Amendment came directly from the people of Nevada (or a majority of them) in conformity with Nevada's initiative process. *See* Nev. Const. art. 19, § 2 (reserving to the people the power to propose, by initiative petition, amendments to the constitution, and to enact or reject them at the polls); *Garvin v. Ninth Judicial Dist. Court ex rel. County of Douglas*, 118 Nev. 749, 751, 59 P.3d 1180, 1181 (2002) (discussing the initiative power). Thus, the applicability of these principles of statutory interpretation to the case here is much weaker than if the Nevada legislature actually amended NRS 608.250.

Additionally, the Attorney General himself stated that "the primary focus of the initiative [was] on raising the current Nevada minimum wage of $5.15 per hour . . . ." 05-04 Op. Nev. Att'y. Gen. 6 (Mar. 2, 2005). As a result of that focus, the presumption that the people of Nevada were likely aware of the various exceptions under NRS 608.250 does not seem that strong. If the people knew anything about NRS 608.250 at the time they voted on the Amendment, it was most likely the minimum wage prescribed under that state law.

The Attorney General opined that because the Amendment did not expressly incorporate the exceptions found in NRS 608.250 but instead included its two own exceptions (i.e., above 18 years old and not participating in a non-profit organization program), the Amendment impliedly repealed all of the NRS 608.250 exceptions. Under Nevada law, however, the implied repeal of a statute is "heavily disfavored." *Washington v. State*, 117 Nev. 735, 30 P.3d 1134, 1137 (2001). The Nevada Supreme Court has stated that it "will not consider a statute to be repealed by implication unless there is *no other* reasonable construction of the two statutes." *Id*. (emphasis added). "The fact that a statute is enacted after another statute, but is subsequently amended without mention of the first

statute, may weigh against a finding of legislative intent to repeal by implication." *Id*. The Amendment made no reference to NRS 608.250. There is no indication that when Nevada voters went to the polls, they were informed that their vote would be repealing or amending NRS 608.250 and its multiple exceptions.

In sum, this Court cannot conclude that there is no other reasonable construction of the Amendment than that it repealed NRS 608.250. The Amendment made absolutely no reference to NRS 608.250. The focus of the Amendment was the actual minimum wage. And the Amendment's definition of "employee" is not in conflict with NRS 608.250's exceptions, which include limousine drivers. As a result, this Court holds that the Amendment did not repeal NRS 608.250 or its exceptions. Because the NWHL expressly states that it does not apply to taxicab and limousine drivers, the Limousine Plaintiffs cannot sue for a violation of unpaid minimum wages under Nevada law. NRS 608.250(e).

### C.      Overtime Compensation

Nevada's overtime compensation statute, NRS 608.018, requires an employer to "pay 1 1/2 times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate less than 1 1/2 times the minimum rate" works "[m]ore than 40 hours in any scheduled week of work" or "[m]ore than 8 hours in any workday, unless by mutual agreement the employee works a scheduled 10 hours per day for 4 calendar days within any scheduled week of work." The Limousine Plaintiffs cite to NRS 608.100(1) for their overtime compensation claim, but that is not the correct provision; it is NRS 608.018.

NRS 608.018 does not have a similar civil remedy provision like NRS 608.250 has with NRS 608.260. Nevertheless, this inquiry is not crucial to the Court's decision because NRS 608.018 excludes the overtime compensation requirements for "[e]mployees who are not covered by the minimum wage provisions of NRS 608.250," which includes taxicab and limousine drivers. NRS 608.018(3). In fact, in his 2005 opinion, the Attorney General concluded that although the

Amendment effectuated an "implied repeal of the provisions for calculation of the minimum wage and minimum wage entitlement found in NRS 608.250, the statutory exclusions from overtime compensation and the provisions of NRS 608.250 relied upon in NRS 608.018, would stand as enacted for purposes of the overtime compensation law." 05-04 Op. Nev. Att'y. Gen. 1 (Mar. 2, 2005). For the reasons explained above in connection with Nevada minimum wages, the Court holds that the exceptions found in NRS 608.250, and consequently NRS 608.018, are still in force, notwithstanding the Amendment. Because the Limousine Plaintiffs fall within the express exceptions for Nevada's overtime compensation statute, they cannot bring a claim for unpaid overtime compensation under Nevada law.

### D. THE FLSA

In its Motion to Dismiss, Bell Trans also claims that the Limousine Plaintiffs have no standing to bring their FLSA claim because the wage claims fall exclusively under the jurisdiction of the Labor Commissioner. Bell Trans's argument that Nevada's labor laws somehow preempt an FLSA action is groundless and entirely inconsistent with the U.S. Constitution.

Bell Trans's position flies in the face of the U.S. Constitution's Supremacy Clause. As a result of the Supremacy Clause, federal law may certainly preempt state law. Federal law preempts state law if the state law "actually conflicts" with federal law. *Cal. Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 280-81, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987); *Davidson v. Velsicol Chemical 108 Nev. 591*, 593, 834 P.2d 931, 932 (1992) ("Under the Supremacy Clause, state laws which are contrary to, or which interfere with, the laws of Congress are invalid." (citation omitted)). But state law cannot preempt federal law, not unless the applicable "federal act itself sanctions the application of state standards." *U.S. v. Hall*, 543 F.2d 1229, 1232 (9th Cir. 1976).

The FLSA sets limits on minimum wages and the number of hours an employee is permitted to work before the employer is required to pay overtime. 29 U.S.C. §§ 206–207. Under the FLSA, an employee may bring a collective action on behalf of "similarly situated" employees based on their

employer's alleged violations of the FLSA. 29 U.S.C. § 216(b); *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir. 2000). The FLSA explicitly contemplates that state law will co-exist with the FLSA's standards, allowing state labor laws to establish higher standards than those established in the FLSA. The FLSA states that "[n]o provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter." 29 U.S.C. § 218(a). The Ninth Circuit has held that the FLSA only preempts state laws that are less beneficial to the employee. *See Pac. Merch. Shipping Assoc. v. Aubry*, 918 F.2d 1409, 1425 (9th Cir.1990) ("There is no indication that Congress, in enacting the FLSA [ ], intended to preempt states from according more generous protection to [its] employees. [T]he purpose behind the FLSA is to establish a national floor under which wage protections cannot drop, not to establish absolute uniformity in minimum wage and overtime standards nationwide at levels established in the FLSA." (emphasis omitted)).

Lawsuits are routinely litigated that include minimum wage and overtime claims under the FLSA and the relevant state's parallel labor laws. There is no dispute—both claims can co-exist. In fact, in a recent decision, the Nevada Supreme Court reversed a state trial court's ruling that "essentially concluded that the FLSA preempted Nevada law under a conflict analysis because the NWHL applied to the same subject." *Jane Roe Dancer I-VII v. Golden Coin, Ltd.*, 176 P.3d 271, 274 (2008). The Nevada Supreme Court held that there is no conflict between the wage rights of plaintiffs under the NWHL and wage rights of plaintiffs under the FLSA. *Id*. As a result, the Nevada Supreme Court held that the plaintiffs' FLSA claim did not preempt their NWHL claim. *Id*.

For these reasons, this Court cannot dismiss the Limousine Plaintiffs' FLSA claims.

### IV. MOTION FOR LEAVE TO AMEND THE COMPLAINT

The Limousine Plaintiffs have also filed a Motion for Leave to Amend Complaint. (#9). They claim that two months after filing their Complaint, as a result of an article on the case

published in the *Las Vegas Sun*, they received many phone calls informing them that Bell Trans was only one of three limousine companies owned by Whittlesea-Bell Corporation. In addition to Bell Trans, Whittlesea-Bell Corporation owns Presidential Limousine and Bell Limo.

The Limousine Plaintiffs allege that the other two companies, like Bell Trans, carried out a common policy under which they underpaid their drivers and failed to compensate them for overtime. The Limousine Plaintiffs have been contacted by multiple drivers from these other two companies, who wish to participate in the lawsuit. The Limousine Plaintiffs have received thirteen consent to sue forms from such drivers.

Under Federal Rule of Civil Procedure 15(a), "a party may amend its pleading once as a matter of course . . . before being served with a responsive pleading." Except for amendments made "of course" or pursuant to stipulation, leave of court is required to amend a pleading. Fed. R. Civ. P. 15(a). The rules require that leave to amend should be freely granted "when justice so requires." *Id*.

The Limousine Plaintiffs do not need to ask this Court for leave to amend the Complaint. Bell Trans has not yet filed an answer. It has merely filed a Motion to Dismiss. A motion to dismiss, however, is not a responsive pleading within the meaning of Rule 15(a). *See, e.g., Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1158 n. 5 (9th Cir. 2007) (quoting *Miles v. Dep't of Army*, 881 F.2d 777, 781 (9th Cir. 1989)). A plaintiff can respond to a motion to dismiss by filing an amended complaint. *See Rick-Mik Enterprises, Inc. v. Equilon Enterprises LLC*, 532 F.3d 963, 977 (9th Cir. 2008). Even if a court grants a motion to dismiss, a plaintiff maintains an absolute right to file an amended complaint, so long as the defendant has not yet answered. *See Mayes v. Leipziger*, 729 F.2d 605, 607 (9th Cir. 1984) ("'Neither the filing nor granting of . . . a motion [to dismiss] before answer terminates the right to amend; an order of dismissal denying leave to amend at that stage is improper[.]'") (quoting *Breier v. Northern Cal. Bowling Proprietors' Ass'n*, 316 F.2d 787, 789 (9th

1  Cir. 1963)). Thus, the Limousine Plaintiffs still have an absolute right to amend the Complaint once
2  as a matter of course.
3       For these reasons, the Court must grant the Limousine Plaintiffs' Motion for Leave to Amend
4  Complaint.

5  **V.    MOTION TO STRIKE**

6       Five days after the Limousine Plaintiffs filed their reply brief to their Motion for Leave to
7  Amend, Bell Trans filed a "Supplemental Statutory Citations in Opposition to Plaintiffs' Motion for
8  Leave to Amend Complaint." (#17). It merely quoted NRS 608.140, which has already been
9  discussed above in connection with the Motion to Dismiss. The Limousine Plaintiffs then filed a
10 Motion to Strike that filing, arguing that it was a sur-reply that Bell Trans did not have permission
11 to file. Bell Trans's supplemental brief added nothing to its other briefs. Furthermore, the Court is
12 not ruling in favor of Bell Trans on its arguments related to NRS 608.140. This Court is holding that
13 the Limousine Plaintiffs have a private right of action for unpaid wages under NRS 608. Therefore,
14 this Court denies the Motion to Strike.
15 . . .
16 . . .

**CONCLUSION**

IT IS HEREBY ORDERED that:

(1) Bell Trans's Motion to Dismiss is GRANTED as to the Limousine Plaintiffs' claims for compensation under NRS 608.100, for unpaid minimum wages under Nevada law (under either NRS 608.250 or Nev. Const. art. 15, § 16), and for unpaid overtime compensation under Nevada law (#4);

(2) Bell Trans's Motion to Dismiss is DENIED as to the Limousine Plaintiffs' claims for unpaid wages under NRS 608 (#4);

(3) the Limousine Plaintiffs' Motion to Amend is GRANTED (#9);

(4) the Limousine Plaintiffs' Motion to Strike is DENIED (#18).

Dated: June 23, 2009

_____
Robert C. Jones
United States District Judge