Mark R. Thierman, NV#8285 CAL#72913
**THIERMAN LAW FIRM, P.C.**
7287 Lakeside Drive
Reno, Nevada 89511
Tel: (775) 284-1500
Fax: (775) 703-5027

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ANTHONY LUCAS, GREGORY H. CASTELLO, LILLIAN MELTON, LEAVON R. SMITH, ROBERT A. GREENE on behalf of themselves and all others similarly situated, ) ) ) ) ) | Case No.: 2:08-CV-01792-RCJ-RJJ |
| Plaintiffs, ) ) | |
| V. ) ) ) | |
| BELL TRANS, a Nevada Corporation, Does 1-50, inclusive ) ) ) | |
| Defendants. ) ) ) ) | |

---

## PLAINTIFFS' MOTION TO AMEND AND CERTIFY ORDER FOR INTERLOCUTORY REVIEW OR, IN THE ALTERNATIVE, MOTION TO CERTIFY A QUESTION TO THE NEVADA SUPREME COURT

Plaintiffs Anthony Lucas, Gregory H. Castillo, Lillian Melton, Leaven R. Smith, and Robert A. Greene (hereinafter, "Plaintiffs"), on behalf of themselves and the general public hereby submit the following Motion to Amend and Certify Order for Interlocutory Review or, In the Alternative, Motion to Certify Question to the Nevada Supreme Court.

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

THERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

## I.   BACKGROUND

Plaintiffs' action is brought on behalf of a putative class of limousine drivers who allege BELL TRANS ("Defendant") unlawfully failed to pay them for all hours worked in violation of Nevada Revised Statutes § 608.016, Section 16 of Article 15 of the Constitution of the State of Nevada, and Section 6 of the Fair Labor Standards Act, 29 U.S.C. § 206, and unlawfully failed to pay them overtime in violation of Section 7(a)(1) of the Fair Labor Standards Action, 29 U.S.C. § 207(a)(1), and as a predicate for violation of Nevada state law under Nevada Revised Statutes § 608.100(1)(b).

In 2006, Nevada's voters approved State Question 6, amending Nevada's Constitution to provide for a new minimum wage law.  The amendment was proposed by initiative petition and approved and ratified by the people in both the 2004 and 2006 General Elections. Section 16 of Article 15 of the Constitution of Nevada (hereinafter, the "Constitutional minimum wage law") became effective on November 28, 2006, increases the minimum wages for all workers, indexes minimum wages to inflation, and provides an even higher minimum wage for workers not covered by some sort of health insurance.   The constitutional amendment is self-contained, and has its own enforcement mechanism by private litigation.  It also excludes the following categories of employees from the protection of its minimum wage provisions:

> C.   As used in this section, "employee" means any person who is employed by an employer as defined herein but does not include an employee who is under eighteen (18) years of age, employed by a nonprofit organization for after school or summer employment or as a trainee for a period not longer than ninety (90) days.

Conversely, Nevada Revised Statutes § 608.250(2), enacted prior to the Constitutional minimum wage law, excludes the following categories of employees from the protection of its minimum wage provisions:

> 2.   The provisions of subsection 1 do not apply to:
>
> (a)   Casual babysitters.
> (b)   Domestic service employees who reside in the household where they work.
> (c)   Outside salespersons whose earnings are based on commissions.

     (e)    Taxicab and limousine drivers.

     (f)    Severely handicapped persons whose disabilities have diminished their productive capacity in a specific job [...].

On January 29, 2009, Defendant brought a motion to dismiss *inter alia* Plaintiffs' state claims based on Defendant's violation of the Constitutional minimum wage law, arguing, "[T]he Constitutional Amendment is not controlling and the law which must be applied by the Nevada Labor Commissioner is set forth in [...] NRS 608.250 (minimum wage), as the exclusions for drivers of taxicabs and limousines from minimum wage [...]." Doc. 4, Motion to Dismiss Pursuant to FRCP 12(b)(6) and Summary Judgment with Prejudice, p. 3, lns. 10-14.

Plaintiffs opposed Defendant's motion to dismiss their state minimum wage claims, arguing, "A constitutional amendment, ratified subsequent to the enactment of a statute, is controlling on any point covered in the amendment." Citing ***State ex rel. Nevada Orphan Asylum v. Hallock***, 16 Nev. 373, 378 (1882). Doc. 6, Response to Motion to Dismiss Pursuant to FRCP 12(b)(6) and Summary Judgment with Prejudice ("Response"), p. 7, lns. 16-18. Plaintiffs also quoted the Nevada Attorney General's opinion to the Labor Commissioner, 05-04 Op. Nev. Att'y. Gen. 7 (Mar. 2, 2005), clarifying the interplay between the Constitutional minimum wage law and the statutory wage and hours laws, in relevant part, as follows:

> QUESTION TWO [¶] Would the passage of the proposed amendment require the payment of the minimum wage to those types of employees currently excluded under NRS 608.250(2)?
>
> ANALYSIS [¶] As discussed in response to Question One above, the proposed amendment does not contain any of the exceptions to coverage currently set forth at NRS 608.250(2). The only exception under the proposed amendment is for employees who are "under eighteen (18) years of age, employed by a nonprofit organization for after school or summer employment or as a trainee for a period not longer than ninety (90) days." Proposed Amendment, § 16(C) (defining "employee" for coverage purposes to exclude certain employees under age eighteen). In light of this, the exclusions under NRS 608.250 are repugnant to the proposed amendment, the plain wording of which requires payment of the minimum wage regardless of whether an employee

THERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

is currently excluded under NRS 608.250(2).  Consequently, the proposed amendment would effect an implied repeal of the exclusions set forth at NRS 608.250 from minimum wage coverage.

CONCLUSION TO QUESTION TWO  [¶] The proposed amendment would require payment of the new minimum wage to employees who are currently excluded under NRS 608.250(2) from entitlement to minimum wages, unless those employees fall outside the amendment's definition of a protected "employee."

Response, p. 8, lns. 20-27, through p. 9, lns. 1-7.

The parties held oral arguments on this matter in a hearing before the Court on June 15, 2009.

On June 24, 2009, the Court issued its Order dismissing Plaintiffs' state minimum wage claims (hereinafter, "June 24, 2009 Order"), finding:

In sum, this Court cannot conclude that there is no other reasonable construction of the Amendment than that it repealed NRS 608.250. The Amendment made absolutely no reference to NRS 608.250. The focus of the Amendment was the actual minimum wage.  And the Amendment's definition of "employee" is not in conflict with NRS 608.250's exceptions, which include limousine drivers.  As a result, this Court holds that the Amendment did not repeal NRS 608.250 or its exceptions.  Because the NWHL expressly states that it does not apply to taxicab and limousine drivers, the Limousine Plaintiffs cannot sue for a violation of unpaid minimum wages under Nevada law.  NRS 608.250(e).

## II.   MOTION TO AMEND AND CERTIFY ORDER FOR INTERLOCUTORY REVIEW

Pursuant to 28 U.S.C. § 1292(b), Plaintiffs submit the following memorandum of points and authorities in support of their motion for certification of the Court's June 24, 2009 Order and for the Court to amend its June 24, 2009 Order to state that the necessary conditions for interlocutory review under 28 U.S.C. § 1929(b) have been met.  As detailed below, the June 24, 2009 Order meets the criteria for certification pursuant to § 1292(b), and as a result, the Court should certify the following issue for interlocutory review:

Does Section 16 of Article 15 of the Constitution of the State of Nevada require payment of the constitutionally mandated minimum wages to employees who

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

are currently excluded from entitlement from the statutory minimum wages under NRS 608.250(2), unless those employees are not within the Constitutional definition of a protected "employee" pursuant to Section 16(c) of the Nevada State Constitution?

## A.    ARGUMENT

In determining whether certification under 28 U.S.C. § 1292(b) is appropriate, the district court must consider: (1) whether the order involves a controlling question of law; (2) whether substantial contrary authority or other grounds for a difference of opinion exist; and (3) whether an immediate appeal would materially advance the ultimate termination of the litigation. See, 28 U.S.C. § 1292(b) and *In re Cement Antitrust Litigation (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1988).

### 1.    The Order Involves a Controlling Issue of Law

"[A]ll that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litigation*, supra, 673 F.2d at 1026, citing *United States Rubber Co. v. Wright*, 359 F.2d 784, 785 9th Cir. 1966 (not a controlling question of law only if "no disposition [...] on the merits could materially affect the course of the litigation in the district court."). See also, *United States v. Woodbury*, 263 F.2d 784, 787-88 (9th Cir. 1959) (denying interlocutory appeal from order to produce documents because "the claim of privilege here asserted is collateral to the basic issues of this case, and cannot be regarded as presenting a 'controlling question of law' as those words are used in the statute.")

In *In re Cement Antitrust Litigation*, Plaintiffs sought an interlocutory appeal of a judge's recusal order. The Ninth Circuit denied the interlocutory appeal, stating, "[I]t is difficult for us to think of a question which is more separable from and collateral to the merits of this lawsuit than is the question of Judge Muecke's recusal decision. [...] Since an appellate decision that recusal was improper could in no way materially affect the eventual outcome of the litigation, we cannot view the question as controlling." Supra, 673 F.2d at 1027. Here, the issue proposed for certification is neither separable nor collateral to the merits of this

5

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

1  lawsuit. Plaintiffs are limousine drivers who are and/or were not paid the new minimum

2  wage created by Section 16 of Article 15 of the Constitution of Nevada. The question – does

3  Section 16 of Article 15 of the Constitution of Nevada require payment of the new minimum

4  wage to employees who are currently excluded under NRS 608.250(2) from entitlement to

5  minimum wages, unless those employees fall outside the definition of a protected "employee"

6  pursuant to Section 16(C) of the Nevada State Constitution – presents a "controlling issue of

7  law," because its resolution on appeal could create standing for Plaintiffs to bring their state

8  minimum wage claims that has otherwise been denied by the Court's June 24, 2009 Order.

9  Any disposition on appeal relating to Plaintiffs' standing to bring claims under the

10  Constitutional minimum wage law could materially affect the outcome of the litigation.

11  ### 2.   Other Grounds for a Difference of Opinion Exist

12      District courts have consistently held that grounds for a difference of opinion under

13  prong two of the test exist where novel and difficult matters of first impression are presented.

14  See, *Klapper v. Commonwealth Realty Trust*, 662 F. Supp. 235 (D. Del. 1987), *U.S. v.*

15  *Bonnell*, F. Supp. 1091 (D. Minn. 1979), and *Zenith Radio Corp. v. Matsushita Elec. Indus.*

16  *Co.*, 494 F. Supp. 1190, 1243 (E.D. Pa. 1980). Here, the question presented for certification

17  raises novel and difficult matters of first impression, as evidenced by the lack of authority in

18  the Nevada state courts, the United States District Court for the District of Nevada, and the

19  Ninth Circuit and the conflict of the June 24, 2009 Order with the Nevada State Attorney

20  General's opinion in this matter. Please also note that although this issue may seem clear to

21  the Court, a simple Internet search reveals many legal resource guides, law firms, and even

22  the Nevada Labor Commissioner Michael Tanchek in a November 8, 2006 State of Nevada

23  Department of Business and Industry press release interpret the Section 16(C) as effecting a

24  repeal of the exceptions in NRS 608.250. See Exhibit "A" attached hereto. Although this is

25  a state law issue, its ambiguities potentially will engender increased reliance on alternative

26  claims for minimum wage violations under 29 U.S.C. § 206 and original federal jurisdiction.

27  As evidenced by the significant conflict between the Court's June 24, 2009 Order and a body

28  of legal authorities upon which the general public will rely within this Circuit, the novel and

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

1  difficult matters of first impression raised by this question create substantial grounds for

2  differences of opinion within this Circuit within the meaning of 28 U.S.C. § 1292(b).

3               **3.    Materially Advance the Ultimate Termination of the Litigation**

4        "Granting leave is appropriate if the order involves a controlling question of law

5  where there are substantial grounds for difference of opinion and when the appeal is in the

6  interest of judicial economy because an immediate appeal may materially advance the

7  ultimate termination of the litigation." *In re Tavers*, 202 B.R. 624 (9th Cir. BAP 1996),

8  citing *In re Kashani*, 190 B.R. 875, 882 (9th Cir. BAP 1995). As this is a class action and

9  Plaintiffs are pursuing their federal minimum wage claims under 29 U.S.C. § 206, reversal of

10 this issue on appeal after final judgment will result in protracted new litigation involving class

11 certification and notice matters and potentially requiring resolution of duplicative damages

12 and irregular application of notice rights.

13       An immediate appeal in this case would save judicial economy by resolving the key

14 question of whether Plaintiffs may maintain their state minimum wage claims under the

15 Constitutional minimum wage laws and, in turn, whether they may pursue their claims as

16 a class action. Because the Nevada Constitutional minimum wage rate for workers in this

17 case who do not have employer-provided health insurance is greater than the federal minimum

18 wage rate,[1] all, or almost all, the workers in this case would be pursuing only the Nevada State

19 Constitutional minimum wage claims, which would require Rule 23 class certification rather

20 than an collective action notice under *Hoffman-LaRouche Inc. v. Sperling*, 493 U.S. 165

21 (1989) and would not require litigation of the motor carrier act exemption nor the interstate

22 commerce enterprise coverage issues under the FLSA. If the case was litigated under the

23 State Constitutional minimum wage, Plaintiffs and Defendant will not have to determine when

24 a driver worked on an interstate trip or transported passengers on a through ticket as opposed

25 to when the driver was working locally. Nor would time spent waiting have to be allocated as

26 incidental to either an exempt trip or a non-exempt trip, and the wage rate for compensation

27

28

---

[1] The Nevada Statutory minimum wage does not apply to limousine drivers by its own terms.

THERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

1   for times spent working without pay would be the minimum wage rather than trying to sort

2   the "regular rate" for every workweek.  Essentially, a decision on interlocutory appeal would

3   end the litigation of Constitutional minimum wage law claims for the hundreds of limousine

4   drivers who are putative class members in this action, because they lack the sufficient

5   resources to pursue their claims individually against Defendant, as well as millions of other

6   Nevada workers.[2]  Additionally, amendment of the June 24, 2009 Order at this point in the

7   litigation will save judicial time and resources in lieu of Plaintiffs seeking an interlocutory

8   appeal in the event, for example, the Nevada Supreme Court's ruling on a motion to certify a

9   question in another matter pending in this Court should be contradictory to the findings in its

10  June 24, 2009 Order.

11  **III.    MOTION TO CERTIFY A QUESTION TO THE NEVADA SUPREME COURT**

12          Plaintiffs submit the following memorandum of points and authorities in support of

13  their motion for certification of a question to the Nevada Supreme Court.  As detailed

14  below, the June 24, 2009 Order meets the criteria for certification pursuant to Nevada Rule

15  of Appellate Procedure 5(a), and such, the Court should certify the following question for

16  review by the Nevada Supreme Court:

17          Does Section 16 of Article 15 of the Constitution of the State of Nevada require

18          payment of the constitutionally mandated minimum wages to employees who

19          are currently excluded from entitlement from the statutory minimum wages

20          under NRS 608.250(2), unless those employees are not within the Constitutional

21          definition of a protected "employee" pursuant to Section 16(c) of the Nevada

22          State Constitution?

23  **A.    ARGUMENT**

24          Pursuant to Nevada Rule of Appellate Procedure 5(a), a federal court in Nevada may

25  certify a question to the Nevada Supreme Court when the questions of law are determinative

26

27  [2]There is no question as to whether the Constitutional minimum wage law creates a private right of
    action under Section 16(B), only as to whether Plaintiffs lack standing based on the exceptions in
28  NRS 608.250. Nev. Const. art. 15.

THERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

1   of the matter pending before the court and there is no clearly controlling precedent in the

2   decisions of the Nevada Supreme Court." NRAP 5(a) and *Trustees of Const. Ind. and*

3   *Laborers Health and Welfare Trust v. Hartford Fire Ins.*, 482 F.3d 1064, 1065 (9th Cir.

4   2007). Certified questions of law "may be determinative" of the cause then pending in the

5   certifying court, within the meaning NRAP 5(a), if: (1) the answers may be determinative

6   of part of the federal case, (2) there is no controlling Nevada precedent, and (3) the answer

7   will help settle important questions of law. *Volvo Cars of North America, Inc. v. Ricci*,

8   122 Nev. 746, 750-51, 138 P.3d 1161 (2006).

9          In determining whether to exercise its discretion to certify a question: "[A] federal

10   court may consider the timing of the certification, and whether certification will achieve

11   savings to time, money, and resources or promote cooperative judicial federalism. [...]

12   When a party requests certification for the first time after losing on that issue, the party

13   must show 'particularly compelling reasons' for certifying the question." *Carolina Cas. Ins.*

14   *Co. v. McGhan*, 572 F. Supp. 2d 1222, 1226 (D. Nev. 2008), citing *Complaint of McLinn*,

15   744 F. 2d 677 (9th Cir. 1984).

16          In *Caroline Casualty Insurance Company*, defendant brought a motion to certify

17   questions for the first time relating to the same issues it lost in a motion for summary

18   judgment. 572 F. Supp. 2d at 1224. The questions involved the "interpretation of particular

19   clauses in a particular insurance policy." *Id.* at 1226. The court denied defendant's motion to

20   certify, finding no "compelling" reasons to certify. *Id.* The court reasoned: "The questions

21   involved in this action therefore do not have broad application, unlike other questions certified

22   to the Nevada Supreme Court which involved issues of broader application and greater

23   significance to the state." *Id.* The court thereafter gave examples of those matters which

24   would create "compelling" justification, such as "certifying [a] question of whether individual

25   managers are 'employers' under Nev.Rev.Stat. § 608.011 as a question 'of first impression

26   [with] significant implications for Nevada's wage protection law'" as occurred in and quoting

27   from *Boucher v. Shaw*, 483 F.3d 613, 616 (9th Cir. 2007). *Id.*

28

THERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

1    Here, Plaintiffs seek to certify a question that is determinative of part of the case, there

2    is no controlling Nevada precedent, and the answer will help settle important questions of law.

3    Additionally, the resolution of Plaintiffs' question has broad application in the state of Nevada

4    not only to limousine drivers, but to all other categories of employees in the state of Nevada

5    who simultaneously fall within the minimum wage exceptions under NRS 608.250 and within

6    the protections of the Constitutional minimum wage law.  In addition, the decision of this

7    court has a collateral impact on literally millions of Nevada workers who are excluded from

8    the Nevada statutory minimum wages, like sales people, exempt executives, professional and

9    administrative personnel, but who are not exempt from the State Constitutional minimum

10   wage under Section 16(C) of Article 15 of the Constitution.  These individuals are not a party

11   to this litigation, but the Court's order will drastically change their status quo ante should they

12   wish to be paid the state Statutory minimum or pressure their employer to provide health

13   insurance in order to lower the minimum wages required.

14   Finally, the fact that State Question 6, brought by initiative to amend the existing state

15   minimum wage laws, was overwhelmingly approved 68.7%[3] of the citizens of this state also

16   evidences the significance of this matter to the state of Nevada.  This fact bears careful

17   consideration in light of the purpose of the initiative " to make sure the workers who are the

18   backbone of our economy receive fair paychecks that allow them and their families to live

19   above the poverty line."  See full text of State Question 6 attached hereto as Exhibit "B" at ¶ 6

20   of Section 2, "Findings and Purpose."

21   Plaintiffs' question is of significant importance to the state of Nevada, as it "a matter

22   of first impression with significant implications for Nevada's wage protection law." See,

23   *Boucher*, 483 F.3d at 616 ("Because this issue represents an issue of first impression and

24   has significant implications for Nevada's wage protection law and because we cannot be

25   certain how the Nevada Supreme Court would resolve this matter, we believe certification of

26   the question of law to be appropriate.")  As resolution of Plaintiffs' question will have broad

27

28
     [3]"Nevada Question 6 (2006" at http://ballotpedia.org/wiki/index.php/Nevada_Question_6_(2006).

10

1  application and significant impact in the state of Nevada, the Court has particularly

2  compelling reasons to certify this question to the Nevada Supreme Court, even at this

3  stage in the litigation.

4  **IV.    CONCLUSION**

5       Based upon the above arguments, Plaintiffs respectfully request the Court approve

6  their Motion to Amend and Certify Order for Interlocutory Review or, in the alternative, their

7  Motion to Certify a Question to the Nevada Supreme Court.

8       Dated this 26th day of June, 2009.        Respectfully submitted:

9                                                   THIERMAN LAW FIRM

10

11                                                  By: ____/s/Mark R. Thierman____
                                                         MARK R. THIERMAN
12                                                       Attorney for Plaintiffs

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

State of Nevada

# Department of Business & Industry

## Director's Office
555 East Washington Avenue, Suite 4900
Las Vegas, Nevada 89101
Phone (702) 486-2750, Fax (702) 486-2758
www.dbi.state.nv.us

**FOR IMMEDIATE RELEASE**
**NOVEMBER 8, 2006**
**CONTACT AMANDA PENN, (702) 486-2756**
**2 PAGES**

## Nevada Labor Commissioner announces post-election minimum wage and overtime changes

**LAS VEGAS –** With the passage of the Constitutional Amendment changing Nevada's minimum wage law, Nevada Labor Commissioner Michael Tanchek announced changes in requirements for minimum wage and overtime affecting Nevada employers.

"With the new law going into effect on November 28th, it is essential to get information concerning the changes out to employers as soon as possible," Tanchek said.

The amendment sets up a two-tiered minimum wage system for Nevada. Employer's who make a qualified health insurance plan available to their employees can pay a minimum wage of $5.15 per hour. Employers who don't make a qualified plan available will have to pay at least $6.15 per hour. A qualified plan has to provide coverage for the employees and their dependents and the cost to the employee cannot exceed 10% of the employees gross taxable income.

The amendment increases the number of employees who are entitled to be paid minimum wage. According to Tanchek, the only exemption allowed under the new amendment is for employees who are under the age of eighteen who are employed by nonprofit organizations for after school or summer employment or employed as trainees for a period not longer than 90 days. Employers who hire employees who were previously exempt under the statutes will need to make

the necessary payroll adjustments. Domestic service employees, outside salespersons, agricultural employees, taxicab and limousine drivers, and casual baby sitters will no longer be exempt from the minimum wage. In addition, the special minimum wage for severely handicapped persons with certificates issued by the Rehabilitation Division of the Department of Employment, Training and Rehabilitation was not included among the exemptions.

"While that amendment didn't set any minimum wage for the after school, summer employment, or trainee exemption, the federal government does have such a rate and employers will still need to follow the federal guidelines for those employees," Tanchek said.

Another significant change resulting from the new amendment is to increase the coverage of Nevada's daily overtime requirement. Employee's who are paid less than one and a half times the minimum wage must be paid overtime when they work more than eight hours in a workday.

Employees who are offered a qualifying health insurance plan will be entitled to daily overtime if they make $7.725 or less per hour. However, employees who are not offered a qualifying plan will have to be paid overtime on a daily basis if their hourly rate is less than $9.225 per hour.

"Now that the minimum wage is set by the people under the Constitution rather than the Labor Commissioner under the statutes, we need to follow the Constitution," Tanchek said.

For more information, log on to www.leg.state.nv.us/NRS/NRS-608.html.

-END-

Home

· Ads by Google·    Nevada Estate Tax     Common Law Marriage       Statutes Law       Nevada LLC Law      Incorporate Nevada

**San Diego Employment Law**        **Labor Law Posters Here**
Committed to bringing you justice|     Find State & Federal Posters Here Best
Discrimination & harassment cases.     Online for Labor Law Posters
M̄M̄                                                    Ads by Google

# Nevada Labor Commissioner press release on Minimum Wage

Written by admin on September 3rd, 2008

With the passage of the Constitutional Amendment changing Nevada's minimum wage law, Nevada Labor Commissioner Michael Tanchek announced changes in requirements for minimum wage and overtime affecting Nevada employers.

"With the new law going into effect on November 28th, it is essential to get information concerning the changes out to employers as soon as possible," Tanchek said.

The amendment sets up a two-tiered minimum wage system for Nevada. Employer's who make a qualified health insurance plan available to their employees can pay a minimum wage of $5 .15 per hour.

**Labor Law Posters - CA**
California - Why Pay Full Price? Poster Discounts & Free Shipping
LaborLawPostersToday.info

**Palav Law Firm**
2007 Trial Lawyer of the Year Wrongful Termination, Wage Claims
www.palaylaw.com

**Class Action Overtime**
Specializing in Class Actions Unpaid Overtime? Contact Us
www.righettilaw.com

**Are You Owed Overtime?**
Our Law Firm Can Help 24/7 Speak with a Lawyer Now
www.Bbpc-Law.com

Employers who don't make a qualified plan available will have to pay at least M̄M̄              Ads by Google $6.15 per hour. A qualified plan has to provide coverage for the employees and their dependents and the cost to the employee cannot exceed 10% of the employees gross taxable income.

The amendment increases the number of employees who are entitled to be paid minimum wage. According to Tanchek, the only exemption allowed under the new amendment is for employees who are under the age of eighteen who are employed by nonprofit organizations for after school or summer employment or employed as trainees for a period not longer than 90 days. Employers who hire employees who were previously exempt under the statutes will need to make the necessary payroll adjustments. Domestic service employees, outside salespersons, agricultural employees, taxicab and limousine drivers, and casual baby sitters will no longer be exempt from the minimum wage. In addition, the special minimum wage for severely handicapped persons with certificates issued by the Rehabilitation Division of the Department of Employment, Training and Rehabilitation was not included among the exemptions.

"While that amendment didn't set any minimum wage for the after school, summer employment, or trainee exemption, the federal government does have such a rate and employers will still need to follow the federal guidelines for those employees," Tanchek said.

Another significant change resulting from the new amendment is to increase the coverage of Nevada's daily overtime requirement. Employee's who are paid less than one and a half times the minimum wage must be paid overtime when they work more than eight hours in a work day.

Employees who are offered a qualifying health insurance plan will be entitled to daily overtime if they make $7.725 or less per hour. However, employees who are not offered a qualifying plan will have to be paid overtime on a daily basis if their hourly rate is less than $9.225 per hour.

"Now that the minimum wage is set by the people under the Constitution rather than the Labor Commissioner under the statutes, we need to follow the Constitution," Tanchek said.

For more information, log on to www.leg.state.nv.us/NRS/NRS- 608.html

> **This article was originally published in the December 2006 edition of the Las vegas Taxicab trade magazine "Trip Sheet".**

Tags: Commissioner, Department of Employment, federal government, health insurance plan, html, Labor, law going, Michael Tanchek, minimum wage, minimum wage law, Nevada, Nevada Labor Commissioner, qualified health insurance plan, Rehabilitation Division, USD, www.leg.state.nv.us/NRS/NRS-

« Cabs in Las Vegas. What you need to know!
Barry coming to Las Vegas! »

## 3 Responses to "Nevada Labor Commissioner press release on Minimum Wage"

1. *101DoFollowBlogs* Says:
   September 13th, 2008 at 5:39 pm

   I've heard some good things about this blog. Remember to balance the pics with the text tho. cheers!

2. *Tatiana* Says:
   September 26th, 2008 at 6:01 am

   Searched for labor lawyer in msn and found your article. very interesting!

3. *Lvladycabbie* Says:
   September 28th, 2008 at 10:25 pm

   It is too bad that the cab companies have not been forced to adhere to this law. It sure seems like they can do whatever they want to without consequences.

## Leave a Reply

_____    Name (required)

_____    Mail (will not be published) (required)

_____    Website

_____

[ Submit Comment ]

Additional comments powered by BackType






HOME  |  HOT TOPICS  |  EMPLOYERS FORUM  |  BLOGS  |  PRODUCTS  |  CART  |  ABOUT  |  SEARCH  |  HELP

**FREE E-zines**

- HR Hero Line - HR & employment law tips, news, etc
- Diversity Insight - Real-life lessons in diversity management
- The Oswald Letter - An executive's insights and opinions from the C-Suite
- Northern Exposure - Canadian Employment Law for U.S. Businesses

Your Email Address

We respect your privacy

**HR NEWS & ADVICE**
HOT TOPICS
EMPLOYERS FORUM
BLOGS
FREE E-ZINES & ALERTS
HR INSIGHT
HR I.Q.

**HR COMPLIANCE RESOURCES**
SUBSCRIBER LOGIN
STATE EMPLOYMENT LAW
FEDERAL EMPLOYMENT LAW
HR EXECUTIVE REPORTS
HOT NEW TOOLS FOR HR
WORKPLACE POSTERS
PRODUCTS BY TOPIC

**HR HERO EVENTS**
ADVANCED EMPLOYMENT ISSUES SYMPOSIUM
AUDIO CONFERENCES & WEBINARS
FMLA COMPLIANCE VIRTUAL SUMMIT
ADA COMPLIANCE VIRTUAL SUMMIT
WAGE & HOUR VIRTUAL SUMMIT
FMLA MASTER CLASS
WAGE & HOUR MASTER CLASS

**TRAINING RESOURCES**
FOR SUPERVISORS
FOR HR PROFESSIONALS
FOR EMPLOYEES
FOR EXECUTIVES
TRAINING TODAY
ONSITE TRAINING

**BENEFITS RESOURCES**
BENEFITS NEWS
BENEFITS PRODUCTS

**WORKERS' COMP RESOURCES**
WORKERS' COMP PRODUCTS

**EMPLOYMENT LAW COUNSEL**
IN-HOUSE COUNSEL
EMPLOYERS COUNSEL NETWORK



## NEVADA EMPLOYMENT LAW LETTER

*Part of your Nevada Employment Law Service*

Dora V. Lane and Anthony L. Hall, Editors
Holland & Hart LLP
May 2009                                        Vol. 14, No. 8

### Highlights

- New minimum and overtime wages effective July 1, 2009
- Ninth Circuit nixes First Amendment claim for state lawyer's role in private lawsuit
- Proposed GINA regulations: My genes are none of your business!
- Taxing health benefits could cause unintended consequences
- Are you drowning in a sea of resumes? Lifesaving tips to stay afloat
- Workplace Trends
- Agency Action
- Union Activity

## WAGE AND HOUR LAW

# New minimum and overtime wages effective July 1, 2009

*On July 1, 2009, Nevada's minimum wage will increase to $6.55 per hour for employees who are offered a qualified health plan (Tier 1 workers) and $7.55 per hour for employees who are not offered a qualified health plan (Tier 2 workers). That equates to a minimum overtime rate of $9.825 per hour for Tier 1 employees and $11.325 per hour for Tier 2 employees. This article addresses your obligations under both Nevada and federal minimum wage laws and looks at issues that have arisen since the Nevada minimum wage constitutional amendment was passed.*

*Recap of Nevada's constitutional amendment*

As most of you are well aware by now, on November 28, 2006, Nevada's minimum wage law was changed because of an amendment to the state constitution. The minimum wage amendment established a two-tier compensation system: (1) a lower tier conditioned on the employer making a qualified health plan available to employees and (2) a higher tier for employees who are not offered a qualified health plan.

The amendment doesn't distinguish between full-time, permanent, temporary, or part-time employees. Therefore, for example, an employee who is ineligible for a company-sponsored qualified health plan because he is part-time must receive the higher tier minimum wage. By contrast, an employee who declines coverage may receive the lower tier minimum wage because the employer made a qualified health plan *available* to him.

The amendment abolished most of the exemptions to the minimum wage. As a result, minimum wage requirements now also apply to domestic service employees, outside sales persons, agricultural employees, taxicab and limousine drivers, casual babysitters, and severely handicapped employees.

*Gap between federal and state minimum wage rates*

Although states are free to set their own minimum wage, you cannot pay a wage that is less than the federal minimum wage. Stated another way, employees must be paid either the federal or Nevada minimum wage — whichever is highest. Nevada employers that pay the federal minimum wage will likely find themselves making adjustments more than once a year.

On July 24, the federal minimum wage will increase to $7.25 per hour. That means employees to whom a qualified health plan is made available must begin receiving the higher federal minimum wage at that time — at least until Nevada adjusts its minimum wage rates again in 2010. Employees to whom a qualified health plan is not made available can continue receiving the higher tier wage of $7.55 per hour. Remember, you can be required to pay the Tier 2 rate to some employees and the Tier 1 rate to others, depending on whether a qualified health plan is made available to each individual employee.

*Effect of new rates on Nevada's daily overtime*






Employment Law Letter Subscriber Login

Business Writing for HR & Supervisors
DOWNLOAD FREE WHITE PAPER

14th Annual Advanced Employment Issues Symposium

America's leading employment law conference.

Caesars Palace
October 29-30

Nashville Hilton
September 17-18
CLICK HERE

Early-bird discount extended! Save $100 when you act now!

Want to make your supervisors even more super?

Nevada Employment Law Letter -- Ninth Circuit nixes First Amendment claim for state l...  Page 2 of 2

In Nevada, you must pay overtime anytime a nonexempt employee works more than 40 hours in a workweek or more than eight hours in a workday. There are exceptions to the daily overtime rule, but the most widely relied upon exception pertains to employees who are paid a regular wage rate of one and one-half times the minimum wage. Recall that one and one-half times minimum wage is $9.825 for Tier 1 employees and $11.325 for Tier 2. Thus, while you may pay an employee a regular wage that exceeds both federal and state minimum wage, you may still end up owing daily overtime if that wage is less than $9.825 (for Tier 1) and $11.325 (for Tier 2).

*Bottom line*

On July 24, the federal minimum wage will increase to $7.25 per hour, so it's important that you understand your obligations now, before the change takes effect. You can start by downloading an updated copy of the minimum wage poster from the U.S. Department of Labor's website at www.dol.gov/esa/whd/regs/compliance/posters/flsa.htm.

**Copyright 2009 M. Lee Smith Publishers LLC**

The contents of NEVADA EMPLOYMENT LAW LETTER are intended for general information and should not be construed as legal advice or opinion. To request further information or to comment on an article, please contact Dora V. Lane at 775-327-3000 or Anthony L. Hall at 702-669-4600.



Annual subscriptions to Nevada Employment Law Letter are available for $367. <u>ORDER NOW</u> to receive your monthly 8-page newsletter, access to HRhero.com, e-mail alerts, and special reports.

**HRhero.com:**
Subscriber Login
Get Free E-zines
Get Free White Papers
Advertise on HRhero
Site Map
Help

**About:**
About HRhero.com
Press
Privacy Policy
Copyright Policy / Reprint Policy
Legal Disclaimer
Contact

**Our Digital Network:**
HRLaws.com
TrainingToday.com
EmploymentLawPost.com
EmployersCounsel.net
MLeeSmith.com

**Social Networks:**

*Copyright © M. Lee Smith Publishers LLC 2009. All rights reserved. 800-274-6774*

http://www.hrhero.com/nl/nvemph.shtml                    6/25/2009

# FISHER & PHILLIPS LLP

June 12th 2007

### ATTORNEYS AT LAW

*Solutions at Work®*

# LEGAL ALERT

# How The New Minimum Wage Affects Nevada Employers

On July 1, 2007, the Nevada minimum wage will increase to $5.30 per hour or $6.33 per hour (depending on whether the employer provides qualified health insurance benefits). On July 24, 2007, the federal minimum wage will increase to $5.85 per hour.

This Alert addresses the legal and practical issues Nevada employers need to consider because of these upcoming increases, including whether you are paying the appropriate minimum wage and complying with Nevada's daily overtime law.

### Nevada's Minimum Wage Requirements

Nevada's Constitution provides for a two-tier minimum wage system. Currently, Nevada employers must pay employees at least the tier-1 minimum wage of $5.15 per hour if they provide qualified health insurance benefits to the employees. Employees must be paid at least the tier-2 minimum wage of $6.15 per hour if the employer does not provide qualified benefits. If you need to determine whether your company is providing the proper level of benefits to qualify for tier-1, we can help answer that question.

Nevada's minimum wage automatically increases every July 1 by the greater of either the increase in the federal minimum wage or an increase in the cost of living. The amount of each year's increase is announced and published every April 1. If in a given calendar year there is no federal minimum wage increase, then Nevada's minimum wage increases based on the increase in the cost of living (but no more than 3% per year).

On April 1, 2007, the Nevada Labor Commissioner published an announcement of this year's Nevada's minimum wage increases. Effective July 1, 2007 Nevada employers must pay (under State law) at least $5.30 per hour for tier-1 employees, and at least $6.33 per

hour for tier-2 employees. You must also provide written notification of this minimum wage increase to all of your employees.

### What Is The Impact Of The Federal Minimum Wage Increase?

Federal law also provides for a minimum wage. It is currently $5.15 per hour, but beginning on July 24, 2007, will increase to $5.85 per hour. Under the new law, the federal minimum wage will increase again to $6.55 per hour on July 24, 2008 and to $7.25 per hour on July 24, 2009.



When both federal and state law confer an employee benefit, the employer must grant the more generous benefit. Therefore, as of July 24, 2007, Nevada employers should:

1. Pay at least $5.85 per hour to employees who qualify for the tier-1 minimum wage. (In other words, pay the more generous federal minimum wage to tier-1 employees).

2. Pay at least $6.33 per hour to employees who qualify for the tier-2 minimum wage. (In other words, pay the more generous state minimum wage to tier-2 employees).

Employers may wish to provide notice of both increases in the minimum wage at the same time in order to reduce the confusion faced by some employees regarding their wages.

### Nevada's Daily Overtime Requirement

Nevada's daily overtime law is one of the critical issues Nevada employers must review. In Nevada, any employee who earns less than 1 1/2 times the applicable minimum wage must receive overtime for any hours worked over 8 in a work day. (This does not apply to employees who agree to work four 10-hour days in a work week, and in certain other situations.).

www.laborlawyers.com

Atlanta • Charlotte • Chicago • Columbia • Dallas • Fort Lauderdale • Houston • Irvine • Kansas City
Las Vegas • New Jersey • New Orleans • Orlando • Philadelphia • Portland • San Diego • San Francisco • Tampa

## How The New Minimum Wage Affects Nevada Employers

This new increase in Nevada's minimum wage will expand the pool of employees who will qualify for daily overtime. You should pay close attention to those employees previously unaffected by the daily overtime requirements to ensure that each employee receives the proper premium pay, when required.

The following chart provides guidance on when Nevada employees must receive daily overtime:

| Effective Date | Pay daily overtime if employee receives qualified benefits, and earns less than: | Pay daily overtime if employee does not receive qualified benefits, and earns less than: |
| --- | --- | --- |
| Current | $7.73 per hour | $9.23 per hour |
| July 1, 2007 | $7.95 per hour | $9.50 per hour |
| July 24, 2007 | $8.78 per hour | $9.50 per hour |

What Nevada Employers Should Do

As seen from the recent explosion of litigation, employees (and their attorneys) are sensitive to wage-hour laws. To protect themselves, Nevada employers should comply with both federal and Nevada law. The coming increases in the federal and Nevada minimum wage provide an excellent opportunity to evaluate compliance with all wage-hour laws, and implement any necessary changes.

For more information on the items in this Alert, including analysis of qualified benefits for tier-1 versus tier-2 consideration, and daily overtime requirements, please contact any attorney in our Las Vegas office at 702.252.3131 or visit our website at www.laborlawyers.com.

*This Legal Alert provides a quick overview of specific state and federal statutes. It is not intended to be, and should not be considered as, legal advice for any particular fact situation.*

www.laborlawyers.com

Atlanta • Charlotte • Chicago • Columbia • Dallas • Fort Lauderdale • Houston • Irvine • Kansas City
Las Vegas • New Jersey • New Orleans • Orlando • Philadelphia • Portland • San Diego • San Francisco • Tampa



| All Regions | >> North America << | UK | Europe | Offshore | Asia Pacific | Latin America |

You Are Here:   Show All Content   Labour and Employment [ X ]   North America [ X ]



**Does your firm write legal articles?**
**Put them on the world's largest legal news network.**



Employment & Labor Law Solutions Worldwide

## United States: The Nevada Constitutional Minimum Wage
20 November 2006

**Article by Rick D. Roskelley** 

### Introduction

On November 7, 2006, the voters of six states passed ballot initiatives to raise the state minimum wage above the current federal minimum wage of $5.15 an hour. These states include Arizona, Colorado, Ohio, Missouri, Montana and Nevada. The Nevada initiative, entitled "Raise the Minimum Wage for Working Nevadans Act," was presented as an amendment to the Nevada Constitution and listed on the ballot as Question 6.

Nevada voters overwhelmingly approved Question 6, by a margin of 69% in favor to 31% opposed. The initiative, previously approved in the election of 2004, was presented to the voters a second time in 2006 in accordance with state law requiring voters to pass constitutional amendments in two consecutive general elections. Question 6 amends the Nevada Constitution to provide a minimum wage that must be paid by all employers employing employees in this state. The Amendment effectively sets the Nevada minimum wage at least $1 higher than the federal minimum wage. The new minimum wage becomes effective November 28, 2006.

In general, the Nevada minimum wage amendment raises the minimum wage from $5.15 per hour to $6.15 per hour. The Amendment, however, is unique in that it permits employers who offer employees a qualified health insurance plan to pay a minimum wage at the former rate of $5.15 per hour. This two-tiered approach, as well as existing daily overtime requirements, present challenges to proper application of Nevada's new minimum wage laws.

Nevada employers now have a very short period to examine their current payroll practices and determine what changes need to be implemented to assure compliance with the new minimum wage requirements. To assist in this process, we have provided the following answers to common questions regarding the new minimum wage requirements.

### Answers to Common Questions

*When does the new minimum wage become effective?*

Article 15, section 16 of the Nevada Constitution ("Amendment"), or the minimum wage law, becomes effective November 28, 2006.

### Related Information

**Labour and Employment**

Discrimination, Disability & Sexual Harassment

Employee Benefits & Compensation

Employee Rights   [FAQ]

Employment Tribunals

Health & Safety

Redundancy

Government & Public Sector

Constitutional & Administrative Law

Federal Law

Government/ Statutory Law

Litigation and Arbitration

Employment   [FAQ]

Healthcare/ Medical   [FAQ]

**Related Headlines**

TARP Compensation Guidance And Other Executive Compensation Proposals (Jones Day)

Pennsylvania Mini-COBRA Signed Into Law (Duane Morris LLP)

Damned If You Do, Damned If You Don't: Terminating Accused Harasser Can Lead To Liability For "Sex Stereotyping" (Littler Mendelson)

Treasury Releases Rule On TARP Executive Compensation And Corporate Governance (Katten Muchin Rosenman LLP)

No Means No – Supreme Court Confirms Non-Competes Invalid In California (Archer Norris)

Treasury Announces Executive Compensation And Corporate Governance Standards For Companies Receiving TARP Assistance (Reed Smith)

*Under what circumstances must we pay a minimum wage of $6.15 per hour?*

The Amendment establishes a two-tiered minimum wage system for Nevada. Employers who provide health benefits as defined by the Amendment are required to pay employees a minimum wage of $5.15 per hour. Employers who do not provide qualified health benefits must pay a minimum wage of at least $6.15 per hour.

*What constitutes health benefits under the Amendment?*

To constitute qualifying health benefits, a health plan has to provide coverage for the employee and the employee's dependents. In addition, the cost to the employee of participating in the plan offered by the employer cannot exceed 10% of the employee's gross taxable income.

*What if the health plan requires a waiting period before employees are eligible to receive health insurance?*

The Amendment does not specifically address this issue. The Amendment simply defines "offering health benefits" as making health insurance available to the employee and the employee's dependents at a total cost to the employee for premiums of not more than 10% of his or her gross taxable income.

During informal discussions, the office of the Labor Commissioner has expressed the opinion that employers could pay the minimum wage of $5.15 an hour during a bona fide waiting period specified in the health plan offered employees. It is important to stress, however, that the Nevada Labor Commissioner has yet to provide formal guidance on this subject. Further, as is noted below, the Amendment creates a private right of action allowing an employee to sue the employer directly in state court for violation of the Amendment. A court will not be bound by the Labor Commissioner's interpretations of the Nevada Constitution. Consequently, we urge caution in determining which minimum wage to pay during introductory or waiting periods. Our recommendation for the present is to pay a minimum wage of $6.15 per hour until such time as the employee is eligible to receive health insurance.

*What happens if an employee declines coverage?*

This issue is also not specifically addressed in the Amendment. However, the Amendment requires only that an employer offer health benefits to the employee. Offering health benefits is defined as making health insurance available to the employee and the employee's dependents at a total cost to the employee for premiums of not more than 10% of his or her gross taxable income. Consequently, if an employer offers an employee health benefits that meet the coverage and the premium requirements, the employer's obligations should be met. The Labor Commissioner has informally confirmed the position that the Amendment requires only that the employer offer qualified health coverage and that the employee's declining such coverage does not obligate the employer to pay the higher minimum wage. Once again, an employer should proceed with caution in determining which minimum wage to pay. The employer should watch for official guidance and clarification on this issue from the Nevada Labor Commissioner.

*What if an employee drops below the required number of working hours to remain eligible for coverage?*

Once again, the Amendment does not address this issue. However, if an employee is ineligible to participate in health benefits of his or her employer, arguably the employer has not "offered" health benefits as required by the Amendment. Consequently, the best practice would be to monitor employees' eligibility for health benefits and to pay the increased minimum wage of $6.15 an hour for any work week in which the employee is not eligible for coverage.

*If an employer offers the employee the choice between two or more health plans, do all of the choices need to meet the 10% test for the employer to be able pay the $5.15 minimum wage?*

Probably not. Although the Amendment does not specifically address this scenario, the fact that one of the options offered to the employee meets the requirement that the employee contribution be 10% or less of his or her gross taxable income appears to be sufficient. The Amendment only requires that the employer offer health benefits to the employee and his or her dependents at a total cost to the employee of 10% or less of his or her gross taxable income. It does not mandate that the particular plan selected by the employee meet the 10% test. The Labor Commissioner has confirmed informally that it is the

Supreme Court Decides That Title VII Mixed-Motives Analysis Does Not Apply To Age Discrimination Claims (Littler Mendelson)

Pennsylvania Extends Group Health Benefits To Former Employees Of Small Employers (Fox Rothschild LLP)

Employment, Labor And Benefits Advisory: New York Employers Now Have An Alternative To Layoffs During Temporary Declines In Business (Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.)

Update: Prohibition On Mandatory Overtime For Nurses Takes Effect July 1 (Cozen O'Connor)

### Related Functions

 Ask Littler Mendelson a question

 **Does Your Firm Write Articles?**

 Email a colleague with a synopsis and link to this article

Printer-friendly version of this page

 Bookmark this Article.

Recommend this article
Digg This Story

position of his office that an employer may pay the $5.15 minimum wage as long as one of the choices offered to the employee meets the 10% test regardless of the actual option selected by the employee. Once again, however, the employer should watch for official guidance and clarification on this issue from the Nevada Labor Commissioner.

*What is the period of time an employer must use to determine the gross taxable income for purposes of determining if the employer has offered qualified health benefits?*

Offering health benefits is defined in the Amendment as making health benefits available to the employee and the employee's dependents at a total cost to the employee of not more than 10% of his or her gross taxable income. The Amendment does not discuss the period of time that must be taken into account in determining if the 10% ceiling has been surpassed. At this point, we have received no formal guidance from the Labor Commissioner on the issue. Because health premium contributions are generally made on a pay period basis, the best practice would appear to be to measure the employee contribution for health benefits against the gross taxable wages for the pay period.

*May an employer count tips or gratuities toward payment of the minimum wage?*

No. The amendment specifically provides that tips and gratuities received by employees cannot be credited or offset against the minimum wage.

*May an employer count commissions and similar compensation toward payment of the minimum wage?*

Yes. Nevada law defines wages to include commissions owed the employee. It also defines wages as any amount that an employer agrees to pay an employee for the time the employee has worked, computed in proportion to time. To the extent employee compensation is a commission or is paid for time worked, it may be credited toward payment of the minimum wage.

*What effect does the amendment have on daily overtime under Nevada law?*

The effect of the Amendment on daily overtime is not certain at this point as the Labor Commissioner and the Attorney General have taken differing positions on the issue.

The Labor Commissioner has publicly taken the position that employees who are offered qualifying health benefits will be entitled to daily overtime if they make $7.725 or less per hour. He has also stated the employees who are not offered a qualifying plan must be paid overtime on a daily basis if their hourly rate is less than $9.225 per hour.

That advice, however, conflicts with an official Opinion of the Nevada Attorney General issued March 2, 2005. The Nevada overtime law is found in Nevada Revised Statutes (NRS) section 608.018. Currently, Nevada imposes an overtime obligation for more than 8 hours work in a day for an employee whose regular wage rate is less than 1 1/2 times the minimum rate prescribed pursuant to NRS section 608.250. The minimum wage set in NRS section 608.250 is the same as the federal minimum wage, currently $5.15 an hour. In his March 2, 2005 opinion, the Attorney General concluded that the passage of Question 6 would not effect the triggering of or exemption from daily overtime under Nevada law. He concluded that employees who make at least 1 1/2 times the minimum rate set pursuant to NRS section 608.250 (which mirrors the federal minimum) would continue to be exempt from daily overtime in Nevada. This would mean that daily overtime would not be required for employees making at least $7.73 an hour.

*Are certain employees exempt from the new minimum wage law?*

The Amendment increases the number of employees who are entitled to be paid minimum wage. The only exemption allowed under the new Amendment is for employees who are under the age of eighteen and are employed by nonprofit organizations for after-school or summer employment or employed as trainees for a period not longer than 90 days.

No other employees qualify for the exemption. This will make it necessary for Nevada employers to track the hours of a much broader number of employees, including salaried employees who are exempt from overtime but not the new minimum wage.

Employers that have employees who were previously exempt from the minimum wage will need to make the necessary payroll adjustments. Domestic service employees, outside salespersons, agricultural employees, taxicab and limousine drivers, and casual baby sitters will no longer be exempt from the minimum wage. In addition, the special minimum wage for severely handicapped persons with certificates issued by the Rehabilitation Division of the Department of Employment, Training and Rehabilitation are not included among the exemptions identified in the Amendment.

*Are there automatic increases built into the minimum wage?*

Yes. The Amendment provides that the minimum wage will automatically be adjusted by the amount of increases in the federal minimum wage over $5.15 per hour, or, if greater, by the cumulative increase in the cost of living. The cost of living increase is to be measured by the percentage increase as of December 31 in any year over the level as of December 31, 2004 of the Consumer Price Index (All Urban Consumers, U.S. City Average) as published by the Bureau of Labor Statistics, U.S. Department of Labor or the successor index or federal agency. No CPI adjustment for any one-year period may be greater than 3%.

*How can we find out about subsequent increases to the minimum wage?*

The Governor or a State agency designated by the Governor will publish a bulletin by April 1 of each year announcing the adjusted rates, which shall take effect the following July 1. This bulletin will be made available to all employers and to any other person who has filed with the Governor or the designated agency a request to receive the bulletin, but lack of notice shall not excuse noncompliance with this section.

*Are we required to provide employees notice of increases to the minimum wage?*

Yes. Employers must provide written notification of the rate adjustments to each employee and make the necessary payroll adjustments by July 1 following the publication of the bulletin.

*May an employee agree to earn less than the minimum wage?*

No. The Amendment may not be waived by agreement between an individual employee and employer. The only exception to this rule is in the case of a bona fide collective bargaining agreement, but only if the waiver is explicitly set forth in the agreement in clear and unambiguous terms. Unilateral implementation of terms and conditions of employment by either party to a collective bargaining relationship shall not constitute, or be permitted, as a waiver of all or any part of the provisions of the Amendment.

The non-waiver provision of the Amendment will also make it more difficult to informally resolve disputes with employee over payment of the minimum wage. Because an employee cannot waive his or her rights, a settlement agreement and release may not be binding on the employee.

*What protections are offered to employees that complain about non-compliance with the Amendment?*

The Amendment prohibits employers from discharging, reducing the compensation of or otherwise discriminating against any employee for using any civil remedies to enforce his or her rights under the Amendment. An employee claiming violation of the Amendment may bring an action against his or her employer in the courts of this State to enforce the provisions of the Amendment. An employee successfully prosecuting a suit under the Amendment is entitled to all remedies available under the law or in equity appropriate to remedy any violation, including but not limited to back pay, damages, reinstatement or injunctive relief. An employee who prevails in any action to enforce his or her rights under the Amendment shall be awarded his or her reasonable attorney's fees and costs.

**Conclusion**

The Amendment and interpretation of the new minimum wage requirements raise numerous questions, many of which will need to be resolved by the implementation of new regulations or statutes and maybe even resort to the courts.

It is currently anticipated that the Legislative Counsel will issue an opinion regarding the interaction of the Amendment and existing minimum wage and overtime statutes. It is also anticipated that the Labor Commissioner will issue formal guidance and regulations on implementation of the minimum wage. Until that happens, employers in Nevada will need to proceed with caution and carefully consider their course of action in complying with the Amendment.

All employers, however, should take the following steps to ensure compliance with the minimum wage:

1. Conduct an audit of all hourly employees to ascertain any potential issues of non-compliance with the two-tiered minimum wage. Employees who earn less than $6.15 an hour should either have their pay raised to $6.15 an hour, or they must be provided with health insurance that meets the minimum coverage and cost requirements.

2. Review the salaries and hours worked of all salaried employees considered exempt under the Fair Labor Standards Act to determine if any arguably make less than the new minimum wage during any workweek. Remember, salaried exempt employees are not exempt from the new minimum wage.

3. Review the methods of tracking hours of all employees to ascertain that all hours worked are properly accounted for.

4. Implement, where necessary, procedures for tracking the hours worked of salaried employees. Remember, salaried exempt employees are not exempt from the new minimum wage. The employer will be required to demonstrate compliance with minimum wage requirements for even the traditionally exempt employees. Time records is one way to do this.

5. Review your compliance decisions with and responses to the new minimum wage with your labor counsel.

© Mondaq® 1994-2009.
All Rights Reserved

*The content of this article is intended to provide a general guide to the subject matter. Specialist advice should be sought about your specific circumstances.*

Specific Questions relating to this article should be addressed directly to the author.

Do you have a question for the author?

## View Popular Related Articles on Labour and Employment from North America

Keeping Pandora's Box Closed: Best Practices In Maintaining Personnel Records (Troutman Sanders LLP)
This article provides some tips for maintaining your personnel files so that they don't come back to haunt you.

The DOL May Be Showing Up On Your Doorstep (Dykema Gossett)
On March 25, 2009, the Government Accountability Office ("GAO") released a report which found that the Wage and Hour Department of the U.S. Department of Labor ("WHD") consistently falls short in properly investigating claims of wage and hour violations under the Fair Labor Standards Act ("FLSA").

Top 10 Costly Workplace Mistakes To Avoid This Year (Ford & Harrison LLP)
More changes in workplace law will occur this year than in the last ten years combined. Between What's Already Become Law and What's On the Horizon we can help you prepare and save your company from making costly mistakes.

Leave Of Absence As A Reasonable Accommodation Under ADA (Faegre & Benson LLP)
Most employers know that an unpaid leave of absence can, in some situations, be a reasonable accommodation under the Americans with Disabilities Act.

Colorado Employees Now Entitled To Academic Activities Leave (Littler Mendelson)
In August 2009, Colorado employers must provide employees up to 18 hours of unpaid leave per academic year to participate in their children's academic activities.

Treasury Department And SEC Announce New Executive Compensation Initiatives (McDermott Will & Emery)
The guidance applies to all public companies, including those that participate in TARP.

Wage And Hour Issues In The Blackberry Era (Cozen O'Connor)
Many employers routinely provide their employees with Blackberries, cell phones, laptops and other electronic devices with little thought to potential legal liability created by the use of such technology.

Treasury Department And SEC Move Forward On Executive Compensation Reform (Katten Muchin Rosenman LLP)
On June 10, the United States Treasury Department (Treasury) and the Securities and Exchange Commission (SEC) announced new rules for companies receiving funds under Treasury's Troubled Asset Relief Program (TARP) and initiatives to reform executive compensation, which reach beyond the financial sector.

## Other Information about Littler Mendelson

 View summary of all information contributed by Littler Mendelson

 View firm profile at Chambers

 View Firm's Website
www.littler.com

# Need to Know

**FENNEMORE CRAIG**
A HISTORY TO LEVERAGE

Thursday, November 16, 2006

## Labor and Employment Update : Nevada Minimum Wage

By Christopher H. Byrd

## quick links

- Labor & Employment Attorneys
- Labor & Employment Practice
- All Fennemore Craig Updates
- Contact Us
- Acrobat Reader

On Tuesday, November 7, 2006, Nevada voters approved a constitutional amendment that raised Nevada's minimum wage. Effective November 28, 2006, the minimum wage will be increased from $5.15 per hour to $6.15 per hour for employers that do not provide a qualified health insurance plan. Employers that provide a qualified health insurance plan can continue to pay the $5.15 hourly rate.

A qualified health insurance plan is defined as one where employees and their dependents are covered at a cost to the employee that does not exceed 10 percent of the employee's gross taxable income. For example, health insurance for an employee who makes $20,000 per year must cost less than $2,000.

This minimum wage amendment effectively sets up a two-tiered minimum wage system in Nevada - one minimum wage rate for employers that provide health insurance and a higher minimum wage for those that do not.

Besides the exemption for employers who provide health insurance coverage, the only other exemption from the minimum wage requirement is for workers under the age of 18 who are employed by a nonprofit organization for the summer or after school, or employed as trainees for less than 90 days. Domestic service employees, outside salespersons, agricultural workers, taxicab and limousine drivers, casual baby-sitters and severely handicapped persons with state employment certificates are no longer exempt from the minimum wage law.

By approving the increase in the minimum wage, Nevada voters also increased a change in overtime payment obligations for Nevada employers. Nevada requires payment of daily overtime for hours worked over eight in a workday. Thus, when the minimum was $5.15 per hour, all employers were required to pay at least $7.73 per hour ($5.15 x 1.5) for all hours worked over eight in a workday. Effective November 28, 2006, the new daily overtime threshold is $9.23 per hour ($6.15 x 1.5) for employers who must pay the increased minimum wage rate. For those employers providing qualifying health insurance plans, $7.73 remains the hourly threshold for daily overtime.

*Christopher H. Byrd focuses his practice in the areas of construction litigation, real estate and commercial litigation. Mr. Byrd earned his B.A., magna cum laude (1973) and his J.D. (1976) from The University of Notre Dame.*



Christopher H. Byrd
Director
702.692.8002
cbyrd@fclaw.com

Phoenix
3003 N. Central Ave.
Suite 2600
Phoenix, AZ 85012-2913
(602) 916-5000

Tucson
One S. Church Ave.
Suite 1000
Tucson, AZ 85701-1627
(520) 879-6800

Nogales
420 W. Mariposa Rd.
Suite 200
Nogales, AZ 85621-1074
(520) 281-3480

Las Vegas
300 S. Fourth Street
Suite 1400
Las Vegas, NV 89101
(702) 692-8000

Page 1

Updates are published periodically by Fennemore Craig, P.C. for the information of clients and friends of the firm. It should not be taken or construed as legal advice or opinion on specific facts or circumstances. Receipt of these published materials does not establish or indicate an attorney-client relationship with Fennemore Craig. If you have received this e-mail in error or wish to be removed from this update list, please e-mail us at rwallingford@fclaw.com. ©Copyright 2006 Fennemore Craig, P.C. All Rights Reserved.

THE FREE LIBRARY BY FARLEX
5,042,657 articles and books

◉ Periodicals  ○ Literature

◉ Keyword ○ Title ○ Author ○ Topic

[Search]

TEXT

Member login
User name
Password
[Login] □ Remember me
Join us Forgot password

Submit articles free

The Free Library > Business and Industry > Business, International > Mondaq Business Briefing > November 20, 2006
The Free Library > Date > 2006 > November > 20 > Mondaq Business Briefing

# The Nevada Constitutional Minimum Wage.

Get Paid For Overtime                                          Ads by Google
If you are paid salary You may be due OT
www.phelpslawgroup.com

Robert Griscom & Assoc.
Aviation Legal Services Accidents - FAA Enforcement
www.griscomaviationlaw.com

San Diego Employment Law
Committed to bringing you justice! Discrimination & harassment cases.
www.brownlawsd.com

Link to this page

## Introduction

On November 7, 2006, the voters of six states passed ballot initiatives to raise the state minimum wage above the current federal minimum wage of $5.15 an hour. These states include Arizona, Colorado, Ohio, Missouri, Montana and Nevada. The Nevada initiative, entitled "Raise the Minimum Wage for Working Nevadans Act," was presented as an amendment to the Nevada Constitution and listed on the ballot as Question 6.

Labor Law Posters                                             Ads by Google
2009 Labor Law Posters Only $18.99! Full State & Federal Compliance...
OSHA4Less.com

Minimum Wage Poster
Looking For Minimum Wae Posters? Find Minimum Wage Posters Here.
YourLocalSearch.net

Nevada voters overwhelmingly approved Question 6, by a margin of 69% in favor to 31% opposed. The initiative, previously approved in the election of 2004, was presented to the voters a second time in 2006 in accordance with state law requiring voters to pass constitutional amendments in two consecutive general elections. Question 6 amends the Nevada Constitution to provide a minimum wage that must be paid by all employers employing employees in this state. The Amendment effectively sets the Nevada minimum wage at least $1 higher than the federal minimum wage. The new minimum wage becomes effective November 28, 2006.

In general, the Nevada minimum wage amendment raises the minimum wage from $5.15 per hour to $6.15 per hour. The Amendment, however, is unique in that it permits employers who offer employees a qualified health insurance plan to pay a minimum wage at the former rate of $5.15 per hour. This two-tiered approach, as well as existing daily overtime requirements, present challenges to proper application of Nevada's new minimum wage laws.

Nevada employers now have a very short period to examine their current payroll practices and determine what changes need to be implemented to assure compliance with the new minimum wage requirements. To assist in this process, we have provided the following answers to common questions regarding the new minimum wage requirements.

Answers to Common Questions

When does the new minimum wage become effective?

Article 15, section 16 of the Nevada Constitution ("Amendment"), or the minimum wage law, becomes effective November 28, 2006.

Under what circumstances must we pay a minimum wage of $6.15 per hour?

The Amendment establishes a two-tiered minimum wage system for Nevada. Employers who provide health benefits as defined by the Amendment are required to pay employees a minimum wage of $5.15 per hour. Employers who do not provide qualified health benefits must pay a minimum wage of at least $6.15 per hour.

What constitutes health benefits under the Amendment?

To constitute qualifying health benefits, a health plan has to provide coverage for the employee and the employee's dependents. In addition, the cost to the employee of participating in the plan offered by the employer cannot exceed 10% of the employee's gross taxable income.

What if the health plan requires a waiting period before employees are eligible to receive health insurance?

## Article Details

🖶 Printer friendly  📋 Cite/link  ✉ Email  💬 Feedback

Author: Roskelley, Rick

Publication: Mondaq Business Briefing

Geographic Code: 1U8NV

Date: Nov 20, 2006

Words: 2733

Previous Article: The New Engineering Contract: A Progress Report.

Next Article: World Wildlife Fund Fails To Obtain Transfer Of WWF.Com.

Topics: Labor law
   Interpretation and construction
Minimum wage
   Laws, regulations and rules
Regulatory compliance
Wages
   Laws, regulations and rules
   Minimum wage


FREE activation, FREE priority shipping and a Vonage phone adapter Plus, Unlimited Local & Long Distance for just $24.99/Mo.
START SAVING
Vonage

## Related Articles

Change in Minimum Wage Rate Jeopardizes the Exempt Status of Thousands of Michigan Employees.

Wage bill serves up outrage (Working)(Legislation that would increase the federal minimum could possibly cut the pay of some Oregon workers)

Chicago's Living Wage Ordinance: A Sign of What is to Come?(Chicago City Council)

Australian Fair Pay Commission Determination (minimum wage regulations)

Minimum wage: the wedge issue of 2006?(FW FOCUS: GOVERNMENT RELATIONS)

New Ohio Statutes Regarding the Minimum-Wage Amendment and Insurance Parity for Mental Illnesses.

States take the lead on minimum wage.(STATESTATS)

Increase In The Federal Minimum Wage.

New Federal Minimum Wage & Posting Requirement.

Australian Fair Pay Commission Decision (Brief article)

The Amendment does not specifically address this issue. The Amendment simply defines "offering health benefits" as making health insurance available to the employee and the employee's dependents at a total cost to the employee for premiums of not more than 10% of his or her gross taxable income.

During informal discussions, the office of the Labor Commissioner has expressed the opinion that employers could pay the minimum wage of $5.15 an hour during a _bona fide_ waiting period specified in the health plan offered employees. It is important to stress, however, that the Nevada Labor Commissioner has yet to provide formal guidance on this subject. Further, as is noted below, the Amendment creates a private right of action allowing an employee to sue the employer directly in state court for violation of the Amendment. A court will not be bound by the Labor Commissioner's interpretations of the Nevada Constitution. Consequently, we urge caution in determining which minimum wage to pay during introductory or waiting periods. Our recommendation for the present is to pay a minimum wage of $6.15 per hour until such time as the employee is eligible to receive health insurance.

What happens if an employee declines coverage?

This issue is also not specifically addressed in the Amendment. However, the Amendment requires only that an employer offer health benefits to the employee. Offering health benefits is defined as making health insurance available to the employee and the employee's dependents at a total cost to the employee for premiums of not more than 10% of his or her gross taxable income. Consequently, if an employer offers an employee health benefits that meet the coverage and the premium requirements, the employer's obligations should be met. The Labor Commissioner has informally confirmed the position that the Amendment requires only that the employer offer qualified health coverage and that the employee's declining such coverage does not _obligate_ the employer to pay the higher minimum wage. Once again, an employer should proceed with caution in determining which minimum wage to pay. The employer should watch for official guidance and clarification on this issue from the Nevada Labor Commissioner.

What if an employee drops below the required number of working hours to remain eligible for coverage?

Once again, the Amendment does not address this issue. However, if an employee is _ineligible_ to participate in health benefits of his or her employer, _arguably_ the employer has not "offered" health benefits as required by the Amendment. Consequently, the best practice would be to monitor employees' eligibility for health benefits and to pay the increased minimum wage of $6.15 an hour for any work week in which the employee is not eligible for coverage.

If an employer offers the employee the choice between two or more health plans, do all of the choices need to meet the 10% test for the employer to be able pay the $5.15 minimum wage?

Probably not. Although the Amendment does not specifically address this scenario, the fact that one of the options offered to the employee meets the requirement that the employee contribution be 10% or less of his or her gross taxable income appears to be sufficient. The Amendment only requires that the employer offer health benefits to the employee and his or her dependents at a total cost to the employee of 10% or less of his or her gross taxable income. It does not mandate that the particular plan selected by the employee meet the 10% test. The Labor Commissioner has confirmed informally that it is the position of his office that an employer may pay the $5.15 minimum wage as long as one of the choices offered to the employee meets the 10% test regardless of the actual option selected by the employee. Once again, however, the employer should watch for official guidance and clarification on this issue from the Nevada Labor Commissioner.

What is the period of time an employer must use to determine the gross taxable income for purposes of determining if the employer has offered qualified health benefits?

Offering health benefits is defined in the Amendment as making health benefits available to the employee and the employee's dependents at a total cost to the employee of not more than 10% of his or her gross taxable income. The Amendment does not discuss the period of time that must be taken into account in determining if the 10% ceiling has been surpassed. At this point, we have received no formal guidance from the Labor Commissioner on the issue. Because health premium contributions are generally made on a pay period basis, the best practice would appear to be to measure the employee contribution for health benefit is against the gross _taxable wages_ for the pay period.

May an employer count tips or gratuities toward payment of the minimum wage?

No. The amendment specifically provides that tips and gratuities received by employees cannot be credited or offset against the minimum wage.

May an employer count commissions and similar compensation toward payment of the minimum wage?

Yes. Nevada law defines wages owed to include commissions owed the employee. It also defines wages as any amount that an employer agrees to pay an employee for the time the employee has worked, computed in proportion to time. To the extent employee compensation is a commission or is paid for time worked, it may be credited toward payment of the minimum wage.

What effect does the amendment have on daily overtime under Nevada law?

The effect of the Amendment on daily overtime is not certain at this point as the Labor Commissioner and the Attorney General have taken differing positions on the issue.

The Labor Commissioner has publicly taken the position that employees who are offered qualifying health benefits will be entitled to daily overtime if they make $7.725 or less per hour. He has also stated the employees who are not offered a qualifying plan must be paid overtime on a daily basis if their hourly rate is less than $9.225 per hour.

That advice, however, conflicts with an official Opinion of the Nevada Attorney General issued March 2, 2005. The Nevada overtime law is found in Nevada Revised Statutes (NRS) section 608.018. Currently, Nevada imposes an overtime obligation for more than 8 hours work in a day for an employee whose regular wage rate is less than 1 1/2 times the minimum rate prescribed pursuant to NRS section 608.250. The minimum wage set in NRS section 608.250 is the same as the federal minimum wage, currently $5.15 an hour. In his March 2, 2005 opinion, the Attorney General concluded that the passage of Question 6 altered the triggering of or exemption from daily overtime under Nevada law. He concluded that employees who make at least 1 1/2 times the minimum rate set pursuant to NRS section 608.250 (which mirrors the federal minimum) would continue to be exempt from daily overtime in Nevada. This would mean that daily overtime would not be required for employees making at least $7.73 an hour.

Are certain employees exempt from the new minimum wage law?

The Amendment increases the number of employees who are entitled to be paid minimum wage. The only exemption allowed under the new Amendment is for employees who are under the age of eighteen and are employed by nonprofit organizations for after-school or summer employment or employed as trainees for a period not longer than 90 days.

No other employees qualify for the exemption. This will make it necessary for Nevada employers to track the hours of a much broader number of employees, including salaried employees who are exempt from overtime but not the new minimum wage.

Employers that have employees who were previously exempt from the minimum wage will need to make the necessary payroll adjustments. Domestic service employees, outside salespersons, agricultural employees, taxicab and limousine drivers, and casual baby sitters will no longer be exempt from the minimum wage. In addition, the special minimum wage for severely handicapped persons with certificates issued by the Rehabilitation Division of the Department of Employment, Training and Rehabilitation are not included among the exemptions identified in the Amendment.

Are there automatic increases built into the minimum wage?

Yes. The Amendment provides that the minimum wage will automatically be adjusted by the amount of increases in the federal minimum wage over $5.15 per hour, or, if greater, by the cumulative increase in the cost of living. The cost of living increase is to be measured by the percentage increase as of December 31 in any year over the level as of December 31, 2004 of the Consumer Price Index (All Urban Consumers, U.S. City Average) as published by the Bureau of Labor Statistics, U.S. Department of Labor or the successor index or federal agency. No CPI adjustment for any one-year period may be greater than 3%.

How can we find out about subsequent increases to the minimum wage?

The Governor or a State agency designated by the Governor will publish a bulletin by April 1 of each year announcing the adjusted rates, which shall take effect the following July 1. This bulletin will be made available to all employers and to any other person who has filed with the Governor or the designated agency a request to receive the bulletin, but lack of notice shall not excuse noncompliance with this section.

Are we required to provide employees notice of increases to the minimum wage?

Yes. Employers must provide written notification of the rate adjustments to each employee and make the necessary payroll adjustments by July 1 following the publication of the bulletin.

May an employee agree to earn less than the minimum wage?

No. The Amendment may not be waived by agreement between an individual employee and employer. The only exception to this rule is in the case of a bona fide collective bargaining agreement, but only if the waiver is explicitly set forth in the agreement in clear and unambiguous terms. Unilateral implementation of terms and conditions of employment by either party to a collective bargaining relationship shall not constitute, or be permitted, as a waiver of all or any part of the provisions of the Amendment.

The non-waiver provision of the Amendment will also make it more difficult to informally resolve disputes with employee over payment of the minimum wage. Because an employee cannot waive his or her rights, a settlement agreement and release may not be binding on the employee.

What protections are offered to employees that complain about non-compliance with the Amendment?

The Amendment prohibits employers from discharging, reducing the compensation of or otherwise discriminating against any employee for using any civil remedies to enforce his or her rights under the Amendment. An employee claiming violation of the Amendment may bring an action against his or her employer in the courts of this State to enforce the provisions of the Amendment. An employee successfully prosecuting a suit under the Amendment is entitled to all remedies available under the law or in equity appropriate to remedy any violation, including but not limited to back pay, damages, reinstatement or injunctive relief. An employee who prevails in any action to enforce his or her rights under

the Amendment shall be awarded his or her reasonable  attorney's fees and costs.

Conclusion

The Amendment and interpretation of the new minimum wage requirements raise
numerous questions, many of which will need to be resolved by the implementation of new
regulations or statutes and maybe even resort to the courts.

It is currently anticipated that the Legislative Counsel will issue an opinion regarding the
interaction of the Amendment and existing minimum wage and overtime statutes. It is also
anticipated that the Labor Commissioner will issue formal guidance and regulations on
implementation of the minimum wage. Until that happens, employers in Nevada will need to
proceed with caution and carefully consider their course of action in complying with the
Amendment.

All employers, however, should take the following steps to ensure compliance with the
minimum wage:

Conduct an audit of all hourly employees to ascertain any potential issues of non-
compliance with the two-tiered minimum wage. Employees who earn less than $6.15 an
hour should either have their pay raised to $6.15 an hour, or they must be provided with
health insurance that meets the minimum coverage and cost requirements.

Review the salaries and hours worked of all salaried employees considered exempt under
the Fair Labor Standards Act to determine if any arguably make less than the new minimum
wage during any workweek. Remember, salaried exempt employees are not exempt from
the new minimum wage.

Review the methods of tracking hours of all employees to ascertain that all hours worked
are properly accounted for.

Implement, where necessary, procedures for tracking hours worked of salaried
employees. Remember, salaried exempt employees are not exempt from the new minimum
wage. The employer will be required to demonstrate compliance with minimum wage
requirements for even the traditionally exempt employees. Time records is one way to do
this.

Review your compliance decisions with and responses to the new minimum wage with your
labor counsel.

The content of this article is intended to provide a general guide to the subject matter.
Specialist advice should be sought about your specific circumstances.

Mr Rick Roskelley

Littler Mendelson

3960 Howard Hughes Parkway

Suite 300

Las Vegas

Nevada

89109-5937

UNITED STATES

Tel: 4154331940

Fax: 4159863925

E-mail: Jmetcalf@littler.com

URL: www.littler.com

Click Here for related articles

(c) Mondaq Ltd, 2006 - Tel. +44 (0)20 8544 8300 - http://www.mondaq.com

COPYRIGHT 2006 Mondaq Ltd.
No portion of this article can be reproduced without the express written permission from the copyright holder.
Copyright 2006 Gale, Cengage Learning. All rights reserved.

Please bookmark with social media, your votes are noticed and appreciated:



Class Action Overtime                                    Ads by Google
Specializing in Class Actions Unpaid Overtime? Contact Us
www.righettilaw.com
CA Labor Board Law

# EXHIBIT B

## STATE QUESTION NO. 6

### Amendment to the *Nevada Constitution*

### FULL TEXT OF THE MEASURE

### RAISE THE MINIMUM WAGE FOR WORKING NEVADANS

EXPLANATION – Matter in *bolded italics* is new; matter between brackets [omitted material] is material to be omitted.

### THE PEOPLE OF THE STATE OF NEVADA DO ENACT AS FOLLOWS:

**Section 1. Title.**

This Measure shall be know and may be cited as **"The Raise the Minimum Wage for Working Nevadans Act."**

**Section 2. Findings and Purpose**

The people of the State of Nevada hereby make the following findings and declare their purpose in enacting this Act is as follows:

1.   No full-time worker should live in poverty in our state.
2.   Raising the minimum wage is the best way to fight poverty.  By raising the minimum wage form $5.15 an hour to $6.15 an hour, a full-time worker will earn an additional $2,000 in wages.  That's enough to make a big difference in the lives of low-income workers to move many families out of poverty.
3.   For low –wage workers, a disproportionate amount of their income goes toward cost of living expenses.   Living expenses such as housing, healthcare, and food have far outpaced wage levels for Nevada's working families.
4.   In our state, 6 out of 10 minimum wage earners are women.  Moreover 25 percent of all minimum wage earners are single mothers, many of whom work full-time.
5.   At $5.15 an hour, minimum wage workers in Nevada make less money than they would on welfare.  When people choose work over welfare, they become productive members of society and the burden on Nevada taxpayers is reduced.
6.   Raising the minimum wage from $5.15 an hour to $6.15 an hour affirms Nevadan's beliefs that we value work, especially the difficult jobs performed by hotel maids, childcare workers, and nursing home employees.  We need to make sure the workers who are the backbone of our economy receive fair paychecks that allow them and their families to live above the poverty line.

**Section 3.**

Article 15 of the Constitution of the State of Nevada is hereby amended by adding thereto a new section to read as follows:

*Sec. 16. Payment of minimum compensation to employees.*

    *A. Each employer shall pay a wage to each employee of not less than the hourly rates set forth in this section. The rate shall be five dollars and fifteen cents ($5.15) per hour worked, if the employer provides health benefits as described herein, or six dollars and fifteen cents ($6.15) per hour if the employer does not provide such benefits. Offering health benefits within the meaning of this section shall consist of making health insurance available to the employee for the employee and the employee's dependents at a total cost to the employee for premiums of not more than 10 percent of the employee's gross taxable income from the employer. These rates of wages shall be adjusted by the amount of increases in the federal minimum wage over $5.15 per hour, or, if greater, by the cumulative increase in the cost of living. The cost of living increase shall be measured by the percentage increase as of December 31 in any year over the level as of December 31, 2004 of the Consumer Price Index (All Urban Consumers, U.S. City Average) as published by the Bureau of Labor Statistics, U.S. Department of Labor or the successor index or federal agency. No CPI adjustment for any one-year period may be greater than 3%. The Governor or the State agency designated by the Governor shall publish a bulletin by April 1 of each year announcing the adjusted rates, which shall take effect the following July 1. Such bulletin will be made available to all employers and to any other person who has filed with the Governor or the designated agency a request to receive such notice but lack of notice shall not excuse noncompliance with this section. An employer shall provide written notification of the rate adjustments to each of its employees and make the necessary payroll adjustments by July 1 following the publication of the bulletin. Tips or gratuities received by employees shall not be credited as being any part of or offset against the wage rates required by this section.*

    *B. The provisions of this section may not be waived by agreement between an individual employee and an employer. All of the provisions of this section, or any part hereof, may be waived in a bona fide collective bargaining agreement, but only if the waiver is explicitly set forth in such agreement in clear and unambiguous terms. Unilateral implementation of terms and conditions of employment by either party to a collective bargaining relationship shall not constitute, or be permitted, as a waiver of all or any part of the provisions of this section. An employer shall not discharge, reduce the compensation of or otherwise discriminate against any employee for using any civil remedies to enforce this section or otherwise asserting his or her rights under this section. An employee claiming violation of this*

section may bring an action against his or her employer in the courts of this State to enforce the provisions of this section and shall be entitled to all remedies available under the law or in equity appropriate to remedy any violation of this section, including but not limited to back pay, damages, reinstatement or injunctive relief. An employee who prevails in any action to enforce this section shall be awarded his or her reasonable attorney's fees and costs.

C. As used in this section, "employee" means any person who is employed by an employer as defined herein but does not include an employee who is under eighteen (18) years of age, employed by a nonprofit organization for after school or summer employment or as a trainee for a period not longer than ninety (90) days. "Employer" means any individual, proprietorship, partnership, joint venture, corporation, limited liability company, trust, association, or other entity that may employ individuals or enter into contracts of employment.

D. If any provision of this section is declared illegal, invalid or inoperative, in whole or in part, by the final decision of any court of competent jurisdiction, the remaining provisions and all portions not declared illegal, invalid or inoperative shall remain in full force or effect, and no such determination shall invalidate the remaining sections or portions of the sections of this section.