Mark R. Thierman, NV#8285 CAL#72913
**THIERMAN LAW FIRM, P.C.**
7287 Lakeside Drive
Reno, Nevada 89511
Tel: (775) 284-1500
Fax: (775) 703-5027

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ANTHONY LUCAS, GREGORY H. CASTELLO, LILLIAN MELTON, LEAVON R. SMITH, ROBERT A. GREENE, JAMES A. BIGGS, LARRY DUTCHER, WILLIAM C. SACK, DONALD A. SPEARCE, MERRILL L. CLAIR, BRADLEY J. EDWARDS, and LISA MEDFORD on behalf of themselves and all others similarly situated, | Case No. 2:08-CV-01792-RCJ-RJJ |
| Plaintiffs, | |
| v. | |
| BELL TRANS, a Nevada corporation; BELL LIMO, a Nevada corporation; and WHITTLESEA-BELL CORPORATION, and Does 1-50, Inclusive | |
| Defendants. | |

**PLAINTIFFS' MOTION FOR CIRCULATION OF NOTICE OF THE PENDENCY OF THIS ACTION PURSUANT TO 29 U.S.C. § 261(b) AND OTHER RELIEF WITH MEMORANDUM IN SUPPORT THEREOF**

Comes now Plaintiffs ANTHONY LUCAS, GREGORY H. CASTELLO, LILLIAN MELTON, LEAVON R. SMITH, ROBERT A. GREENE, JAMES A. BIGGS, LARRY

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

1  DUTCHER, WILLIAM C. SACK, DONALD A. SPEARCE, MERRILL L. CLAIR,

2  BRADLEY J. EDWARDS, and LISA MEDFORD ("Plaintiffs") on behalf of themselves

3  and all others, through their attorneys Thierman Law Firm, and moves this Court pursuant

4  to 29 U.S.C. § 216(b) for an order directing that other persons similarly situated to Plaintiffs

5  and who were or are employees employed as limousine drivers by Defendants BELL TRANS,

6  BELL LIMO and/or WHITTLESEA-BELL CORPORATION (hereinafter collectively,

7  "Defendant") be given notice of the pendency of this action as party Plaintiffs and for other

8  associated relief, including a toll of the statute of limitations otherwise applicable to such

9  persons' claims for the period of time that this motion is pending before the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

12  Plaintiffs submit this memorandum of points and authorities in support of their motion

13  to advise persons similarly situated to Plaintiffs of the pendency of this action pursuant to

14  29 U.S.C. § 216(b) ("§ 216(b)") and toll the statute of limitations for such persons to join

15  this action while this motion is pending.  This action is brought under the Fair Labor

16  Standards Act, 29 U.S.C. §§ 201 *et seq.* (the "FLSA"), for unpaid overtime and minimum

17  wages.  The Complaint in this action was filed on December 18, 2008 and amended on

18  July 10, 2009 and approximately forty employees or former employees of Defendant have

19  already "opted in" to the action.

## STATEMENT OF THE CASE AND PROCEDURAL ISSUES

21  The complaint in this action raises claims for employee overtime and minimum wages.

22  The class consists of all limousine drivers employed by Defendant who didn't drive interstate

23  and who didn't drive local passengers on "through tickets" where the ultimate destination for

24  the passenger was out of state.  By so limiting the class, Plaintiff excludes employees who

25  fit within either the taxicab exemption at § 213(b)(17) or the Motor Carrier Act exemption

26  at 29 U.S.C. § 213(b)(1) to the Fair Labor Standards Act's overtime requirements, 29 U.S.C.

27  207(a)(1).

28

THERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

1    This motion concerns only the "opt in" representative collective action under FLSA §

2    16(b) and not the F.R.C.P. § 23 ("opt out") class action relating to Plaintiffs' Nevada state law

3    claims.[1]   The "opt in" procedure of § 216(b) prohibits any person from being a plaintiff in a

4    FLSA action unless they file a written consent with the Court.   A Rule 23 class action

5    certification of Plaintiffs' state law claims would bind all persons with such state law

6    claims unless they "opt out" of this litigation.   These different procedural approaches are

7    not antagonistic and can be harmonized in a complementary fashion.   See, *Ansoumana v.*

8    *Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001), *Brychnalski v. Unesco, Inc.*,

9    35 F. Supp. 2d 351 (S.D.N.Y. 1991), *Beltran-Benitez v. Sea Safari*, 180 F. Supp. 2d 772

10   (E.D.N.C. 2001) and the majority of Court decisions that have examined this issue.

11   This motion only requests the circulation of a notice of the pendency of this action

12   to certain other persons pursuant to § 216(b) so they can "opt in" to this litigation under the

13   FLSA.   This is called a "collective action" or representative action, because under § 216(b)

14   no person is bound by, or benefits from, an FLSA litigation unless they "opt in" by filing a

15   written consent with the Court, and the statute of limitations on such persons' FLSA claim

16   continues to run until they file a written consent.   The lack of a class-wide toll of the statute

17   of limitations in FLSA cases should cause the Court to err in favor of providing notice to

18   other persons of their "opt in" rights at the earliest stage of the litigation.   Failing to provide

19   such prompt notice frustrates the FLSA's broad remedial purposes and its specific grant of

20   collective action rights to employees.   FLSA plaintiffs make an affirmative and conscious

21   choice to "opt in" and join the litigation and, once notice has been sent, there are no "silent"

22   FLSA participants whose interests need to be protected by the Court.

23                                   **STATEMENT OF THE FACTS**

24   Defendant employed limousine drivers full-time within the state of Nevada.   The

25   Complaint in this action was filed on December 18, 2008 and amended on July 10, 2009 and

26

27   ─────────────────────

28   [1]Plaintiffs' counsel believes the facts of this case will ultimately compel a Rule 23 class
     certification of Plaintiffs' state law claims but makes no request for such class certification as part
     of this motion.

1  approximately forty employees or former employees of Defendant have already "opted in" to

2  the action.

3      Defendant operates stretch limousines which seat 8 to 14 people, including the driver,

4  and weigh less than 10,000 gross. Declaration of Leslie Montoya, former HR and Assistant

5  to General Manager-Bell Limousine, attached hereto as Exhibit "A" (hereinafter, "Montoya

6  Decl."), p. 2, lns. 17-19, and Declaration of James Biggs attached hereto as Exhibit "B"

7  (hereinafter, "Biggs"), p. 2, ¶ 2. All of Defendant's limousine companies are commonly

8  operated under uniform policies and procedures with drivers often going from one company

9  to the next. See, Montoya Decl., p. 2, lns. 1-29, through p. 2, lns. 1-3.

10     Defendant pays its limousine drivers on a commission-only basis with no minimum

11 wage offset and without any premium pay for time worked over 40 hours in a week.[2]

12 Montoya Decl., p. 3, lns. 4-3, p. 3, lns. 25-26; Biggs Decl., p. 2, 8-9; and Exhibit "C"

13 attached hereto. Defendant's limousine drivers routinely work more than 40 hours in a

14 week. Indicative of the high amount of overtime worked by the limousine drivers is the

15 fact that Defendant requires its employees to work 50 hours a week before they can even

16 receive benefits, such as vacation pay and medical insurance. Montoya Decl., p. 3, lns. 27-28,

17 and Biggs Decl., p. 2, ¶ 6.

18     Defendant's limousine drivers are required to check in with the dispatcher at their

19 local yard, pick up keys, prepare the limousine, check for damage to the limousine, make

20 certain it is clean (the driver is required to pay for cleaning products), and complete

21 paperwork without pay for this time. If limousine drivers are making a "bar run," they

22 must get ice (the driver is required to pay for the ice) and napkins (the driver is required to

23 pay for the napkins) without pay for this time. The drivers then travel to the airport, check in

24 with dispatch at the airport, and wait for his or her first trip, still not getting paid. Montoya

25 Decl., p. 3, lns. 3-12, and Biggs Decl., p. 2, ¶ 7.

26

27

28 [2]Although since Defendant pays its limousine drivers on a per-trip sheet basis, the pay structure
more closely resembles a piece-rate scheme.

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

1  Pay starts when the driver leaves the airport to pick up or deliver the first passenger.

2  For example, if the driver has to wait in the airport holding a sign to get his first fare, he is not

3  paid until a fare is loaded with the guest's luggage and leaving the airport; i.e., the time starts

4  on the trip sheet when the driver actually leaves the airport.  Pay stops when the driver returns

5  to the airport and he is not paid for the time waiting for the next fare.  This is called being

6  paid from Port to Port.  Montoya Decl., p. 3, lns. 13-19, and Biggs Decl., pp. 2-3, ¶ 8.

7  Defendant charges or requires all of its limousine drivers to pay for:  (1) a Nextel radio

8  to communicate with dispatch, (2) airport charter fees ($1/trip – every time the driver leaves

9  the airport regardless of whether the driver picks up a client or not), (3) all the cleaning

10  products for the vehicles, (4) an unclean vehicle ($10 for the outside/$10 for the inside),

11  (5) car washes, (6) ice and napkins, (7) broken or missing barware (e.g., glassware and

12  decanters), and (8) damage to the vehicle whether the fault of the driver or not.  In some

13  cases, these deductions from pay may have caused the drivers to go below minimum wage.

14  Montoya Decl., p. 4, lns. 10-23, and Biggs Decl., p. 2, ¶ 9.

## ARGUMENT

**I.**  **DEFENDANT VIOLATED THE MINIMUM WAGE LAWS, BECAUSE (1) IT DID NOT PAY MINIMUM WAGE IN SOME PAY PERIODS EXCLUSIVE OF DEDUCTIONS AND NECESSARY EXPENDITURES AND (2) DEDUCTIONS AND NECESSARY EXPENDITURES MAY HAVE CAUSED WAGES TO DROP BELOW MINIMUM WAGE IN OTHER PAY PERIODS**

20  Section 6 of the Fair Labor Standards Act, 29 U.S.C. § 206, requires the payment

21  of minimum wages for all hours worked of $5.15 an hour prior to July 25, 2007, $5.85 an

22  hour thereafter until July 25, 2008, and $6.55 thereafter with no exceptions relevant herein.

23  An "employee must receive 'prompt payment' of the minimum wage covering all hours

24  worked within the pay period."  *Biggs v. Wilson*, 1 F.3d 1537, 1542 (9th Cir. 1993), citing

25  *Olson v. Superior Pontiac GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir. 1985).

26

27

28

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

Defendant failed to pay its limousine drivers the federal minimum wage earned during all pay periods.[3]  Although in some instances a limousine driver may have earned in excess of the minimum wage in a prior pay period, an employer only may claim that excess commissions earned have been carried forward and applied to the minimum wage for the next period if the employee actually received payment of the federal minimum wage during each pay period. *Id.*, citing *Olson*, 756 F.2d at 1579.  For example, "A mere alteration of the employer's records that reflects excess commissions earned in the preceding period being applied toward the minimum wage for the current period will not suffice.  The employee must *actually receive* the minimum wage each pay period."  (Emphasis supplied.)  *Id.*

Even when limousine drivers were paid the minimum wage during a pay period, deductions and required expenditures may have caused the wages to drop below the federal minimum wage.  The Fair Labor Standards Act, 28 U.S.C. § 207(e)(2) defines "regular rate" of pay for purposes of calculating minimum wage and overtime, in relevant part, as follows:

> As used in this section, the "regular rate" at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee, but shall not be deemed to include –
>
> (2)   payments made […] for other expenses incurred by an employee in the furtherance of his employer's interest and properly reimbursable by the employer.

The FLSA requires reimbursement of these expenses if failure to do so would drop an employee's wages below the minimum wage.  See, *Marshall v. Root's Restaurant, Inc.*, 667 F.2d 559 (6th Cir. 1982) (restaurant violated FLSA by requiring waitresses to purchase uniform as a condition of employment, deducting cost of uniforms from first week's wages, and thereby reducing wages below the minimum wage rate) and *California Dairies, Inc. v. RSUI Indem. Co.*, 617 F. Supp. 1023, 1045 (E.D. Cal. 2009) (costs of cleaning uniforms must be reimbursed if failure to reimburse would reduce wages below minimum wage).  "Employers must provide workers 'weekly wages' 'in cash or in facilities,' 'free and clear' of

---

[3]These wages often fall below the federal minimum wage even when including tip credits.

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

1   improper deductions, at a rate no lower than the minimum wage rate […]." *Arriaga v.*

2   *Florida Pacific Farms, LLC*, 305 F.3d 1228, 1235 (11th Cir. 2002), quoting, *inter alia,*

3   29 C.F.R. § 531.35. Title 29 of the Code of Federal Regulations, Section 531.35, clarifies:

4           For example, if it is a requirement of the employer that the employee
5           must provide tools of the trade which will be used in or are specifically
        required for the performance of the employer's particular work, there
6           would be a violation of the Act in any workweek when the cost of such
        tools purchased by the employee cuts into the minimum or overtime
7           wages required to be paid him under the Act.

8   See also, 29 C.F.R. § 778.217 (expenditures must be reimbursed, for example, for "the actual

9   amount expended by an employee in purchasing supplies, tools, materials, or equipment on

10  behalf of his employer.")

11          Here, Defendant's limousine drivers are charged or required to pay for:  (1) their radio

12  used to communicate with dispatch, (2) airport charter fees, (3) all cleaning products for the

13  vehicles, (4) ice and napkins, (5) replacement costs of barware (even if broken by the

14  customers), (6) costs of washing the vehicles, (7) $10 for an unclean vehicle outside and $10

15  for an unclean vehicle inside, and (8) damage to the vehicle whether the damage is the fault of

16  the driver or not.

17  **II.     LIMOUSINE DRIVERS ARE NOT EXEMPT FROM OVERTIME, BECAUSE
18          THEY FALL WITHIN AN EXCEPTION TO THE MOTOR CARRIER ACT
        EXEMPTION AT 29 U.S.C. § 213(b)(1)**
19
20          Under federal law, all employees are required to be paid time and one-half for hours

21  worked in excess of forty per week unless one of the exemptions applies.  29 U.S.C. §

22  207(a)(1)).  The employer bears the burden of establishing that an employee falls within

23  an exemption and the exemptions must be narrowly construed against the employer seeking to

24  assert them.  See, *Arnold v. Ben Kanowsky, Inc.* 361 U.S. 388, 392 (1960).

25          There is only one possible exemption that could apply to limousine drivers in this case

26  under 29 U.SC. § 207(a)(1) for persons whom the Secretary of Transportation has the power

27  to establish qualifications and maximum hours of service pursuant to the provisions of

28  Section 204 of the Motor Carrier Act of 1935 (such as employees who regularly transport

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

1 | passengers interstate or to the airport on a "through ticket" interstate or who require, as a
2 | matter of law, a commercial drivers license (CDL) or equivalent in order to perform their
3 | duties).

4 | While taxicab drivers are exempt from the minimum wage and overtime compensation
5 | provisions of the federal Fair Labor Standards Act, limousine drivers are not. See, April 17,
6 | 1998 Opinion Letter of the Wage and Hour Division of United States Department of Labor,
7 | reported at 1998 WL 852774 (copy attached as Exhibit "D" hereto), Section 24h03 of the
8 | United States Department of Labor's Field Operations Handbook (copy attached as Exhibit
9 | "E" hereto), *Powell v. Carey Int'l, Inc.*, 483 F.Supp.2d 1168, 1172-73 (S.D. Fla. 2007);
10 | *Powell v. Carey Int'l, Inc.*, 490 F.Supp.2d 1202, 1213 (S.D. Fla. 2006) (defendants are not
11 | exempt as taxicab operators when they have contract arrangements with local hotels,
12 | corporate clients, and destination management companies, and utilize large cars that are not
13 | traditionally recognized as taxicabs); *Airlines Transp. v. Tobin*, 198 F.2d 249, 250 (4th Cir.
14 | 1952); and *Wirtz v. Cincinnati, Newport and Covington Transp. Co.*, 375 F.2d 513, 515 (6th
15 | Cir. 1967).

16 | Because Plaintiffs and Plaintiff class do not drive passengers with "through tickets"
17 | from airlines for travel interstate, they are not exempt from overtime under Section 13(b)(1)
18 | of the Fair Labor Standards Act. See, Section 24c04 of the United States Department Field
19 | Operations Handbook, which states with original emphasis, "Therefore, Sec 13(b)(1) will not
20 | apply except in the case of a through-ticketing or other common arrangements for continuous
21 | passage or interchange between the motor carrier and the air carrier."

22 | Defendant operates stretch limousines which seat 8 to 14 people, including the driver,
23 | and weigh less than 10,000 gross. Defendants are not required to have a CDL to operate these
24 | limousines because they do not meet the 14 plus 1 (14 passengers plus a driver) minimum for
25 | Department of Transportation regulation. Plaintiffs and Plaintiff class also are not exempt
26 | from overtime compensation under Section 13(b)(1) of the Fair Labor Standards Act, because
27 | under recent amendments to the Motor Carrier Act, the Secretary of Transportation does
28 | not have the power to establish qualifications and maximum hours of service pursuant to

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

1   the provisions of Section 204 of the Motor Carrier Act of 1935 for these Plaintiffs and

2   Plaintiff class members.  On August 10, 2005, Congress enacted Section 4142 of the

3   Safe, Accountable, Flexible, Efficient Transportation Equity Act:  A Legacy for Users

4   ("SAFETEA-LU").  Pub. L. No. 109-59, 119 Stat. 1144 (2005).  SAFETEA-LU amended 49

5   U.S.C. § 13102 defined a motor carrier as "a person providing commercial motor vehicle (as

6   defined in [49 U.S.C.] § 31132) transportation for compensation." *Id.*  (Emphasis added).  In

7   turn, a commercial motor vehicle was defined as: "[A] self-propelled or towed vehicle used

8   on the highways in interstate commerce to transport passengers or property, if the vehicle--

9   (A) has a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds,

10  whichever is greater; (B) is designed or used to transport more than 8 passengers (including

11  the driver) for compensation; (C) is used in transporting material found by the Secretary of

12  Transportation to be hazardous under section 5103 of this title [49 U.S.C. § 5103] and

13  transported in a quantity requiring placarding under regulations prescribed by the Secretary

14  under [49 U.S.C.] section 5103."

15       On June 6, 2008, Congress passed the SAFETEA-LU Technical Corrections Act of

16  2008.  Pub. L. No. 110-244, 122 Stat. 1572 (2008) ("Technical Corrections Act"), which

17  defines the phrase "covered employee" in § 306(c) of SAFETEA-LU as an individual: "(1)

18  who is employed by a motor carrier or motor private carrier (as such terms are defined by

19  section 13102 of title 49, United States Code, as amended by section 305); (2) whose work, in

20  whole or in part, is defined--(A) as that of a driver, driver's helper, loader, or mechanic; and

21  (B) as affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in

22  transportation on public highways in interstate or foreign commerce, except vehicles--(i)

23  designed or used to transport more than 8 passengers (including the driver) for compensation;

24  (ii) designed or used to transport more than 15 passengers (including the driver) and not used

25  to transport passengers for compensation; or (iii) used in transporting material found by the

26  Secretary of Transportation to be hazardous under section 5103 of title 49, United States

27  Code, and transported in a quantity requiring placarding under regulations prescribed by the

28

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

1  Secretary under section 5103 of title 49, United States Code; and (3) who performs duties on

2  motor vehicles weighing 10,000 pounds or less."

3  **III.     NOTICE OF THE PENDENCY OF THIS ACTION SHOULD BE GIVEN**

4             The courts in this District take a two-tier approach to certifying a collective action.

5  The first tier is called the "notice stage," whereby the court conditionally certifies the class for

6  the limited purpose of disseminating notice to putative class members and allowing them to

7  opt in. *Williams v. Trendwest Resorts, Inc.*, 2006 WL 3690686 at *4-5 (D. Nev. Dec. 7,

8  2006). The second stage occurs after extensive discovery has been completed, at which time

9  the court allows for motion relating to decertification. *Id.,* citing *Schwed v. Gen. Elec. Co.*,

10  159 F.R.D. 373, 375 (N.D.N.Y. 1995) ("Even where later discovery proves the putative class

11  members to be dissimilarly situated, notice [...] prior to full discovery is appropriate as it may

12  further the remedial purpose of the [FLSA].")  The issues considered in a Rule 23 class

13  certification motion, such as numerosity, typicality, commonalty and representativeness are

14  not considered on a motion to circulate notice of the pendency of an action. See, *Id.* and

15  *Foster v. The Food Emporium*, 2000 W.L. 1737858, 2000 U.S. Dist. LEXIS 6053, J.

16  McMahon (S.D.N.Y. 2000), citing *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249 (S.D.N.Y.

17  1997).

18             At the notice stage, the courts determine whether the "potential opt-in plaintiffs are

19  similarly situated." *Id.* at *4, citing *Hipp v. Liberty National Life Ins. Co.*, 252 F.3d 1208

20  1218 (11th Cir. 2001).  Neither the FLSA nor its implementing regulations define the term

21  "similarly situated."  However, the courts have held plaintiffs can meet this burden by making

22  a modest factual showing sufficient to demonstrate that they and potential plaintiffs together

23  were victims of a common policy or plan that violated the law. See, *Id.* at *4, citing *Realite v.

24  Ark Rest. Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998) (the "evidence must show 'there is

25  some factual nexus which binds the named plaintiffs and the potential class members together

26  as victims of a particular alleged policy or practice'"); *Krueger v. New York Telephone Co.*,

27  1993 WL 276058 (S.D.N.Y. July 21, 1993) (when the litigation is in its early stages, plaintiffs

28  need only provide "some factual basis from which the court can determine if similarly

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

1  situated potential plaintiffs exist"); and *Schwed v. General Electric Co.*, 159 F.R.D. 373, 375-

2  76 (N.D.N.Y. 1995) ("plaintiffs need only describe the potential class within reasonable limits

3  and provide some factual basis from which the court can determine if similarly situated

4  potential plaintiffs exist").

5      Although the plaintiffs bear the burden of showing they are similarly situated,

6  "the burden is light and can be based on the pleadings and any affidavits which have been

7  submitted." *Williams*, 2006 WL 3690686 at *4, citing *Bonilla v. Las Vegas Cigar Co.*, 61 F.

8  Supp. 2d 1129, 1139 n. 6 (D. Nev 1999). Finally, the court also determines whether there are

9  potential plaintiffs who desire to opt in. *Id.*

10      Here, potential class members have shown suitable interest just based on the

11  approximately 40 consents to sue filed in this matter. Plaintiffs and the putative class

12  members are all Nevada limousine drivers working on a commission basis, required to be

13  on-site for eight plus hours per day, 5 to 7 days a week, but who are only paid on a per-trip

14  ticket basis and charged for the same or similar expenses related to Defendant's business.

15  Defendant's companies are all commonly owned and operated within the state of Nevada

16  under uniform policies and practices. Plaintiffs have met their minimal burden to show that

17  Plaintiff and the Plaintiff class are similarly situated.

18      Within the last four years four District Judges in this District, and two Magistrate

19  Judges, in at least eight other different cases of which plaintiff's counsel is aware, have

20  embraced the modest factual showing and lenient standard for FLSA notice only certification

21  requests and granted such certifications. See, *Brown v. Terrible Herbst, Inc.*, CV-S-05-0008-

22  RCJ-LRL, Magistrate Judge Lawrence R. Leavitt, Report and Recommendation of

23  September 23, 2005, adopted over defendants' objections, by January 11, 2006, order of

24  District Court Judge Robert C. Jones; *Morales v. Allied Building Crafts*, CV-S-04-1365-

25  LRH-LRL, Order of Magistrate Judge Lawrence R. Leavitt of March 16, 2005, adopted by

26  District Court Judge Larry R. Hicks by Order of May 31, 2005, over defendants' objections;

27  *De La Mora v. Silver Dollar Recycling, Inc.*, CV-S-05-0950-RLH-RJJ, Order of District

28  Judge Roger L. Hunt of February 8, 2006; *Westerfield v. Fairfield Resorts, Inc.*, CV-S-05-

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

1264-JCM (RJJ), Minute Order of District Judge James C. Mahan or March 29, 2006;
*Reyes v. Cover-All*, CV-S-07-148 RCJ (PAL), Magistrate Judge Peggy A. Leen, Order of
August 27, 2007, Docket #68, adopted over Defendant's objections by the March 19, 2008,
Order of District Court Judge Robert C. Jones, Docket #119; *Cranney v. Carriage Services*,
CV-S-07-1587 RLH (PAL), Order of February 29, 2008, Docket #65, Chief Judge Roger L.
Hunt; *Addington v. Consolidated Realty*, CV-S-08-354 KJD (PAL), Order of June 17, 2008,
Docket #18, of Magistrate Judge Peggy A. Leen; and *Davis v. Westgate Planet Holleywood
Las Vegas*, CV-S-08-722 RCJ (PAL), Order of January 12, 2009, Docket #75, Magistrate
Judge Peggy A. Leen.

Plaintiffs request that they be immediately provided with the names, addresses, phone
numbers and e-mail addresses of Defendant's limousine drivers who worked for Defendant at
any time since December 18, 2005. Plaintiffs' counsel will advance the costs of such notice
against costs awarded by the Court should the action be successful. If the action is not
successful, Plaintiffs' counsel will not seek any reimbursement for costs.

## IV.     A PROPOSED FORM OF NOTICE IS ATTACHED AS EXHIBIT "F"

A proposed Notice of Pendency is provided at Exhibit "F". This Notice of Pendency
is based upon a form approved for use by this court in the cases *Morales v. Allied Building
Crafts*, CV-S04-1365-LRH-LRL (Order of Magistrate Judge Lawrence R. Leavitt of
October 6, 2005) and *Westerfield v. Fairfield Resorts, Inc.*, CV-S05-1264-JCM (RJJ),
Minute Order of District Judge James C. Mahan of March 29, 2006. Plaintiff is not wed to
the form of the notice and will gladly accept any modifications that make it more clear and
concise.

## V.      THE COURT SHOULD TOLL THE STATUTE OF LIMITATIONS IN THIS
           CASE FOR THE PERIOD OF TIME THAT THIS MOTION IS PENDING

Under the FLSA, the statute of limitations on each individual "opt in" plaintiff's claim
continues to run until their consent to joinder is filed with the court (there is no class-wide toll
as in Rule 23 class actions). It is requested that the statute of limitations be tolled for all "opt
in" plaintiffs for the period of time that this motion is pending. Such a statute of limitations

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

toll would deny the Defendant any benefit from unsuccessfully opposing Plaintiffs' motion to circulate a notice of pendency. Plaintiffs raise this issue both because they believe such a stay is justified and to preserve it in the record of this case's proceedings. Allowing the FLSA's statute of limitations for potential plaintiffs to continue running while a motion for a notice of pendency is being decided encourages defendants to always oppose such motions irrespective of the merits of such delaying action by the court, even though the party "loses" the motion on the merits.

There is no fair basis for a FLSA defendant to oppose the sort of statute of limitations toll being requested. If Defendant's motion opposing is successful, there will be no notice of pendency circulated. If Defendant's opposition fails, Defendant is no worse off than if it had never opposed the motion in the first place. The only difference is that the Defendant is denied any benefit from unsuccessfully opposing the motion to circulate a notice of pendency. This is absolutely fair to all concerned. *Partlow v. Jewish Orphans' Home of Southern California, Inc.*, 645 F.2d 757, 760 (9th cir. 1981); *Owens v. Bethlehem Mines Corporation*, 630 F. Supp. 309 (C.W. Va. 1986); and *Lee v. ABC Carpet and Home,* 236 F.R.D. 193 (S.D.N.Y. 2006).

## CONCLUSION

For all of the foregoing reasons, Plaintiff's motion should be granted in its entirety together with such other further and different relief that the Court deems proper.

Dated this 7th day of August, 2009.

Respectfully submitted:

THIERMAN LAW FIRM

By:_____ /s/Mark R. Thierman_____
MARK R. THIERMAN
Attorney for Plaintiffs

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

# EXHIBIT A

Mark R. Thierman, NV#8285 CAL#72913
**THIERMAN LAW FIRM, P.C.**
7287 Lakeside Drive
Reno, Nevada 89511
Tel: (775) 284-1500
Fax: (775) 703-5027

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

ANTHONY LUCAS, GREGORY H.      )    Case No. 2:08-CV-01792-RCJ-RJJ
CASTELLO, LILLIAN MELTON, LEAVON )
R. SMITH, ROBERT A. GREENE, JAMES )
A. BIGGS, LARRY DUTCHER, WILLIAM )
C. SACK, DONALD A. SPEARCE,        )
MERRILL L. CLAIR, BRADLEY J.       )
EDWARDS, and LISA MEDFORD on     )
behalf of themselves and all others similarly )
situated,                         )
                          )
           Plaintiffs,       )
                          )
     v.                   )
                          )
BELL TRANS, a Nevada corporation;   )
BELL LIMO, a Nevada corporation; and  )
WHITTLESEA-BELL CORPORATION,   )
and Does 1-50, Inclusive        )
                          )
          Defendants.     )
_____)

## AFFIDAVIT OF LESLIE A. KNOLL-MONTOYA IN SUPPORT OF

## MOTION TO CIRCULATE NOTICE

**THIERMAN LAW FIRM, PC**
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

STATE OF NEVADA      )
                     :ss
COUNTY OF WASHOE     )

Affiant being first duly sworn, deposes and says:

From August of 2006 until August 2007, I was employed by Bell Limousine as the human resource person and assistant to the general manager for Bell Limousine, Airport Minibus and Whittlesea Taxi, which are all owned and operated by Whittlesea-Bell Corporation. Whittlesea-Bell Corporation owns and operates eight transportation companies in Nevada. The companies are Bell Trans, Presidential Limousine, Whittlesea Blue Cab, Henderson Taxi, Las Vegas Strip Trolley, Bell Limousine, Airport Mini-Bus, and Whittlesea Taxi. There is a single board of directors and a single chief financial officer for all these companies. Brent Bell is the President of all eight companies and he is in charge of all of them. Brad Bell is the Vice President of Bell Limousine, Whittlesea Taxi and Airport Minibus. Larry ("Chip") Bell, Jr. is the Chief Executive Officer of Bell Limousine, Whittlesea Taxi and Airport Minibus. JJ Bell, Brad's brother, is the general manager for Presidential Limousine and Bell Trans. All the members of the Board of Directors of Whittlesea-Bell Corporation are members of the Bell family.

Whittlesea Blue Cab, Whittlesea Taxi and Henderson Taxi operate taxi cabs only. Bell Limousine, Bell Trans and Presidential Limousine operates (about 300) stretch limousines which seat 8 to 14 people, including the driver, and weigh less than 10,000 gross. It is not required to have a CDL (Commercial Drivers License) to operate these limousines because they do not meet the 14 plus 1 (14 passengers plus a driver) minimum for Department of Transportation regulation. Airport Minibus has minivans rather than stretch limousines, and requires a CDL license or a class C license with a "P" ("Passenger") endorsement. All the companies operate the same unless otherwise noted hereinafter with drivers going from one company to the next often.

All the Whittlesea-Bell Corporation entities engaged in the transportation industry have the same management. All the drivers of the Reno branches of the Whittlesea-Bell Corporation subsidiaries are paid by a single payroll department, run by the same person, who

THERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

is the office manager in Reno for all the Bell transportation entities. The main office in Reno is located at 100 Sunshine Lane in Reno.

Bell Limousine drivers are all paid on a commission basis without any overtime premium. The drivers are required to check in at Bell's yard locally, pick up the keys from the dispatcher, prepare the car to be ready by making sure the car is clean (which the driver is required to pay for cleaning products), doing paper work, if it's a "bar run" getting ice (which the driver is required to pay for) and napkins (which the driver must pay for), checking in with the dispatch, and traveling to the airport, all without any pay for this time. From the hundreds of times I have seen this occur, I would estimate it takes at least 20 minutes in the yard before driving to the first stop (usually the airport) where there is another dispatcher. All this time is unpaid, including the time spent driving to the airport. The driver then waits for his or her first trip, still not getting paid.

Pay starts when the driver leaves the airport to pick up or deliver the first passenger. For example, if the driver has to wait in the airport holding a sign to get his first fare, he is not paid even for that time he spends looking for the fare, until the fare is loaded with the guest's luggage and leaving the airport. The time starts on the trip sheet when the driver actually leaves the airport. If the driver doesn't have a fare in the car, he is not paid. Pay stops when the driver returns to the airport, and he is not paid for the time waiting for the next fare. This is called being paid from Port to Port.

Another example is when a driver drops off all the passengers in Las Vegas at a hotel limousine stand. The time spent waiting for the next fare is not being paid at all. The Driver can't leave the car, but does not get paid because there is no fare.

The customer is charged by the hour, so the driver only gets paid for the time that the customer pays Bell. The driver gets a percentage of the fare which varies by the vehicle, but it is usually 25% of the fare. But the driver of a stretch limousine only gets 18.75% of the fare, and the driver of a Hummer gets only 15.625% of the fare. There is no overtime paid, although drivers routinely work more than 40 hours in a week. The company requirement for benefits, like vacation pay and medical insurance, is working 50 hours a week. Although I

THERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

was not in payroll, I routinely distributed all the checks to the drivers in Reno and was responsible for new driver orientation, which includes explaining how drivers are paid.

Airport minibus drivers are paid on one of two methods. If it is a charter trip, they are paid a commission the same as the limousine drivers (although the percentages may vary). If it is a "program run," then they are paid by the hour. Some hourly bus driver, like "the Summer Trolley" which is a contract with Placer County, is not paid for driving a Bell vehicle from downtown Reno to the start of the run in Placer County. However, none of the drivers paid commissions are paid overtime on their commissions. All the drivers are not paid for the time they spent cleaning the car in the yard before or at the end of their shift.

In addition, Bell charges all drivers for a Nextel radio to communicate with Bell's dispatch. Bell charges all the drivers an airport fee, which I believe is one dollar per trip, all the cleaning products for the vehicles, and charges the drivers for damages to the vehicle if the driver was at fault. Bell would inspect the limousine or if a driver reported he received the car in a dirty condition, Bell would charge the driver $10. Bell also made the drivers wash the car on their own time, without pay, and makes the drivers pay for the wash itself. Bell made the drivers on the "bar run" cars pay for ice, napkins, and broken or missing bar-ware (glassware and decanters, etc). I saw Bell try to charge one driver, Merrill Claire, for a broken TV, but Merrill refused to pay and Chip Bell fired him before the company could deduct the money from his paycheck.

Bell also charged the drivers for any damage to the vehicle whether they were at fault or not, up to $500, although I have heard of one driver (Brandon Fields) who was charged $800 recently. In some cases, I believe that these deductions from pay may have caused the drivers to go below minimum wage.

In January, 2007, I was aware of wage changing regulations because Nevada had changed the minimum wage in its Constitution. I approached Brad Bell and told him that there was a change in the law of minimum wage and that I was going to look into it. He said "Don't bother, it doesn't affect us." I said some of the drivers had mentioned it to me and I

am pretty sure it does affect us.  He said, "Don't worry, I have lots of lawyers" and he was not going to change the way Bell paid its drivers.

Affiant hereby affirms under penalty of perjury that the foregoing is true and correct.

Leslie A. Knoll-Montoya

SUBSCRIBED and SWORN to before me, a Notary Public, this 7th day of August, 2009.

NOTARY PUBLIC

JASMIN WILLIAMS
Notary Public - State of Nevada
Appointment Recorded in Washoe County
No: 07-4593-2 - Expires August 30, 2011

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

Affidavit of Leslie A. Knoll-Montoya in Support of Motion to Circulate Notice

5

# EXHIBIT B

Mark R. Thierman, NV#8285 CAL#72913
**THIERMAN LAW FIRM, P.C.**
7287 Lakeside Drive
Reno, Nevada 89511
Tel: (775) 284-1500
Fax: (775) 703-5027

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

ANTHONY LUCAS, GREGORY H. CASTELLO, LILLIAN MELTON, LEAVON R. SMITH, ROBERT A. GREENE, JAMES A. BIGGS, LARRY DUTCHER, WILLIAM C. SACK, DONALD A. SPEARCE, MERRILL L. CLAIR, BRADLEY J. EDWARDS, and LISA MEDFORD on behalf of themselves and all others similarly situated,

     Plaintiffs,

  v.

BELL TRANS, a Nevada corporation; BELL LIMO, a Nevada corporation; and WHITTLESEA-BELL CORPORATION, and Does 1-50, Inclusive

     Defendants.

Case No. 2:08-CV-01792-RCJ-RJJ

## AFFIDAVIT OF JAMES BIGGS IN SUPPORT OF

## MOTION TO CIRCULATE NOTICE

STATE OF NEVADA    )
                   :ss
COUNTY OF WASHOE   )

Affiant being first duly sworn, deposes and says:

1.     I was employed by Bell Limousine from November, 2006 until July 15, 2008 at the offices located at 100 Sunshine Lane, Reno, Nevada.

2.     I operated stretch limousines which seat 8 to 14 people, including the driver, and weigh less than 10,000 gross.

3.     Bell Limousine pays its limousine drivers on a commission-only basis with no minimum wage offset and without any premium pay for time worked over 40 hours in a week.

4.     I routinely worked over 40 hours a week without receiving overtime pay, time and one-half, for all hours I worked over forty (40) hours per week during my employment with Bell Limousine.

5.     I have observed my fellow limousine drivers also routinely work in excess of 40 hours, and I believe they did not receive overtime pay for all hours worked over forty (40) hours per week.

6.     Bell Limousine requires its employees to work 50 hours a week before they can even receive benefits, such as vacation pay and medical insurance.

7.     I was required to check in with the dispatcher at my local yard, pick up keys, prepare the limousine, inspect the car for damage, make certain it is clean (the driver is required to pay for cleaning products), get ice and napkins (limousine drivers are required to pay for the ice and napkins), and complete paper work without pay for this time. I then would travel to the airport, check in with dispatch at the airport and wait for my first trip, still not being paid.

8.     Pay starts when the driver leaves the airport to pick up or deliver the first passenger. For example, if I had to wait in the airport holding a sign to get my first fare, I was not paid until the fare was loaded with the guest's luggage and leaving the airport; i.e., the time starts on the trip sheet when the driver actually leaves the airport. Pay stops when the

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

driver returns to the airport and he is not paid for the time waiting for the next fare. This is called being paid from Port to Port.

9.     Bell Limousine charged me or required me to pay for: (1) a Nextel radio to communicate with dispatch, (2) airport charter fees ($1/trip – every time the driver leaves the airport regardless of whether the driver picks up a client or not), (3) all the cleaning products for the vehicles, (4) an unclean vehicle ($10 for outside unclean/$10 for inside unclean), (5) car washes, (6) ice and napkins, (7) broken or missing barware (e.g., glassware and decanters), and (8) damage to the vehicle whether the fault of the driver or not. I paid to have my car washed approximately five times per week at $6/wash, because I would otherwise be charged for an unclean vehicle.

10.     I have read the pamphlet entitled "Your Class Action Representative Responsibilities" and have signed an agreement with my counsel to represent the class of all limousine drivers in a class or collective action.

11.     I am ready, willing and able to serve as a class representative and acknowledge that my responsibilities include putting the interests of the class as a whole before my own.

Affiant hereby affirms under penalty of perjury that the foregoing is true and correct.

James Biggs

SUBSCRIBED and SWORN to before me, a Notary Public, this 6th day of August, 2009.

NOTARY PUBLIC

JASMIN WILLIAMS
Notary Public - State of Nevada
Appointment Recorded in Washoe County
No: 07-4593-2 - Expires August 20, 2011

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

# EXHIBIT C

| 4123 | NOSUB | | | | PERIOD END | CHECK NO. |
|------|-------|--|--|--|-----------|-----------|
| EMPLOYEE NO. | DEPARTMENT | | EMPLOYEE NAME | SOCIAL SECURITY NO. | | 06/08238 |

| EARNINGS | HRS/UNITS | CURRENT AMOUNT | YEAR TO DATE | DEDUCTIONS | CURRENT AMOUNT | YEAR TO DATE |
|----------|-----------|----------------|--------------|------------|----------------|--------------|
| Comm Chrtr Limo | 0.000 | 615.63 | 5178.13 | FEDERAL INCOME | 22.45 | 226.91 |
| Airport Gross | 0.000 | 0.00 | 1.00 | FEDERAL MEDICAR | 8.64 | 79.46 |
| EE Neg Advance | 0.000 | 0.00 | 3.00 | FEDERAL SOCIAL | 36.93 | 339.72 |
| Charter Fee | 0.000 | -20.00 | -123.00 | Accident Rcovry | 50.00 | 50.00 |
| Tips-Charged | 0.000 | 109.00 | 1270.00 | Cell Phone | 0.00 | 48.00 |
| Tips-Reported | 0.000 | 0.00 | 423.00 | Emp Adv Payback | 10.00 | 10.00 |
| | | | | | | |
| VACATION BAL | 0.000 | | | | | |
| ILLNESS BAL | 0.000 | | | | | |
| PERSONAL BAL | 0.000 | | | | | |

| 0.00 | 704.63 | 128.02 | 576.61 | 6752.13 | 754.09 | 5575.04 |
|------|--------|--------|--------|---------|--------|---------|
| PAY RATE | CURRENT EARNINGS | CURRENT DEDUCTIONS | NET PAY | Y.T.D. EARNINGS | Y.T.D. DEDUCTIONS | Y.T.D. NET PAY |

Bell Limousine    100 Sunshine Lane    Reno, NV 89502

| 4123 | NOSUB | | Clement, J. | | | 08/16/2008 | | 0013266 |
|---|---|---|---|---|---|---|---|---|
| EMPLOYEE NO. | DEPARTMENT | | EMPLOYEE NAME | | SOCIAL SECURITY NO. | PERIOD END | | CHECK NO. |
| EARNINGS | | HRS/UNITS | CURRENT AMOUNT | YEAR TO DATE | DEDUCTIONS | CURRENT AMOUNT | | YEAR TO DATE |
| Comm Chrtr Limo | | 0.000 | 956.25 | 6134.38 | FEDERAL INCOME | 69.45 | | 296.3 |
| Airport Gross | | 0.000 | 0.00 | 1.00 | FEDERAL MEDICAR | 13.52 | | 92.9 |
| EE Neg Advance | | 0.000 | 0.00 | 3.00 | FEDERAL SOCIAL | 57.80 | | 397.5 |
| Charter Fee | | 0.000 | -24.00 | -147.00 | Accident Recvry | (?) 50.00 | | 100.0 |
| Tips-Charged | | 0.000 | 321.00 | 1591.00 | Cell Phone | 12.00 | | 60.0 |
| Tips-Reported | | 0.000 | 0.00 | 423.00 | Emp Adv Payback | 0.00 | | 10.0 |
| VACATION BAL | | 0.000 | | | | | | |
| ILLNESS BAL | | 0.000 | | | | | | |
| PERSONAL BAL | | —0.000 | | | | | | |

| 0.00 | 1253.25 | 202.77 | 1050.48 | 8005.38 | 956.86 | 6625.52 |
|---|---|---|---|---|---|---|
| PAY RATE | CURRENT EARNINGS | CURRENT DEDUCTIONS | NET PAY | Y.T.D. EARNINGS | Y.T.D. DEDUCTIONS | Y.T.D. NET PAY |

Bell Limousine    100 Sunshine Lane    Reno, NV 89502

| EMPLOYEE NO. 4123 | DEPARTMENT NOSUB | | EMPLOYEE NAME (illegible) | | SOCIAL SECURITY NO. | PERIOD END 08/30/2008 | CHECK NO. 0013299 |
|---|---|---|---|---|---|---|---|

| EARNINGS | HRS/UNITS | CURRENT AMOUNT | YEAR TO DATE | DEDUCTIONS | CURRENT AMOUNT | YEAR TO DATE |
|---|---|---|---|---|---|---|
| Comm Chrtr Limo | 0.000 | 803.75 | 6938.13 | FEDERAL INCOME | 47.48 | 343.84 |
| Airport Gross | 0.000 | 0.00 | 1.00 | FEDERAL MEDICAR | 11.39 | 104.37 |
| EE Neg Advance | 0.000 | 0.00 | 3.00 | FEDERAL SOCIAL | 48.72 | 446.24 |
| Charter Fee | 0.000 | -18.00 | -165.00 | Accident Recvry | 50.00 | 150.00 |
| Tips-Charged | 0.000 | 248.00 | 1839.00 | Cell Phone | 0.00 | 60.00 |
| Tips-Reported | 0.000 | 0.00 | 423.00 | Emp Adv Payback | 0.00 | 10.00 |

| VACATION BAL | 0.000 |
|---|---|
| ILLNESS BAL | 0.000 |
| PERSONAL BAL | 0.000 |

| PAY RATE 0.00 | CURRENT EARNINGS 1033.75 | CURRENT DEDUCTIONS 157.59 | NET PAY 876.16 | Y.T.D. EARNINGS 9039.13 | Y.T.D. DEDUCTIONS 1114.46 | Y.T.D. NET PAY 7501.68 |
|---|---|---|---|---|---|---|

Bell Limousine    100 Sunshine Lane    Reno, NV 89502

| 4123 | | | | | | 11/22/2008 | 0013445 |
| EMPLOYEE NO. | DEPARTMENT | | EMPLOYEE NAME | | SOCIAL SECURITY NO. | PERIOD END | CHECK NO. |

| EARNINGS | HRS/UNITS | CURRENT AMOUNT | YEAR TO DATE | DEDUCTIONS | CURRENT AMOUNT | YEAR TO DATE |
|---|---|---|---|---|---|---|
| Comm Chrtr Limo | 0.000 | 651.25 | 9548.77 | FEDERAL INCOME | 26.71 | 400.64 |
| Airport Gross | 0.000 | 0.00 | 1.00 | FEDERAL MEDICAR | 9.25 | 141.28 |
| EE Neg Advance | 0.000 | 0.00 | 3.00 | FEDERAL SOCIAL | 39.57 | 603.95 |
| Charter Fee | 0.000 | -13.00 | -232.00 | Accident Recvry | (6.50.00) | 400.00 |
| Tips-Charged | 0.000 | 285.50 | 2807.50 | Cell Phone | 12.00 | 96.00 |
| Tips-Reported | 0.000 | 0.00 | 423.00 | Emp Adv Payback | 0.00 | 10.00 |
| VACATION BAL | 0.000 | | | | | |
| ILLNESS BAL | 0.000 | | | | | |
| PERSONAL BAL | 0.000 | | | | | |

| 0.00 | 923.75 | 137.53 | 786.22 | 12551.27 | 1651.84 | 10476.43 |
|---|---|---|---|---|---|---|
| PAY RATE | CURRENT EARNINGS | CURRENT DEDUCTIONS | NET PAY | Y.T.D. EARNINGS | Y.T.D. DEDUCTIONS | Y.T.D. NET PAY |

Bell Limousine    100 Sunshine Lane    Reno, NV 89502

| EMPLOYEE NO. 4123 | NOSUB EMPLOYEE NAME | Clement, J | | SOCIAL SECURITY NO. | PERIOD END 12/06/2008 | CHECK NO. 0013465 |
|---|---|---|---|---|---|---|

| EARNINGS | HRS/UNITS | CURRENT AMOUNT | YEAR TO DATE | DEDUCTIONS | CURRENT AMOUNT | YEAR TO DATE |
|---|---|---|---|---|---|---|
| Comm Chrtr Limo | 0.000 | 407.50 | 9956.27 | FEDERAL INCOME | 2.43 | 403.0 |
| Airport Gross | 0.000 | 0.00 | 1.00 | FEDERAL MEDICAR | 5.73 | 146.9 |
| EE Neg Advance | 0.000 | 0.00 | 3.00 | FEDERAL SOCIAL | 24.52 | 628.4 |
| Charter Fee | 0.000 | -12.00 | -244.00 | Accident Recvry | 50.00 | 450.0 |
| Tips-Charged | 0.000 | 75.50 | 2883.00 | Cell Phone | 0.00 | 96.0 |
| Tips-Reported | 0.000 | 0.00 | 423.00 | Emp Adv Payback | 0.00 | 10.0 |
| | | | | | | |
| VACATION BAL | 0.000 | | | | | |
| ILLNESS BAL | 0.000 | | | | | |
| PERSONAL BAL | 0.000 | | | | | |

| PAY RATE 0.00 | CURRENT EARNINGS 471.00 | CURRENT DEDUCTIONS 82.68 | NET PAY 388.32 | Y.T.D. EARNINGS 13022.27 | Y.T.D. DEDUCTIONS 1734.52 | Y.T.D. NET PAY 10864.75 |
|---|---|---|---|---|---|---|

Bell Limousine    100 Sunshine Lane    Reno, NV 89502

| EMPLOYEE NO. 4123 | DEPARTMENT | EMPLOYEE NAME | | SOCIAL SECURITY NO. | PERIOD END 12/20/2008 | CHECK NO. 0013491 |
|---|---|---|---|---|---|---|
| EARNINGS | HRS/UNITS | CURRENT AMOUNT | YEAR TO DATE | DEDUCTIONS | CURRENT AMOUNT | YEAR TO DATE |
| Comm Chrtr Limo | 0.000 | 590.00 | 10546.27 | FEDERAL INCOME | 19.78 | 422.85 |
| Airport Gross | 0.000 | 0.00 | 1.00 | FEDERAL MEDICAR | 8.25 | 155.23 |
| EE Neg Advance | 0.000 | 24.50 | 27.50 | FEDERAL SOCIAL | 35.28 | 663.75 |
| Charter Fee | 0.000 | -21.00 | -265.00 | Accident Recvry | 50.00 | 500.00 |
| Tips-Charged | 0.000 | 111.00 | 2994.00 | Cell Phone | 12.00 | 108.00 |
| Tips-Reported | 0.000 | 0.00 | 423.00 | Emp Adv Payback | 0.00 | 10.00 |
| | | | | | | |
| VACATION BAL | 0.000 | | | | | |
| ILLNESS BAL | 0.000 | | | | | |
| PERSONAL BAL | 0.000 | | | | | |

| PAY RATE 0.00 | CURRENT EARNINGS 704.50 | CURRENT DEDUCTIONS 125.31 | NET PAY 579.19 | Y.T.D. EARNINGS 13726.77 | Y.T.D. DEDUCTIONS 1859.83 | Y.T.D. NET PAY 11443.94 |
|---|---|---|---|---|---|---|

Bell Limousine    100 Sunshine Lane    Reno, NV 89502

| 4123 | | | | | 07/03/2009 | 0013516 |
| EMPLOYEE NO. | DEPARTMENT | | EMPLOYEE NAME | SOCIAL SECURITY NO. | PERIOD END | CHECK NO. |

| EARNINGS | HRS/UNITS | CURRENT AMOUNT | YEAR TO DATE | DEDUCTIONS | CURRENT AMOUNT | YEAR TO DATE |
|---|---|---|---|---|---|---|
| Comm Chrtr Limo | 0.000 | 860.63 | 860.63 | FEDERAL INCOME | 53.79 | 53.79 |
| Charter Fee | 0.000 | -20.00 | -20.00 | FEDERAL MEDICAR | 12.19 | 12.19 |
| Tips-Charged | 0.000 | 143.00 | 143.00 | FEDERAL SOCIAL | 52.12 | 52.12 |
| | | | | Accident Recvry | 50.00 | 50.00 |
| VACATION BAL | 0.000 | | | | | |
| ILLNESS BAL | 0.000 | | | | | |
| PERSONAL BAL | 0.000 | | | | | |

| 0.00 | 983.63 | 168.10 | 815.53 | 983.63 | 168.10 | 815.53 |
| PAY RATE | CURRENT EARNINGS | CURRENT DEDUCTIONS | NET PAY | Y.T.D. EARNINGS | Y.T.D. DEDUCTIONS | Y.T.D. NET PAY |

Bell Limousine    100 Sunshine Lane   Reno, NV 89502

| 4123 | NOSUB | | | Clement, J. | | | | 01/17/2009 | 0013541 |
| EMPLOYEE NO. | DEPARTMENT | | | EMPLOYEE NAME | | SOCIAL SECURITY NO. | | PERIOD END | CHECK NO. |
| EARNINGS | | HRS/UNITS | CURRENT AMOUNT | YEAR TO DATE | | DEDUCTIONS | | CURRENT AMOUNT | YEAR TO DATE |
| Comm Chrtr Limo | | 0.000 | 278.75 | 1139.38 | | FEDERAL INCOME | | 0.00 | 53.79 |
| Charter Fee | | 0.000 | -8.00 | -28.00 | | FEDERAL MEDICAR | | 3.93 | 16.12 |
| Tips-Charged | | 0.000 | 99.00 | 242.00 | | FEDERAL SOCIAL | | 16.79 | 68.91 |
| | | | | | | Accident Recvry | | 50.00 | 100.00 |
| | | | | | | Cell Phone | | 12.00 | 12.00 |
| VACATION BAL | | 0.000 | | | | | | | |
| ILLNESS BAL | | 0.000 | | | | | | | |
| PERSONAL BAL | | 0.000 | | | | | | | |

| 0.00 | 369.75 | 82.72 | 287.03 | 1353.38 | 250.82 | 1102.56 |
| PAY RATE | CURRENT EARNINGS | CURRENT DEDUCTIONS | NET PAY | Y.T.D. EARNINGS | Y.T.D. DEDUCTIONS | Y.T.D. NET PAY |

Bell Limousine    100 Sunshine Lane    Reno, NV 89502

| 4123 | NOSUB | | Clement, J. | | | 01/31/2009 | 0013563 |
|---|---|---|---|---|---|---|---|
| EMPLOYEE NO. | DEPARTMENT | | EMPLOYEE NAME | | SOCIAL SECURITY NO. | PERIOD END | CHECK NO. |
| EARNINGS | | HRS/UNITS | CURRENT AMOUNT | YEAR TO DATE | DEDUCTIONS | CURRENT AMOUNT | YEAR TO DATE |
| Comm Chrtr Limo | | 0.000 | 500.00 | 1639.38 | FEDERAL INCOME | 9.63 | 63.42 |
| Charter Fee | | 0.000 | -21.00 | -49.00 | FEDERAL MEDICAR | 6.95 | 23.07 |
| Tips-Charged | | 0.000 | 147.00 | 389.00 | FEDERAL SOCIAL | 29.70 | 98.61 |
| | | | | | Accident Recvry | 50.00 | 150.00 |
| | | | | | Books Plc Etc | 10.00 | 40.00 |
| | | | | | Cell Phone | 0.00 | 12.00 |
| VACATION BAL | | 0.000 | | | | | |
| ILLNESS BAL | | 0.000 | | | | | |
| PERSONAL BAL | | 0.000 | | | | | |

| 0.00 | 626.00 | 106.28 | 519.72 | 1979.38 | 357.10 | 1622.28 |
|---|---|---|---|---|---|---|
| PAY RATE | CURRENT EARNINGS | CURRENT DEDUCTIONS | NET PAY | Y.T.D. EARNINGS | Y.T.D. DEDUCTIONS | Y.T.D. NET PAY |

Bell Limousine   100 Sunshine Lane   Reno, NV 89502

| 4123 EMPLOYEE NO. | NOSUB DEPARTMENT | | Clement J EMPLOYEE NAME | | SOCIAL SECURITY NO. | | 02/28/2009 PERIOD END | 0013614 CHECK NO. |
|---|---|---|---|---|---|---|---|---|

| EARNINGS | HRS/UNITS | CURRENT AMOUNT | YEAR TO DATE | DEDUCTIONS | CURRENT AMOUNT | YEAR TODATE |
|---|---|---|---|---|---|---|
| Comm Chrtr Limo | 0.000 | 412.50 | 2595.63 | FEDERAL INCOME | 1.78 | 80.11 |
| Charter Fee | 0.000 | -12.00 | -73.00 | FEDERAL MEDICAR | 5.81 | 36.59 |
| Tips-Charged | 0.000 | 278.00 | 864.00 | FEDERAL SOCIAL | 24.83 | 156.41 |
| | | | | Accident Recovry | 50.00 | 200.00 |
| | | | | Books, Pic, Etc | 0.00 | 10.00 |
| | | | | Cell Phone | 0.00 | 24.00 |
| VACATION BAL | 0.000 | | | | | |
| ILLNESS BAL | 0.000 | | | | | |
| PERSONAL BAL | 0.000 | | | | | |

| 0.00 PAY RATE | 678.50 CURRENT EARNINGS | 82.42 CURRENT DEDUCTIONS | 596.08 NET PAY | 3386.63 Y.T.D. EARNINGS | 507.11 Y.T.D. DEDUCTIONS | 2879.52 Y.T.D. NET PAY |
|---|---|---|---|---|---|---|

Bell Limousine    100 Sunshine Lane    Reno, NV 89502

| EMPLOYEE NO. 4123 | DEPARTMENT | | EMPLOYEE NAME | | SOCIAL SECURITY NO. | PERIOD END 03/14/2008 | CHECK NO. 0013640 |
|---|---|---|---|---|---|---|---|
| **EARNINGS** | HRS/UNITS | CURRENT AMOUNT | YEAR TO DATE | **DEDUCTIONS** | | CURRENT AMOUNT | YEAR TO DATE |
| Comm Chrtr Limo | 0.000 | 573.75 | 3169.38 | FEDERAL INCOME | | 17.71 | 97.82 |
| Charter Fee | 0.000 | -14.00 | -87.00 | FEDERAL MEDICAR | | 8.12 | 44.71 |
| Tips-Charged | 0.000 | 193.00 | 1057.00 | FEDERAL SOCIAL | | 34.70 | 191.11 |
| | | | | Accident Recvry | | 50.00 | 200.00 |
| | | | | Books, Pic, Etc | | 0.00 | 10.00 |
| | | | | Cell Phone | | 12.00 | 36.00 |
| VACATION BAL | 0.000 | | | | | | |
| ILLNESS BAL | 0.000 | | | | | | |
| PERSONAL BAL | 0.000 | | | | | | |

| 0.00 PAY RATE | 752.75 CURRENT EARNINGS | 122.53 CURRENT DEDUCTIONS | 630.22 NET PAY | 4139.38 Y.T.D. EARNINGS | 629.64 Y.T.D. DEDUCTIONS | 3509.74 Y.T.D. NET PAY |
|---|---|---|---|---|---|---|

Bell Limousine     100 Sunshine Lane     Reno, NV 89502

# EXHIBIT D

Save As Alert | More Like This | More Like Selected Text
**1998 DOLWH LEXIS 39**  (Copy w/ Cite)                                    Pages: **3**

Source: Legal > Area of Law - By Topic > Labor & Employment > Find Administrative Materials > Federal >
  **Department of Labor Wage & Hour Opinion Letters**  ⊥
Terms: **date is April 17, 1998**  (Edit Search | Suggest Terms for My Search)

⊬Select for FOCUS™ or Delivery
☐

### 1998 DOLWH LEXIS 39, *

### [NO NUMBER IN ORIGINAL]

### U.S. DEPARTMENT OF LABOR

### 1998 DOLWH LEXIS 39

### **April** 17, 1998

**CORE TERMS:** passenger, taxicab, transportation, exemption, overtime, driver, mobility-limited, transport, trip

**JUDGES:** Daniel F. Sweeney, Office of Enforcement Policy, Fair Labor Standards Team

**OPINION:**

**[*1]**
This is in response to your letter requesting an opinion as to the applicability of Section 13(b)(17) of the Fair Labor Standards Act (FLSA) to your client, [TEXT REDACTED BY THE COURT.] Section 13(b)(17) provides an exemption from the overtime requirements of the FLSA for "any driver employed by an employer engaged in the business of operating taxicabs."

Our initial letter to you indicated that the Department as of early December was in litigation in Phoenix, Arizona, on the same issues for which you have asked for our opinion. I have later learned that the Department had not filed on the case in early December but did in fact file the case on January 30, 1998. (Herman v. American Handicap Taxi/Transport Service, No. Civ. 98-0174-PHX-SMM) Nevertheless, we are now providing a response to your request.

Your client provides passenger transportation services for mobility-limited passengers in portions of Cook and Lake Counties, Illinois, utilizing vehicles capable of transporting disabled individuals and their equipment. Your client's service is initiated through phone requests for transportation of such individuals, either prescheduled or by immediate dispatch of a vehicle.  **[*2]**  The vehicles are radio dispatched to provide door-to-door service and take passengers to the same places that a person would take a taxicab, such as to visit mends and relatives, to go shopping, to go to the doctor, to go out to eat, or to any other such destination the passenger requests. The passengers pay all of the cost of the trip or a part of the cost, with the remainder paid by a third-party agency. The vehicles do not have meters, so the passengers pay a flat rate per trip.

The term "taxicab" is not expressly defined in the FLSA. In interpreting the statute, we must

assume, absent sufficient indication to the contrary, that Congress intended the words in the statute to carry their ordinary, contemporary meaning. Pioneer Investment Services v. Brunswick Associates, 113 S. Ct. 1489 (1993).

While your client's vehicles might be involved in a number of activities associated with taxicab operations, we believe that, overall, your client's vehicles do not service the same transportation needs as taxicabs. The ordinary meaning of that term contemplates vehicles that are offered for hire to the general public on city streets. While it is not **[*3]** necessary that all the transportation be provided to persons who "flag down" the vehicles, that is an important aspect of the common meaning of "taxicab" which your client's vehicles do not possess.

We also note the well-established principle that exemptions under the FLSA are to be construed narrowly, so the drivers of your client's vehicles should not be exempted from overtime unless it is clear that was the intent of Congress. Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960). Under the above facts, we can find no such clear intent. Therefore, it is the opinion of the Division that the drivers of the vehicles used to transport mobility-limited passengers would not qualify for the 13(b)(17) overtime exemption.

Further, in a recent court case brought by the Department against a firm engaged in the operation of van transport services for the sick and elderly, the U.S. District Court, E.D. Wisconsin, ruled that the 13(b)(17) overtime exemption for drivers of taxicab firms could not be utilized by the company. (See Herman v. Brewah Cab. Inc., No. 96-C-499, U.S. District Court, E.D. Wisconsin, February 3, 1998)

This opinion is based **[*4]** exclusively on the facts and circumstances described in your request and is given on the basis of your representation, explicit or implied, that you have provided a full and fair description of all the facts and circumstances which would be pertinent to our consideration of the question presented. Existence of any other factual or historical background not contained in your letter might require a different conclusion than the one expressed herein. This opinion is also provided on the basis that it is not sought on behalf of a client or firm which is under investigation by the Wage and Hour Division, or which is in litigation with respect to, or subject to the terms of any agreement or order applying or requiring compliance with the provisions of the FLSA.

I trust that the above information is responsive to your inquiry.

Sincerely,

## Legal Topics:

For related research and practice materials, see the following legal topics:
Labor & Employment Law > Wage & Hour Laws > Defenses & Exemptions > Transportation Industries

Source: Legal > Area of Law - By Topic > Labor & Employment > Find Administrative Materials > Federal > Department of Labor Wage & Hour Opinion Letters ⓘ
Terms: date is April 17, 1998  (Edit Search | Suggest Terms for My Search)

# EXHIBIT E

(1) Coal being shipped to an out-of-State buyer is hauled to a tipple where, in a continuous operation, it is unloaded from the truck and cleaned, crushed, or graded and loaded directly into railroad cars for shipment out-of-State; or

(2) Household goods are transported by truck from a home to a warehouse to be crated or packed so that the movement by motor vehicle to the intended out-of-State destination may be continued.

## 24c03  Vending machine servicemen.

Vending machine servicemen who transport products between a warehouse and points within the same State, where such products have been procured from other States for stocking vending machines, are engaged in the transportation of property in interstate commerce until placed in the vending machines (see FOH llv00). Thus, no assertion will be made that Sec 13(b)(1) does not apply in such situations.

## 24c04  Drivers of buses/shuttle services/limousines operating to and from transportation terminals.

Drivers of buses/shuttle services/limousines carrying interstate passengers and their baggage to and from transportation terminals within a single state are not engaged in interstate transportation of passengers and property within the meaning of the Motor Carrier Act, unless the transportation is part of a through-ticketing or other common arrangement between the motor carrier and the air carrier. Therefore, Sec 13(b)(1) will not apply except in the case of a through-ticketing or other common arrangement for continuous passage or interchange between the motor carrier and the air carrier.

An example would be where there is a through-ticketing arrangement under which passengers purchase a single ticket which is good for both the local bus ride and the prior or subsequent interstate journey · by air, rail, or bus.

## 24c05  Transportation of consumable goods (fuel, food, supplies) to railroads, docks, and airports.

Under the Motor Carrier Act, the movement of "consumable goods," such as food and drink, ice, coal, and gasoline (see IB 782.8(a)), terminates upon delivery to railroads, ship docks, airports, or other similar points. Thus, such transportation is not in interstate or foreign commerce so as to be within the jurisdiction of the DOT except where the transportation is an integral part of a single movement which commenced outside the State in which delivery is made.

## 24c06  Combination interstate and intrastate transportation.

(a) If it is known that some portion of a particular load is moving in interstate commerce, whether or not this is an identifiable portion of the load, the trip will be viewed as an interstate trip and therefore subject to the jurisdiction of the DOT.

(b) If a driver employed by a manufacturer makes a trip by motor vehicle from the plant to a railhead or other transportation terminal to pick up or deliver goods moving in interstate commerce, the transportation is subject to the jurisdiction of the DOT regardless of the fact that the employee may make stops along the way in connection with production activities.

Case 2:08-cv-01792-JAD-NJK Document 44 Filed 08/10/09 Page 41 of 47

24h     TAXICABS-SEC 13(b)(17)

24h00    General. Sec 13(b)(17) provides an OT exemption as follows: "any driver employed by an employer engaged in the business of operating taxicabs".

24h01    "Business of operating taxicabs". The taxicab business consists normally of common carrier transportation in small motor vehicles of persons and such property as they may carry with them to any requested destination in the community. The business operates without fixed routes or contracts for recurrent transportation. It serves the miscellaneous and predominantly local transportation needs of the community. It may include such occasional and unscheduled trips to or from transportation terminals as the individual passengers may request, and may include stands at the transportation terminals as well as at other places where numerous demands for taxicab transportation may be expected.

24h02    Exemption limited to drivers. The OT exemption contained in Sec 13(b)(17) applies to "any driver" employed by an employer engaged in the business of operating taxicabs. The exemption is thus limited to drivers only. (For discussion of nonexempt work, see FOH 24h03.)

24h03    Examples of nonexempt work. (a) Examples of nonexempt work by "any driver" for purposes of Sec 13(b)(17) are:

        (1) Acting as a dispatcher.

        (2) Performing general clerical duties (making reports in connection with his own driving operations is within the exemption).

        (3) Performing general mechanical or repair services on vehicles (cleaning, washing, or making incidental minor repairs on the vehicle assigned to him as a driver are within the exemption.)

        (4) Performing work, including driving, in connection with other business operations of the employer (i.e., not his taxicab operations), such as operation of an airport limousine service (see FOH 24c04), a pick-up and delivery service, or a moving and storage service.

24h04    Tolerance for nonexempt work. In applying Sec 13(b)(17) the exemption shall be deemed applicable even though some nonexempt work is performed by the employee during the workweek, unless the amount of such nonexempt work is substantial. The amount of nonexempt work will be considered substantial if it occupies more than 20% of the time worked by the employee during the workweek. (See IB 786.200.)

24h05    Possible application the Sec 13(b)(1) exemption. If for any reason, taxicab drivers are not exempt from the OT requirements of the Act under Sec 13(b)(17), the possible application of Sec 13(b)(1) should not be overlooked. (See FOH 24c04 and 24e).

# EXHIBIT F

Mark R. Thierman, NV#8285 CAL#72913
**THIERMAN LAW FIRM, P.C.**
7287 Lakeside Drive
Reno, Nevada  89511
Tel: (775) 284-1500
Fax: (775) 703-5027

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

ANTHONY LUCAS, GREGORY H.
CASTELLO, LILLIAN MELTON, LEAVON
R. SMITH, ROBERT A. GREENE, JAMES
A. BIGGS, LARRY DUTCHER, WILLIAM
C. SACK, DONALD A. SPEARCE,
MERRILL L. CLAIR, BRADLEY J.
EDWARDS, and LISA MEDFORD on
behalf of themselves and all others similarly
situated,

                    Plaintiffs,

          v.

BELL TRANS, a Nevada corporation;
BELL LIMO, a Nevada corporation; and
WHITTLESEA-BELL CORPORATION,
and Does 1-50, Inclusive

                    Defendants.

Case No. 2:08-CV-01792-RCJ-RJJ

## NOTICE OF PENDENCY OF COLLECTIVE ACTION LAWSUIT UNDER THE FAIR LABOR STANDARDS ACT

TO:  All current and former employees of Bell Trans, Bell Limousine, and/or Whittlesea-Bell Corporation who worked for the defendants within the last three years as **limousine drivers**, excluding all persons employed by defendant as drivers of taxicabs, and excluding all

persons whom the Secretary of Transportation has the power to establish qualifications and maximum hours of service pursuant to the provisions of Section 204 of the Motor Carrier Act of 1935 (such as employees who regularly transport passengers interstate or to the airport on a "through ticket" interstate or who require, as a matter of law, a CDL (commercial Drivers license) or equivalent in order to perform their duties).

RE: Fair Labor Standards Act lawsuit filed against Bell Trans, Bell Limousine, and/or Whittlesea-Bell Corporation.

## INTRODUCTION

The purpose of this notice is to:

1)   Inform you of the existence of a lawsuit in which you may be "similarly situated" to the named plaintiffs;

2)   advise you of how your rights may be affected by this lawsuit; and

3)   instruct you on the procedure for participating in this lawsuit, if you choose to do so.

This Notice is not an expression by the court of any opinion as to the merits of any claims or defenses asserted by any party to this action.

## DESCRIPTION OF THE LAWSUIT

On December 12, 2008, Anthony Lucas, Gregory H. Castello, Lillian Melton, Leavon R. Smith, and Robert A. Greene, on behalf of themselves and all others similarly situated, filed a class and collective action against Bell Trans for minimum wage and overtime violations under the Fair Labor Standards Act, 29 U.S.C. §§ 201, et. seq.  On July 10, 2009, the plaintiffs filed a First Amended Class and Collective Complaint, adding James A. Biggs, Larry Dutcher, William C. Sack, Donald A. Spearce, Merrill L. Clair, Bradley J. Edwards, and Lisa Medford as named plaintiffs and Bell Limousine and Whittlesea-Bell Corporation as defendants (hereinafter defendants Bell Trans, Bell Limousine, and Whittlesea-Bell Corporation are collectively referred to as, "Bell"). Specifically, the plaintiffs claim they are owed overtime pay, or time and one-half, for all hours they worked over forty (40) hours per week and/or for unpaid minimum wages. The plaintiffs seek backpay and liquidated damages (double' damages) in an amount equal to the alleged unpaid wages. Bell denies the plaintiffs' claims and denies they are liable to the plaintiffs for any backpay or damages.

## COMPOSITION OF THE CLASS

The named plaintiffs seek to sue on behalf of themselves and also on behalf of other employees with whom they are similarly situated.  Specifically, the plaintiffs seek to sue on behalf of any and all limousine drivers who worked at Bell at any time within the last three years.

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

The employees must have worked in a position in which they:

1) worked primarily or exclusively as limousine drivers and not as taxicab drivers, and

2) worked at a location in Nevada operated by Bell.

The employees must be employees:

1) over whom the Secretary of Transportation does not have the power to establish qualifications and maximum hours of service pursuant to the provisions of Section 204 of the Motor Carrier Act of 1935 (such as employees who regularly transport passengers interstate or to the airport on a "through ticket" interstate or who require, as a matter of law, a CDL (commercial Drivers license) or equivalent in order to perform their duties); and

2) who did not receive overtime pay (time and one-half) for any hours worked over forty (40) hours per week, or did not receive at least $5.15/hour at any time within the last three years.

## YOUR RIGHT TO PARTICIPATE IN THIS LAWSUIT

If you fit the definition above, you may join this case by mailing the enclosed "Consent to Join" form to the plaintiffs' counsel at the following address:

> Mark Thierman, Esq.
> Thierman Law Firm
> 7287 Lakeside Drive
> Reno, NV  89511

If you want to join this lawsuit, you must send the form to Mark Thierman so he has time to file it with the Federal Court on or before [date _____, which is _____ days after the plaintiffs' counsel receives names and last known addresses of all putative class members]. If you do not return the "Consent to Join" form in time for it to be filed with the Federal Court, you may not be able to participate in the Fair Labor Standards Act portion of this lawsuit.

## EFFECT OF JOINING THIS SUIT

If you choose to join this case, you will be bound by the decision of the court, whether it is favorable or unfavorable.

The attorney for the class plaintiffs is being paid on a contingency fee basis, which means that if there is no recovery there will be no attorney's fee. If the plaintiffs prevail in this litigation, the attorney for the class will request that the court either determine or approve the amount of attorney's fees and costs he is entitled to receive for his services.

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

If you sign and return the "Consent to Join" form you are agreeing to:

1) designate the plaintiffs as your agent to make decisions on your behalf concerning this lawsuit;

2) the method and manner of conducting this lawsuit;

3) enter into an agreement with the plaintiffs' counsel concerning attorney's fees and costs; and

4) all other matters pertaining to this lawsuit.

These decisions and agreements made and entered into by the representative plaintiffs will be binding on you if you join this lawsuit. However, the court has retained jurisdiction to determine the reasonableness of any settlement with the defendants, and any agreement concerning the reasonableness of any attorney's fees and costs that are to be paid to the plaintiffs' counsel.

## LEGAL EFFECT IN NOT JOINING THIS SUIT

You do not have to join this lawsuit. If you do not wish to participate in this lawsuit, then do nothing. If you choose not to join this lawsuit, you will not be affected by any judgment, dismissal, or settlement rendered in this lawsuit, whether favorable or unfavorable to the class. This means if the plaintiffs win you will not collect any money from the Fair Labor Standards Act portion of this lawsuit, and if the plaintiffs lose, you will not lose any claims you may or may not have under the Fair Labor Standards Act. If you choose not to join this lawsuit, you are free to file your own lawsuit under the Fair Labor Standards Act.

## STATUTE OF LIMITATIONS ON POTENTIAL CLAIMS

The maximum period of time that you can collect unpaid wages under the Fair Labor Standards Act is three (3) years from when you worked the hours, but were not paid at least minimum wage, or not paid time and one-half. The statute of limitations continues to expire until you file with the court a written consent to join this lawsuit, or initiate your own lawsuit to collect your unpaid wages.

## NO RETALIATION PERMITTED

Federal Law prohibits Bell Trans, Bell Limousine, and/or Whittlesea-Bell Corporation from discharging you or in any other manner discriminating against you if you exercise your rights under the Fair Labor Standards Act to seek compensation.

## YOUR IMMIGRATION STATUS DOES NOT MATTER IN THIS CASE

You are entitled to be paid overtime wages and minimum wages under the Fair Labor Standards Act, even if you are not otherwise legally entitled to work in the United States. Bringing a claim in the court for unpaid overtime wages is not a basis for you to be deported from the United States.

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

## YOUR LEGAL REPRESENTATION IF YOU JOIN

If you choose to join this lawsuit and agree to be represented by the named plaintiffs through their attorney, your counsel in this action will be:

Mark Thierman, Esq.
Thierman Law Firm
7287 Lakeside Drive
Reno, NV  89511

## FURTHER INFORMATION

Further information about this Notice, the deadline for filing a "Consent to Join" form, or questions about this lawsuit may be obtained by contacting:

Mark Thierman, Esq.
Thierman Law Firm
7287 Lakeside Drive
Reno, NV  89511

The court has taken no position in this case regarding the merits of the plaintiffs' claims or of the defendants' defenses.

## DO NOT CONTACT THE CLERK OF THE COURT

_____
**UNITED STATES DISTRICT COURT JUDGE**

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net