Norman H. Kirshman, Esq.
State Bar Number: 2733
3800 Howard Hughes Parkway, Ste. 500
Las Vegas, NV 89169
Telephone: (702) 699-5917
Facsimile: (702) 369-5497

Mark E. Trafton, Esq.
State Bar Number 6525
1900 Industrial Road
Las Vegas, NV 89102
Telephone: (702) 385-1813
Facsimile: (702) 382-9633
Attorneys for Defendant

## U.S. DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ANTHONY LUCAS, GREGORY H. CASTELLO, LILLIAN MELTON, LEAVON R. SMITH, ROBERT A. GREENE, JAMES A. BIGGS, LARRY DUTCHER, WILLIAM C. SACK, DONALD A SPEARCE, MERRILL L. CLAIR, BRADLEY J. EDWARDS, and LISA MEDFORD on behalf of themselves and all others similarly situated,<br><br>Plaintiff(s)<br><br>vs.<br><br>BELL TRANS, a Nevada Corporation; BELL LIMO, a Nevada corporation; and WHITTLESEA-BELL CORPORATION, and Does 1-50, inclusive,<br><br>Defendant(s) | CASE NO.   2:08-CV-01792-RCJ-RJJ<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR CIRCULATION OF NOTICE OF THE PENDENCY OF THIS ACTION PURSUANT TO 29 U.S.C. 261(B) AND OTHER RELIEF WITH MEMORANDUM IN SUPPORT THEREOF** |

### I.   INTRODUCTION

Plaintiffs' Motion for Circulation is premature and should be denied, since the number of eligible "opt in" drivers will be very minimal - much less than Plaintiffs now realize, and ultimately, the minimal number of eligible drivers will not justify a collective action. This is so

because many, if not all, of the drivers Plaintiffs now contend are eligible to opt in, have always been, and continue to be, exempt from the FLSA's overtime requirements. The vast majority of Bell Trans' drivers have always driven vehicles weighing over 10,000 pounds and drive passengers on "through tickets" or drive passengers outside of Nevada.

The "class" Plaintiffs define excludes "all limousine drivers employed by Defendant[s] who didn't drive interstate and who didn't drive local passengers on 'through tickets' where the ultimate destination for the passenger was out of state." That definition of "through tickets", however, is incomplete. The "through ticket" more likely originates outside the state of Nevada, with Nevada as the destination; or originates in Nevada, with another state or foreign country as the destination; or be a round trip "ticket." The critical element is the driver's role in transporting the passenger in interstate or foreign commerce, either directly or by virtue of a "through ticket."[1]

## II. MEMORANDUM OF POINTS AND AUTHORITIES

### A. Defendants' Interstate Services - Limousines / Buses Are Exempt From Overtime Pay Requirements

The Declaration of Brent Bell, Exhibit A,[2] to this Response, states that including the period from August 10, 2005 to June 6, 2008, no less than sixty-nine percent (69%) of Defendants' drivers operated limousines; and buses weighing more than ten thousand (10,000) pounds, transporting passengers in interstate commerce, utilizing "through ticket" travel documents and charters.

---

[1] For example, from Nevada to a Native American or federal destination, i.e. golf course, casino or military base; or another state. Some "through tickets" may be one way. Others may be round trip.

[2] Should Defendants move for summary judgment later in this proceeding, admissible evidence will be provided to support Exhibit A.

- 2 -

Accordingly, in view of the substantial percentage of Defendants' drivers engaged in interstate commerce, they are all exempt from FLSA overtime pay requirements. (49 U.S.C. §31502; 29 U.S.C. §207).  See <u>Tews v. Renzenberger</u>, 392 F.Supp.2d 1331 (D.C. Kansas, 2009), for a well reasoned analysis of the Motor Carrier Act Exemption as applied in the context of the August 10, 2005 SAFETEA-LV narrowing of the exemption to apply only to "commercial motor vehicles weighing "at least 10,001 pounds," and the June 6, 2008 amendment which deleted the "at least 10,001 pounds" requirement and reverted to the pre-August 10, 2005 criteria.

All drivers employed during that time frame and thereafter were required to have Commercial Drivers Licenses ("CDL"), a prerequisite to driving Defendants' buses.

Defendants believe circulation of notice of an "opt in" collective class of limousine drivers is premature in that the number of persons who are eligible for overtime may not justify more than a simple joinder. (Fed.R.Civ.P. 20)

Further, Plaintiffs' declared intention to attempt to persuade this Court that a Rule 23 "opt out" class action is appropriate for litigation of claims asserted under Nevada law, ignores the novel issues and complexities addressed during proceedings initiated and resolved in respect to Defendant Bell Trans Motion to Dismiss the initial Complaint (Order, entered June 24, 2009). Defendants will revisit the novelty and complexities in the Points and Authorities that follow.

   B. <u>The State Law Claims - Minimum Wage / Overtime</u>

Plaintiffs concede the Motor Carrier Act provides an exemption from required overtime payments under 29 U.S.C. §207 for drivers of limousines who satisfy the interstate commerce test. However, Plaintiffs persist in their efforts to claim overtime and minimum wages, notwithstanding the Order issued by this Court on June 24, 2009 (Order, p. 9:12-15). That Order states:

> "In sum this Court <u>cannot conclude</u> that there is no other reasonable construction of the [Constitutional] amendment than that it repealed NRS 608.250 . . . Because the NWHL expressly states it does not apply to taxicab and limousine drivers, the limousine Plaintiffs cannot sue for violation of unpaid minimum wages. NRS 608.250(e)." (Emphasis added)

> "For the reasons explained in connection with Nevada minimum wages, the Court hold[s] that the exceptions found in NRS 608.250 relied upon in NRS 608.018, are still in force notwithstanding the Amendment. Because the Limousine Plaintiffs fall within the express exceptions for Nevada's overtime compensation statute, they cannot bring a claim for unpaid overtime under Nevada law." (Id. p. 14:5-9)

C. The Nevada Claims Implicate 28 U.S.C. §1367

Defendants acknowledge this Court's jurisdiction over the FLSA claims, which includes the power to enforce the overtime exemptions under the Motor Carrier Act (Id..). The exercise of supplemental jurisdiction over the Nevada claims, however, requires in depth analysis.

    1) Supplemental jurisdiction is addressed in reasonable detail by 28 U.S.C. §1367. Where state claims "are so related to claims in the action within such original jurisdiction that they form a part of the same case or controversy under Article III of the United States Constitution," assertion of jurisdiction by the federal court is favored. (Id. (a)). On the other hand, "(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if

> "(1) the claim raises a novel or complex issue of state law, . . . [or] (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

In <u>Ansoumana v. Greslede's Operating Corp.</u>, 201 F.R.D. 81 (S.D. N.Y., 2001), Plaintiffs sued under the FLSA for unpaid minimum wages, overtime; and state claims

under the New York Minimum Wage Act; and injunctive relief. Plaintiffs sought certification of the federal claims as a "collective action"; and Federal Rule 23 class certification with respect to their New York minimum wage claims. Following a detailed and reasoned analysis, the Court found the combining of the Collective Action in the same case with the Rule 23 Class Action would be manageable, because of the commonality of the claims and claimants.

Nevertheless, <u>Ansoumana</u>, <u>id.</u> highlights reasons why exercise by this Court of supplemental jurisdiction should be declined.

D.  The Nevada Claims Raise Both <u>Novel And Complex Issues</u>

1)  The Nevada Supreme Court and this Court have held there is no right to a private <u>civil</u> action to collect minimum wages or overtime required by Nevada law. The exclusive forum is the Nevada Labor Commissioner. <u>Baldonado et al v. Wynn Las Vegas, LLC</u>, 194 P.3d 96 (2008).

2)  Limousine drivers are exempt by Nevada statutes from minimum wage and overtime requirements. NRS 608.018 and 608.250.

3)  Given Nevada law which has blanket exemptions for limousine drivers from minimum wage and overtime requirements, and federal law, the Motor Carrier Act, id., which exempts drivers of "motor carriers" in interstate commerce, from FLSA required overtime, the only basis for Plaintiffs' claims is FLSA minimum wage requirements, which permit tips to be included in computing minimum wage.[3] 29 U.S.C. §203(m).

---

[3] In view of the Motor Carrier Act and Nevada's exemptions from overtime, plus 29 U.S.C. §203 permitting tips to be credited to the employer in calculating minimum wage requirements, it is unlikely Plaintiffs' claims limited to those who consent ("opt in"), will be numerous enough to warrant a "collective action."

- 5 -

  E. <u>Plaintiffs' Request That The Statute of Limitations Be Tolled Should Be Denied</u>

"Equitable tolling, is to be invoked only in rare circumstances." (Citations omitted).

"Equitable tolling is to be invoked only in rare circumstances."

"Equitable tolling, if available at all, is the exception rather than the rule . . ."

"The Plaintiffs have not alleged any extraordinary circumstances . . . nor have they pointed to any wrongdoing by the Defendants that would justify a tolling order."

See, Groshek v. Babcock and Wilcox, 425 F.Supp, 232 (1977); Vistamar v. Fagundo-Fagundo, 430 F.3d 66 (1st Cir. 2005)

  F. <u>A Rule 23 Class Action Is Not Compatible With An FLSA Collective Action</u>

See DeAsencio v. Tyson Foods, Inc., 342 F.3d 302, 306 (3d Cir. 2003)("Courts have generally recognized that Rule 23 class actions may not be used under FLSA §16(b)."

## III. CONCLUSION

In view of the Motor Carrier Act, exemption from federal overtime pay requirements, which clearly apply to Defendants' interstate transportation services, Plaintiff drivers have no viable claims under federal law for alleged overtime wage violations.

Similarly, Plaintiffs cannot proceed under Nevada law or under the FLSA as a Rule 23 class, because Nevada's overtime requirements do not apply to limousine drivers. Hence, Plaintiffs must look to the FLSA for relief, but will look in vain. What may be left, which Defendants do not concede, is an FLSA minimum wage claim which requires each claimant to file a written consent, "opt in," and credit Defendants with tips toward the minimum wage.

//

//

1 In view of the foregoing, Plaintiffs' Motion and requests set forth therein should be denied.

DATED: August 28, 2009

Respectfully submitted,

*Norman H. Kirshman*

Norman H. Kirshman
3800 Howard Hughes Parkway, Ste 500
Las Vegas, NV 89169

Mark E. Trafton, Esq.
1900 Industrial Road
Las Vegas, NV 89102

## CERTIFICATE OF MAILING

I hereby certify that on the 28th day of August, 2009, I served a true and correct copy of **"DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR CIRCULATION OF NOTICE OF THE PENDENCY OF THIS ACTION PURSUANT TO 29 U.S.C. 261(B) AND OTHER RELIEF WITH MEMORANDUM IN SUPPORT THEREOF"** by:

 X serving the following parties electronically through CM/ECF as set forth below;

 ___ faxing a copy to the numbers below;

 ___ depositing a copy in the United States mail, first class postage fully prepaid to the persons and addresses listed below:

Mark R. Thierman
Thierman Law Firm, P.C.
7287 Lakeside Drive
Reno, Nevada 89511
laborlawyer@pacbell.net

/s/ Lynn A. Vlahos
An Employee of Norman H. Kirshman, P.C.

# BELL DECLARATION EXHIBIT "A"

1  Norman H. Kirshman, Esq.
   State Bar Number 2733
2  3800 Howard Hughes Parkway, Suite 500
   Las Vegas, Nevada 89169
3  Telephone: (702) 699-5917
   Facsimile: (702) 369-5497
4
   Mark E. Trafton, Esq.
5  Nevada State Bar No. 6525
   1900 Industrial Road
6  Las Vegas, Nevada 89102
   Telephone: (702) 385-1813
7  Facsimile: (702) 382-9633

8  Attorney for Defendants

9
                    U.S. DISTRICT COURT
10
                    DISTRICT OF NEVADA
11

12
   ANTHONY LUCAS, GREGORY H.              )    CASE NO. 2:08-CV-01792-RCJ-RJJ
13 CASTELLO, LILLIAN MELTON, LEAVON       )
   R. SMITH, ROBERT A. GREENE, JAMES      )
14 A. BIGGS, LARRY DUTCHER, WILLIAM       )
   C. SACK, DONALD A. SPEARCE, MERRILL L. )
15 CLAIR, BRADLEY J. EDWARDS, and LISA    )
   MEDFORD on behalf of themselves and all others )
16 similarly situated,                    )    **DECLARATION OF**
                                          )    **BRENT BELL**
17                Plaintiffs,             )
                                          )
18 vs.                                    )
                                          )
19 BELL TRANS, a Nevada Corporation; BELL )
   LIMO, a Nevada Corporation; and WHITTLESEA- )
20 BELL CORPORATION, and Does 1-50, inclusive, )
                                          )
21                Defendants.             )
                                          )
22

23        I, Brent Bell, hereby declare and state:

24        1.      I currently serve as the President of Bell Trans, and have served as President since

25 2002. From 1997 to 2002 I served as Chief Operating Officer of Bell Trans. From 1993 to 1997 I

26 served as Operations Manager of Bell Trans. During my tenure since 1993, I have taken an active,

27 hands on role in establishing policies and practices for Bell Trans drivers.

28 ///

2. Bell Trans is a Nevada transportation company that provides transportation to the riding public via buses and limousines.

3. Bell Limo is a sister company to Bell Trans that is located in Reno, and only operates approximately 18 limousines.

4. Beginning in August of 2005 and continuing through the present day, Bell Trans owns and operates approximately 225 limousines, and approximately 120 buses.

5. When I took over as Operations Manager in 1993, I immediately realized we did not have a sufficient number of drivers who were qualified to drive Bell Trans buses since to drive one of our buses you must have a commercial driver's license ("CDL").

6. Therefore, I immediately instituted a policy whereby all newly hired drivers must possess a CDL. Ultimately, this gave me the flexibility to assign any driver to a bus or limousine - whatever was needed.

7. I now understand that for purposes of this lawsuit that the time period between August 10, 2005 and June 6, 2008 is a critical time period, hereinafter "the relevant time period," and that certain information during the relevant time period is of particular importance. Below I will present facts concerning Bell Trans, its vehicles, and its drivers

8. During the relevant time period each of Bell Trans' limousines weighed less than 10,000 pounds, and in fact they still do today.

9. During the relevant time period each of Bell Trans' buses weighs more than 10,000 pounds, and in fact they still do today.

10. During the relevant time period, Bell Trans employed a total of 1,319 drivers.

11. During the relevant time period, at least 98% of Bell Trans' drivers possessed a CDL; and could and did drive limousines or buses, as needed.

12. During the relevant time period, at least 69% of Bell Trans' drivers routinely drove buses as part of their responsibilities, and in particular, transported passengers that were part of a "through ticket" - either to or from the airport.

13. In preparation for this Declaration, I personally reviewed the following documents comprised of tripsheet data used to generate payroll from August 10, 2005 to June 6, 2008. I

1  discussed the information set forth in this Declaration with Paul Balderelli, Controller, and am
2  satisfied the information is accurate.
3       I declare under the penalty of perjury under the laws of the State of Nevada that the foregoing
4  declaration is true and correct, and if called upon to testify, would do so.
5       Dated this 28th day of August, 2009.

_____
BRENT BELL