# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | | |
|---|---|---|
| ANTHONY LUCAS, et al., | ) | Case No.: 2:08-cv-01792-GMN-RJJ |
| | ) | |
| Plaintiffs, | ) | **ORDER** |
| vs. | ) | |
| | ) | |
| BELL TRANS, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This lawsuit is a class and collective action for unpaid wages and overtime compensation brought on behalf of current and former limousine drivers who have worked for Defendants Bell Trans, Bell Limo and Whittlesea-Bell Corporation.  Pending before the court are Defendants' Motion for Summary Judgment on the remaining state law claims (ECF No. 129); Plaintiffs' Cross-Motion for Summary Judgment on the remaining state law claims (ECF No. 142); Defendants' Supplemental Motion for Summary Judgment on the remaining state law claims (ECF No. 170); Plaintiffs' Motion to Reconsider Magistrate Judge's Order re: ECF No. 189 (ECF No. 195); Plaintiffs' Motion for Leave to File Second Amended Complaint (ECF No. 139); and Defendants' Counter-Motion to Strike Plaintiffs' Motion for Leave to File Second Amended Complaint (ECF No. 157).

The court will grant Defendants' Motion for Summary Judgment on the remaining state law claims (ECF No. 129).  The court will deny the remaining motions.

## I.      BACKGROUND

This lawsuit was filed in December 2008, claiming violations of state and federal minimum wage, overtime and other wage requirements. (ECF No. 1.)  The case was originally assigned to Judge Robert C. Jones and reassigned to Judge Gloria M. Navarro in May 2010.

(ECF No. 89.)

Defendants filed a Motion to Dismiss (ECF No. 4) in January 2009, and Plaintiffs filed a Motion to Amend/Correct Complaint (ECF No. 9) in March 2009.  In June 2009, the court granted the Motion to Dismiss as to claims for compensation under NRS 608.100 and for unpaid overtime, holding that Nevada law does not provide for a private right of action for the dismissed claims. (Order, June 24, 2009, ECF No. 27.)  The court also granted the Motion to Amend/Correct Complaint, noting that Plaintiffs were nevertheless within their rights to amend as a matter of course, without the court's leave. (*Id.*)  At this point, Plaintiffs' remaining claims from the original Complaint were: First Cause of Action – unpaid wages under NRS 608.016 and the FLSA 29 U.S.C. § 206; Second Cause of Action – overtime wages under the FLSA 29 U.S.C. § 207(a)(1); Third Cause of Action – liquidated damages under the FLSA 29 U.S.C. § 216(b); Fourth Cause of Action – waiting penalties under NRS 608.040; and Fifth Cause of Action – none. (*Id.*)

Plaintiffs filed a First Amended Complaint in July 2009 that included claims previously dismissed by the court. (ECF No. 36.)  Defendants filed an Answer to Plaintiffs' First Amended Complaint in September 2009. (ECF No. 46.)

In June 2009, before Plaintiffs had filed their First Amended Complaint, Plaintiffs filed a Motion to Amend and Certify Order for Interlocutory Review Or, in the Alternative, Motion to Certify a Question to the Nevada Supreme Court (ECF No. 30), which was denied by the court in October 2009 (Order, Oct. 14, 2009, ECF No. 58.)  Plaintiffs then filed an appeal of the denial with the Ninth Circuit Court of Appeals (ECF No. 63) in November 2009, which was dismissed in January 2010 (ECF Nos. 73, 75).

Plaintiffs filed a Rule 23 Motion to Certify Class (ECF No. 53) in September 2009, which

/ / /

/ / /

1  was granted by the court in December 2009 (Order Dec. 1, 2009, ECF No. 69).[1]

2  Defendants filed a Motion for Summary Judgment Dismissing Plaintiffs' FLSA Overtime

3  Claims (ECF No. 80) in March 2010, but withdrew the motion in April 2010 (ECF No. 87).

4  Defendants filed a Supplemental Motion for Summary Judgment Dismissing Plaintiffs' FLSA

5  Overtime Claims (ECF No. 90) in June 2010.  Defendants also filed a Motion for Summary

6  Judgment as to Plaintiffs' State Law-Based Claims for Relief (ECF No. 92) in June 2010, to

7  which Plaintiffs filed a Motion to Strike for untimeliness (ECF No. 97) in July 2010.  In February

8  2011, the court denied Defendants' Supplemental Motion for Summary Judgment Dismissing

9  Plaintiffs' FLSA Overtime Claims (ECF No. 90), and granted Plaintiffs' Motion to Strike (ECF

10  No. 97) Defendants' untimely filed Motion for Summary Judgment as to Plaintiffs' State Law-

11  Based Claims for Relief (ECF No. 92). (Order, Feb. 25, 2011, ECF No. 127.)

12  Plaintiffs filed a Motion for Circulation of Notice of the Pendency of This Action Pursuant

13  to 29 U.S.C. § 261(b) and Other Relief (ECF No. 44), which was granted by the magistrate judge

14  in September 2010 with accompanying directions to counsel (MJ Order, Sept. 30, 2010, ECF No.

15  112).  Specifically, the magistrate judge ordered that "the parties shall meet and confer in a good

---

[1] In that Order, the court commented in a footnote:

On the other hand, commissions may indeed be used to satisfy the minimum wage on a pay-period basis. Nev. Admin. Code § 608.120(3). Defendants argue this but do not cite to this provision of the Code. It is not clear how this should apply to the present case. If limousine drivers are required to perform certain duties for no compensation, this appears to violate the text of NRS § 608.016. The Code permits commissions to be used to satisfy the minimum wage on a pay-period basis, *see* § 608.120(3), but it says nothing about commissions ameliorating what would otherwise be violations of NRS § 608.016, which requires some pay for all hours worked. The Nevada Supreme Court has not addressed the question. It has only mentioned § 608.016 in two cases, neither of which is helpful here.

Furthermore, it is not clear from the pleadings whether commissions comprised the entirety of Plaintiffs' compensation from Defendants, or if such commissions were added to a base wage. The nature of this relationship will be important in determining whether § 608.016 applies at all, because in the former case, the relationship will be more like that between independent contractors, whereas in the latter case, it will be more like that between employer and employee. Defendants imply the former, but they do not state it directly. Plaintiffs also imply the former in the AC when they claim "Defendants paid their limousine drivers a percentage of the amount of the fare, . . . . Defendants did not pay their limousine drivers hourly . . . ." (#36 ¶¶ 39–40). If true, and Plaintiffs are essentially independent contractors, then NRS §§ 608.016 and 608.040 might not apply to them at all. But this is an issue unrelated to the pure question of certification under Rule 23.

(Order, Dec. 1, 2009, 9-10 n.1, ECF No. 69.)

faith effort to arrive at a mutually acceptable form of notice, and shall submit a stipulation and proposed form of order no later than October 11, 2010 in the event they are able to agree." (*Id.*) The parties were also ordered that, "[i]n the event they are unable to agree, counsel shall have until October 11, 2010 in which to submit a joint report identifying the portions of the notice on which they are unable to agree, and their competing proposals with respect to any portions of the notice on which they are unable to agree." (*Id.*)  After two stipulations extending the deadlines, the second of which was ineffective,[2] Plaintiffs and Defendants each filed separate Proposed Notices on October 25, 2010. (ECF Nos. 113, 114, 116, 119, 120.)  Defendants filed a Motion for District Judge to Reconsider Order (ECF No. 117) in October 2010, which was denied by the court in May 2011 (Order, May 19, 2011, ECF No. 145).

In June 2011, Defendants filed a Motion for Protective Order, Compel and Sanctions (ECF No. 164) alleging that Plaintiffs mailed an unauthorized Notice of Pendency of Class and Collective Action Lawsuit ("Notice") to Defendants' employees.   Plaintiffs responded with a Counter-Motion for Protective Order and Sanctions (ECF No. 169), alleging Plaintiffs' counsel improperly contacted class members as shown by the Declarations attached to Defendants' Motion for Protective Order.  Plaintiffs also filed a Supplemental Declaration by Plaintiffs' counsel (ECF No. 178), to which Defendants' responded with a Motion to Strike (ECF No. 184). At a hearing in September 2011, the magistrate judge heard the parties' motions, including Plaintiffs' Motion to Stay the hearing (ECF No. 187). (MJ Order, Sept. 12, 2011, ECF No. 189.)

The magistrate judge granted Defendants' Motion for Protective Order, Compel and Sanctions (ECF No. 164), directing Plaintiffs' counsel to issue a curative notice indicating the defects and premature mailing of the prior notice and the invalidity of all of those responses and consents to join, and also to give correct notice consistent with the magistrate judge's order by October 7, 2011. (*Id.*)  The magistrate judge also directed Defendants' counsel to issue a new

_____

[2] *See* Local Rule 7-1(b); Stipulation, Oct. 18, 2010, ECF No. 116.

correct notice by October 28, 2011. (*Id.*)  The magistrate judge denied Defendants' motion for sanctions, Plaintiffs' Counter-motion for Protective Order (ECF No. 169), Defendants' Motion to Strike (ECF No. 184) and Plaintiffs' Motion to Stay (ECF No. 187). (*Id.*)

      The six remaining motions currently before the court are as follows.  Defendants re-filed their Motion for Summary Judgment on the remaining state law claims, to which Plaintiffs responded with a Counter-motion and Defendants filed a Supplementary Motion. (ECF Nos. 129, 142, 170.)  Plaintiffs filed a Motion to Reconsider the magistrate judge's Sept. 12, 2011 Order re: ECF No. 189. (ECF No. 195.)  And Plaintiffs filed a Motion for Leave to File Second Amended Complaint adding Defendants and two causes of action (ECF No. 139), to which Defendants filed a Motion to Strike (ECF No. 157).  On November 17, 2011, the court heard oral arguments on the motions.

      As of November 21, 2011, all discovery and motions deadlines have expired,[3] except for dispositive motions, which are due on or before November 28, 2011. (Order on Stipulation, August 1, 2011, ECF No. 176.)

## II.    ANALYSIS

### A.    Motions for Summary Judgment

      Both parties have filed motions for summary adjudication on the remaining state law claims. (*See* ECF Nos. 129, 142.)  These remaining claims appear in Plaintiffs' First Amended Complaint under the First Cause of Action alleging a violation of NRS 608.016 and the Fourth Cause of Action alleging a violation of NRS 608.040. (ECF No. 36.)  Defendants later filed another motion to argue an additional basis for summary adjudication of these claims – namely, that NRS 608.016 is preempted by Section 301 of the Labor Management Relations Act ("LMRA"), and that NRS 608.040 necessarily fails as well. (ECF No. 170.)

---

[3] The parties filed a Stipulation for Extension of Time (Fifth Request) (ECF No. 198) on October 14, 2011, which has not been approved by the court and is therefore not effective. *See* Local Rule 7-1(b).

1

### 1.    Summary Judgment Standard

2      The Federal Rules of Civil Procedure provide for summary adjudication when the

3 pleadings, depositions, answers to interrogatories, and admissions on file, together with the

4 affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is

5 entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may

6 affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A

7 dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to

8 return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if

9 reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict

10 in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th

11 Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A

12 principal purpose of summary judgment is "to isolate and dispose of factually unsupported

13 claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

14      In determining summary judgment, a court applies a burden-shifting analysis.  "When the

15 party moving for summary judgment would bear the burden of proof at trial, it must come

16 forward with evidence which would entitle it to a directed verdict if the evidence went

17 uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the

18 absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage*

19 *Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast,

20 when the nonmoving party bears the burden of proving the claim or defense, the moving party

21 can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the

22 nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a

23 showing sufficient to establish an element essential to that party's case on which that party will

24 bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails

25 to meet its initial burden, summary judgment must be denied and the court need not consider the

nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## 2.   Procedural Issues – Plaintiffs' Timeliness and Waiver Objections; Defendants' Preemption Argument

*Plaintiffs' Timeliness Argument*

As an initial matter, Plaintiffs object to Defendants' March 2011 Motion for Summary Judgment on the remaining state law claims (ECF No. 129) on the basis of untimeliness. Plaintiffs point out that Defendants' motion was untimely filed on March 18, 2011, prior to the Magistrate Judge's March 29, 2011 approval (ECF No. 131) of the parties' January 4, 2011 stipulation (ECF No. 126) to extend the motion cutoff to August 25, 2011.  Plaintiffs note that

"the parties' stipulation was not effective until 'approved by the court' per Local Rule 7-1."[4]
However, Plaintiffs provide no support for the proposition that Defendants' motion continued to
be untimely after the stipulation became effective on March 29, 2011.

Also, at the status hearing held by this court on October 24, 2011, the court specifically
asked the parties whether the motion was untimely.  Defendants responded that "everything is
timely now" and that "when [the motion] was re-filed in March it was timely."  Plaintiffs failed
to dispute or correct Defendants' assertion.  Later, at the motion hearing before this Court on
November 17, 2011, Plaintiffs expressly conceded that their timeliness objection is now moot.
Therefore, the court rejects Plaintiffs' timeliness objection as moot.

*Plaintiffs' Waiver Argument*

Defendants' July 2011 Motion for Summary Judgment raises a federal preemption defense
(ECF No. 170).  Defendants argue that Plaintiffs' claims under NRS 608.016 are preempted by
Section 301 of the Labor Management Relations Act ("LMRA"). (ECF No. 170.) Plaintiffs also
object to the timeliness of this motion, pointing out that this lawsuit was filed in December 2008,
that the operative First Amended Complaint was filed in July 2009, and that Defendants' Answer
was filed in August 2009. (*See* ECF Nos. 1, 36, 46.)  However, Defendants first raise the issue of
federal preemption in the July 2011 motion despite having previously filed two prior summary
judgment motions directed at Plaintiffs' state law claims.[5] (*See* ECF Nos. 92, 129.) Accordingly,
Plaintiffs argue that Defendants have therefore waived their preemption argument.

However, Plaintiffs cite no case law requiring a court to find waiver.  Cases cited by
Plaintiffs merely provide for the possibility, particularly when the preemption argument is raised
on appeal, at trial, and immediately before trial. *See, e.g.*, *Sweeney v. Westvaco Co.*, 926 F.2d 29,

---

[4] Specifically, Local Rule 7-1(b) provides: "No stipulations relating to proceedings before the Court except those set forth in
Fed. R. Civ. P. 29 shall be effective until approved by the Court. Any stipulation that would interfere with any time set for
completion of discovery, for hearing of a motion, or for trial, may be made only with the approval of the Court."
[5] The court notes that the first filing was withdrawn by Defendants, and the second filing was struck as untimely by the court
on motion of the Plaintiffs. (*See* ECF Nos. 87, 97, 127.)

40 (1st Cir. 1991) ("a party can waive § 301 pre-emption"); *Johnson v. Armored Transport of California, Inc.*, 813 F.2d 1041, 1043-44 (9th Cir. 1987) (holding that defendants waived section 301 preemption argument where defendant argued preemption only in its post-trial motion papers challenging the sufficiency of the evidence); *Gilchrist v. Jim Slemons Imports, Inc.*, 803 F.2d 1488, 1497 (9th Cir. 1986) (rejecting defendant's contention that ERISA preemption argument may be raised for the first time on appeal); *Wolf v. Reliance Standard Life Ins. Co.*, 71 F.3d 444, 450 (1st Cir. 1995) (affirming district court's denial of leave to amend based on ERISA preemption argument filed five days before trial); *See also Charpentier v. Godsil*, 937 F.2d 859, 864 (3d Cir. 1991) ("a defendant does not waive an affirmative defense if he raised the issue at a pragmatically sufficient time, and the plaintiff was not prejudiced in its ability to respond" (internal quotations omitted)); *Ultra-Precision Mfg., Ltd.*, 411 F.3d 1369, 1376-77 (Fed. Cir. 2005) (allowing federal patent law preemption affirmative defense that was invoked for the first time in defendant's motions in limine, after the district court had raised the issue *sua sponte* in denying defendant's motion for summary judgment); *Smith v. Sushka*, 117 F.3d 965, 969 (6th Cir. 1997) (allowing collateral estoppel affirmative defense raised for the first time in defendant's second summary judgment motion because the failure to raise the affirmative defense did not result in surprise or prejudice, and the plaintiff had the opportunity to fully respond to the issue).

In their motion, Plaintiffs themselves recognize their argument's weakness: "Led by the Ninth Circuit, the majority of federal courts addressing the issue have concluded that if preemption only alters the applicable substantive law, a party *can* forfeit the preemption defense by failing to raise it." (Pls.' Opp. to Defs.' Supp. Motion for Summ. J. 4:14-16, ECF No. 177 (emphasis added).)  Furthermore, Plaintiffs present no persuasive argument that they would suffer unfair surprise or prejudice should the court consider Defendants' argument; and Plaintiffs have had the opportunity to fully respond to the issue, in their briefs and at oral argument.

Despite the tardy filing, the court finds that the interests of justice are better served by

deciding this preemption motion on the merits, and that Plaintiffs suffer no unfair prejudice as a result.

*Defendants' Preemption Argument*

Section 301 of the Labor Management Relations Act provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

LMRA, ch. 120 § 301, 61 Stat. 136 (1947), 29 U.S.C. § 185(a).

Discussing the LMRA, the Ninth Circuit Court of Appeals has explained that "[t]he 'preemptive force of section 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization.'" *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1060 (9th Cir. 2007) (quoting *Franchise Tax Bd. V. Contr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983)).

Here, Plaintiffs are not alleging any cause of action for violation of a contract. (*See* Pls.' Opp. to Defs.' MSJ and Cross-Motion for Summ. Adj. 5:21.) However, preemption can also arise "even in some instances in which the plaintiffs have not alleged a breach of contract in their complaint, if the plaintiffs' claim is either grounded in the provisions of the labor contract or requires interpretation of it." *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1060 (9th Cir. 2007) (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985)) ("If the policies that animate § 301 are to be given their proper range, however, the pre-emptive effect of § 301 must extend beyond suits alleging contract violations.").

In this case, Plaintiffs' were very careful to assert only a cause of action involving a right conferred upon employees by virtue of state law, instead of under the collective bargaining

agreement ("CBA"). *See Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). Therefore, if Defendants' preemption argument is to prevail, Plaintiffs' state law rights must be "substantially dependent on analysis of a collective-bargaining agreement." *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987).

After Mr. Hall's persuasive arguments at the November 17, 2011 motions hearing, the court was inclined to agree with Defendants' preemption argument.  Nevertheless, further review of the case law still dictates against preemption.  In *Burnside*, the Ninth Circuit explained that in order to determine this, a court must "decide whether the claim can be resolved by 'look[ing] to' versus interpreting the CBA." 491 F.3d 1060 (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 125 (1994)).  Examples of circumstances that do not require interpreting a CBA include: "'look[ing]' to the CBA merely to discern that none of its terms is reasonably in dispute"; "the simple need to refer to bargained-for wage rates in computing [a] penalty"; "consult[ing] [a CBA] in the course of state-law litigation"; and upon an "alleg[ation] [of] a hypothetical connection between the claim and the terms of the CBA." *Id*.  And the Ninth Circuit has explicitly clarified that "[w]hen the meaning of particular contract terms is not disputed, however, the fact that a collective bargaining agreement must be consulted for information will not result in § 301 preemption." *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1014 (9th Cir. 2000).

Therefore, this Court must determine whether it can merely "look to" the CBA in order to adjudicate this claim, or whether resolution of the claim requires interpretation of the terms of the CBA.  Defendants submit the Handbook of Rules and Policies ("Employee Handbook") and the Collective Bargaining Agreement ("CBA") between Plaintiffs and Defendants for the court's consideration. (*See* Ex. 4 to Defs.' Motion for Summary Judgment, ECF No. 129-2.)  Defendants argue that the CBA's coverage of compensation "forecloses any argument that [Plaintiffs] should be entitled to any additional compensation based on state law." (Defs.' Supp. Motion for Summ. J. 9:23-25.)  Defendants claim that Plaintiffs "have bargained any such rights away by agreeing

to the CBA." (*Id.* at 9:25.)  Therefore, Defendants conclude, the court must interpret the terms of the CBA to determine whether the state rights now asserted by Plaintiffs were bargained away.

However, the U.S. Supreme Court rejected this path to federal preemption when it rejected the argument that "§ 301 pre-empts a state-law claim even when the employer raises only a defense that requires a court to interpret or apply a collective-bargaining agreement." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398-99 (1987) (denying preemption where the employer claimed that "in its collective-bargaining agreement, its unionized employees waived any pre-existing individual employment contract rights").  The Court emphasized that "a *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated." *Id.* at 399 (emphasis in original).

Here, Plaintiffs' Complaint does not appear to allege any dispute with the terms of the CBA.  In fact, Plaintiffs concede that there is no violation with regard to amounts that Defendants have agreed to pay.  Plaintiffs' consistent argument is that they have a right to payment for duties performed outside of any agreement.

> **3.    Substantive Issues – Violations of NRS 608.016, Payment for each hour of work**

Plaintiffs' First Cause of Action claims wage violations under NRS 608.016, which provides:

> An employer shall pay to the employee wages for each hour the employee works. An employer shall not require an employee to work without wages during a trial or break-in period.

NRS 608.016.  Under the statute, "wages" has a special meaning:

> "Wages" means:
> 1. The amount which an employer agrees to pay an employee for the time the employee has worked, computed in proportion to time; and
> 2. Commissions owed the employee, but excludes any bonus or arrangement to share profits.

NRS 608.012.

Plaintiffs do not claim that Defendants failed to pay commissions owed the employees, nor do Plaintiffs claim that Defendants failed to pay any amount they agreed to pay employees. (Pls.' Opp. to Defs.' MSJ and Cross-Motion for Summ. Adj. 5:7-8, 19-20, ECF No. 132, 142.) Instead, Plaintiffs complain that they worked hours for which they were not paid and should have been paid, including the following enumerated violations:

- Time spent attending a required 4-day training class prior to employment. (F. Am. Complaint 12:¶41.)

- Time spent waiting in line at the dispatch office 15 minutes before their shift as required in order to pick up their trip sheets and keys (*Id*. at ¶42.)

- Time spent attending mandatory company meetings. (*Id*. at ¶43.)

- Time spent fixing, maintaining or cleaning their vehicles as required and under the control of Defendants. (*Id*. at ¶44.)

- Time spent under the control of Defendants in which they were engaged to wait by being required to be present at the dispatch offices or at another specified location until a customer retained Defendants' services. (*Id*. at ¶45.)

- Time spent while they were not driving in which they were suffered and permitted to work by Defendants. (*Id*. at ¶46.)

However, in their First Cause of Action, Plaintiffs cite no state statutes other than NRS 608.016 to support their argument that Defendants' failure to pay Plaintiffs for the above-named times was a violation of Nevada law. (*See* F. Am. Complaint 12-14.)  Instead, Plaintiffs claim in their Cross-Motion for Summary Adjudication that NRS 608.016 and 608.012 require Defendants to pay Plaintiffs "something" for each hour worked. (Pls.' Opp. to Defs.' MSJ and Cross-Motion for Summ. Adj. 7:22-26.)  As described below, the court finds that Plaintiffs' statutory construction argument is incorrect.

The only questions of fact at issue before the court are whether Plaintiffs were paid the

amount Defendants agreed to pay, and whether Defendants required Plaintiffs to work without wages during a trial or break-in period. *See* NRS 608.016.  If all of Plaintiffs' enumerated violations under the First Cause of Action fail to fit within these two categories, Plaintiffs' state law claims fail.  Defendants argue that in accordance with their CBA, Plaintiffs "are compensated under a commission-only agreement (plus tips)," and that therefore Plaintiffs' claims based on NRS 608.016 are without merit. (ECF No. 129).  As described below, the court finds that this is correct.  Furthermore, Plaintiffs do not present evidence that Defendants required Plaintiffs to work without wages during a trial or break-in period.

*Plaintiffs' Statutory Construction Argument*

The court has already dismissed Plaintiffs' argument that Defendants are required to pay Plaintiffs a minimum wage. (Order, June 24, 2009, ECF No. 27.)  The court declines to accept Plaintiffs' unpersuasive argument that NRS 608.016 and 608.012 require Defendants to pay Plaintiffs "something" for each hour worked.

Nevada law pursuant to NRS 608.016 and 608.012 requires three things:

- An employer shall pay to the employee *the amount which an employer agrees to pay an employee for the time the employee has worked, computed in proportion to time* for each hour the employee works.

- An employer shall pay to the employee *commissions owed the employee, but excludes any bonus or arrangement to share profits*, for each hour the employee works.

- An employer shall not require an employee to work without wages during a trial or break-in period.

None of these categories support an inference that Defendants must pay Plaintiffs "something" for each hour worked unless the amount claimed to be owed constitutes an unpaid amount the employer agreed to pay, an unpaid commission (excluding bonus or shared profits), or wages

earned during a trial or break-in period.

In support of their argument, Plaintiffs point to this court's previous order granting class certification. (*See* Pls.' Opp. to Defs.' MSJ and Cross-Motion for Summ. Adj. at 8:9-15.)  In a footnote, the court speculated, in part:

> On the other hand, commissions may indeed be used to satisfy the minimum wage on a pay-period basis. Nev. Admin. Code § 608.120(3). Defendants argue this but do not cite to this provision of the Code. It is not clear how this should apply to the present case. If limousine drivers are required to perform certain duties for no compensation, this appears to violate the text of NRS § 608.016. The Code permits commissions to be used to satisfy the minimum wage on a pay-period basis, *see* § 608.120(3), but it says nothing about commissions ameliorating what would otherwise be violations of ***NRS § 608.016, which requires some pay for all hours worked***. The Nevada Supreme Court has not addressed the question. It has only mentioned § 608.016 in two cases, neither of which is helpful here.

(Order, Dec. 1, 2009, 9-10 n.1, ECF No. 69 (emphasis added).)  However, this statement did not represent the court's construction of NRS 608.016 and 608.012, nor was it a finding reached upon consideration of the parties' briefs.  It was solely dicta to an order granting class certification under Fed. R. Civ. P. 23.  To the extent that NRS 608.016 requires some pay for all hours worked, NRS 608.012 makes clear that this is limited by the definition of "wages," which include commissions owed and "[t]he amount which an employer agrees to pay...."

The plain meaning of the statute does not imply the broad requirement alleged by Plaintiffs: that Defendants must pay their employers "something" for each hour worked, without exclusions or limitations.  Therefore, Plaintiffs' statutory construction argument fails.

*Questions of fact*

As noted above, the only questions of fact that remain are whether Defendants failed to pay Plaintiffs the amount agreed to, and whether Defendants required Plaintiffs to work without pay during a trial or break-in period.  At the November 17, 2011, hearing on the motions,

Plaintiffs made clear that they do not allege that Defendants failed to pay their employees the amount Defendants agreed to pay.  Therefore, using the definition of "wages" under NRS 608.012(1), none of Plaintiffs' enumerated claims in the First Cause of Action could possibly constitute violations of NRS 608.016.  Plaintiffs also do not allege that Defendants failed to pay commissions owed the employees, pursuant to NRS 608.012(2).

To the extent that Plaintiffs may be alleging that Defendants required employees to work without wages during a trial or break-in period, Plaintiffs have failed to provide evidence of such.  Of the enumerated violations under Plaintiffs' First Cause of Action, the only allegations Plaintiffs make that may fall under this third category are the allegations that Defendants failed to pay employees for training that occurs prior to employment. (*See* F. Am. Complaint 12:¶41; "Time spent attending a required 4-day training class prior to employment".)  However, under Nevada law, this training does not qualify as a "trial or break-in period."  The Nev. Admin. Code 608.130 exempts certain types of training from Nevada wage requirements.  Specifically, the regulation provides:

> 1. An employer shall pay an employee at a rate that is not less than minimum wage for any travel or training that is considered to be time worked by the employee pursuant to subsections 2 and 3.
> * * *
> 3. The training received by an employee:
> * * *
> (b) Is not considered to be time worked by the employee if the training is required by an agency or entity other than the employer without regard to whether the training enables the employee to maintain eligibility for employment in a particular capacity or at a particular level.

NAC 608.130.

The training class prior to employment referenced by Plaintiffs appears to be offered by Defendants only for the purposes of helping its employees to comply with the Nevada Transportation Authority's commercial driver's license ("CDL") requirements.  Defendants

provide this training free of charge so that employee drivers may be in compliance with Nevada law and obtain the necessary license.  Therefore, the court finds that to the extent Plaintiffs are alleging a violation of Nevada law relating to this training class, Plaintiffs' claim fails.

Finally, Plaintiffs deny that Plaintiffs entered into any commission-only agreement or contract. (*See* "Castello Declaration" 2:¶3, ECF No. 132-1.)  Plaintiffs submit a declaration by Gregory H. Castello, a former employee of Bell Trans, in which he states, "I never entered into any commission-only agreement or contract with Bell.  There was no 'contract' or 'agreement' as I understand those terms.  Commissions were simply the way I was paid." (*Id.*)  However, this assertion does not contradict Plaintiffs' concession that Defendants paid Plaintiffs the amounts agreed to.  Instead, Plaintiffs' denial of a commission-only agreement appears to either be aimed at supporting their argument that a waiver of additional pay has not occurred or be an admission of their own misunderstanding.  During oral arguments for this motion on November 17, 2011, Plaintiffs' own counsel admitted he was unaware that a collective bargaining agreement even existed.

Therefore, because Plaintiffs' claims do not invoke the terms of the CBA, and the state law right asserted is not "substantially dependent" on the terms of the CBA, their state law cause of action is not preempted by federal law.  The court finds that Plaintiffs' claim under NRS 608.016 can be resolved without interpreting the CBA, and that Plaintiffs' claims are not grounded in the provisions of the CBA.  As shown above, at most the court must consult or "look to" the CBA, if at all, to ascertain the agreed-upon wage rates.  Therefore, under the facts presented before the court in these motions for summary judgment, Defendants' preemption argument fails.

In a summary judgment motion, the court must determine whether there is sufficient evidence on which a jury could reasonably find for the non-moving party.  Here, the court does not need to interpret the CBA to find that sufficient evidence does not exist on which a jury could

reasonably find for the Plaintiffs.  The court further finds that sufficient evidence does exist on which a jury could reasonably find for Defendants.  Therefore, Plaintiffs' summary judgment motion fails, and the court will grant Defendants' motion for partial summary judgment on Plaintiffs' remaining state law claims.

**4.      Violations of NRS 608.040, Penalty for failure to pay discharged or quitting employee**

Under Nevada law, "[i]f an employer fails to pay: (a) Within 3 days after the wages or compensation of a discharged employee becomes due; or (b) On the day the wages or compensation is due to an employee who resigns or quits, the wages or compensation of the employee continues at the same rate from the day the employee resigned, quit or was discharged until paid or for 30 days, whichever is less." NRS 608.040(1).

The parties agree that the success of Plaintiffs' claim for violations of NRS 608.040 depends on whether violations of NRS 608.016 exist.  Here, if there is no violation of NRS 608.016, then there can be no violation of NRS 608.040.  As described above, the court holds that Defendants have not violated NRS 608.016.  Therefore, Defendants have also not violated NRS 608.040.

**A.      Plaintiffs' Motion to Reconsider Magistrate Judge's Order**

Local Rule IB 3-1 provides that "[a] district judge may reconsider any pretrial matter referred to a magistrate judge in a civil… case… where it has been shown that the magistrate judge's ruling is clearly erroneous or contrary to law."  This standard is significantly deferential to the initial ruling, and the court will only overturn the magistrate judge's decision if, upon review, the court is left with a definite and firm conviction that a mistake has been made. *See David H. Tedder & Assoc., Inc. v. United States*, 77 F.3d 1166, 1169-70 (9th Cir. 1996).

Defendants filed their Motion for Protective Order after Plaintiffs' counsel mailed an unauthorized and unacceptable Notice of Pendency of Class Action to Defendants' employees.

In their motion, Defendants included declarations from employees who received the mailings, along the notices.  Plaintiffs moved for a protective order and sanctions against Defendants for obtaining the declarations allegedly in violation of the attorney-client privilege.  In support of their motion, Plaintiffs' counsel filed his own declaration, to which Defendants moved to strike.  After the magistrate judge set the hearing, Plaintiffs moved to stay the hearing.  The magistrate judge disposed of the motions by granting Defendants' request for protective order, but rejected the parties' requests for sanctions, denied Defendants' motion to strike, denied Plaintiffs' motion to stay the hearing, and denied Plaintiffs' motion for protective order.

The U.S. Supreme Court has described the authority of courts to manage litigation, particularly in the class action context:

> Because trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute, it lies within the discretion of a district court to begin its involvement early, at the point of the initial notice, rather than at some later time.  One of the most significant insights that skilled trial judges have gained in recent years is the wisdom and necessity for early judicial intervention in the management of litigation. … The court is not limited to waiting passively for objections about the manner in which the consents were obtained.  **By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative.  Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed.  This procedure may avoid the need to cancel consents obtained in an improper manner.**

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171-172, (1989) (citations omitted) (emphasis added).

Here, the court finds that the magistrate judge's ruling is not clearly erroneous or contrary to law.  The magistrate judge conducted an hour-long hearing in which both sides elaborated on their filed motions.  Plaintiffs' counsel stated during the hearing that "[w]e obviously made a mistake and sent this [notice] out inadvertently."  The magistrate judge then ordered Plaintiffs'

counsel "to issue a curative notice indicating the defect in the premature mailing of the prior notice and the invalidity of all of those responses and consents to join."  He further ordered Plaintiffs' counsel "to give notice correctly and [notice] should be consistent with what's been discussed here in court today."  He then clarified that "the notice will just cover FLSA, not the class action, not the state court claims."  In denying Plaintiffs' motion for protective order, the magistrate judge explained that "with the corrected notice and the other, the corrective and the corrected notice, things should be resolved and hopefully we'll be back on track."

The magistrate judge exercised great restraint in not sanctioning Plaintiffs' counsel for the unauthorized dissemination of an unapproved notice.  He explained his reasoning, and the hearing transcript does not show clear error.  Therefore, the court will deny Plaintiffs' motion to reconsider.

**B.    Plaintiffs' Motion for Leave to File Second Amended Complaint**

Before trial, and after already amending its pleading once as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  Circumstances under which leave may be denied include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Plaintiffs request leave to file a Second Amended Complaint in order to assert two additional causes of action, retaliation and declaratory relief, and to add defendants – Presidential Limousine and Brent Bell, Brad Bell, Larry Bell, Jr., and J.J. Bell.  In the proposed amended complaint, Plaintiffs appear to cut and paste all the causes of action from the prior complaints, including claims that have been dismissed by the court.  Under the retaliation cause of action, Plaintiffs claim that Defendants are disciplining drivers and/or firing them for failing to earn

minimum wage, and that Defendants are forcing drivers to sign forms declaring that they are exempt employees.  Accordingly, Plaintiffs are also requesting declaratory relief to clarify that the exemption forms have no legal effect.

Plaintiffs request to add Defendants as a "housekeeping" measure, and so that discovery may be permitted as to who qualifies as an "employer."

Defendants argue that Plaintiffs' proposed amendments would be futile and represent undue delay and prejudice.  This case was initially filed nearly three years ago in December 2008, and the discovery period has expired.  The court therefore finds that granting leave to amend will cause undue delay and undue prejudice to Defendants.  Furthermore, the court finds that denying leave to amend will not cause unfair prejudice to Plaintiffs because it appears the Plaintiffs are not barred from filing a separate action alleging retaliation and seek declaratory relief therein.  The court denies leave to amend, without prejudice.

## III.    CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment as to Plaintiffs' State Law-Based Claims for Relief (ECF No. 129) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Supplemental Motion for Summary Judgment (ECF No. 170) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment (ECF No. 142) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for District Judge to Reconsider Order (ECF No. 195) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File Second Amended Complaint (ECF No. 139) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Counter Motion to Strike Plaintiffs'

/ / /

Motion for Leave to File Second Amended Complaint (ECF No. 157) is **DENIED as moot**.

DATED this 22nd day of November, 2011.

_____
Gloria M. Navarro
United States District Judge